UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                          CIVIL ACTION NO. 05-10350JLT

```
                                      )
DIANE SCOTT-JONES and JOHN E. JONES, JR., )
Individually and as Trustees of the 392-394   )
BOYLSTON COMMONS CONDOMINIUM          )
TRUST,                                )
        Plaintiffs,                   )
                                      )
v.                                    )
                                      )
CHARLES A. PERKINS, JR., GARY M.      )
DADDARIO and PERKINS & ANCTIL, P.C.,  )
        Defendants.                   )
                                      )
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

NOW COME the above-captioned Defendants and respectfully submit to this Honorable Court this Memorandum of Law in Support of Defendants' Motion to Dismiss.

I.    INTRODUCTION AND FACTS

A.    BACKGROUND

The 392-394 Boylston Commons Condominium ("Boylston") is a Massachusetts condominium established pursuant to Massachusetts General Laws chapter 183A (the "Condominium Statute") and created by Master Deed dated August 31, 2000 and recorded with the Middlesex South Registry of Deeds at Book 31786 Page 500. Boylston contains two units and is located in Newton, Massachusetts.

Diane Scott-Jones and John E. Jones, Jr. ("Plaintiffs") are the owners of Unit 392, one of Boylston's two units.

Quing Lu and Yu Cheung ("394 co-owners") are the owners of Unit 394, the other of Boylston's two units.

Plaintiffs and 394 co-owners originally became embroiled in a feud stemming from landscaping work that had been performed at Boylston. The City of Newton opined that said work encroached upon a protected wetlands buffer zone and, in addition, the work encroached upon the property of the neighboring owner. Further, contaminated fill had been used by the landscaper. The Plaintiffs and the 394 co-owners were at odds regarding the proper method of dealing with this situation.

As the feud escalated, Plaintiffs became uncooperative and the operations of Boylston began to suffer. In a vengeful maneuver that violated their fiduciary obligations, Plaintiffs withdrew Boylston's financial resources and closed its accounts.

Left with no alternative, the 394 co-owners retained Attorney Douglas A. Troyer of Marcus, Errico, Emmer & Brooks, P.C. and instituted legal action.

B.    MASSACHUSETTS SUPERIOR COURT PROCEEDINGS

The 394 co-owners filed Massachusetts Superior Court Civil Action No. MICV2003-05103 (the "Superior Court action") on December 18, 2003. A portion of the Court's docket in the Superior Court action is attached hereto as Exhibit "1".

Initially in the Superior Court action, the 394 co-owners sought and were granted a Preliminary Injunction against the Plaintiffs (Defendants in the Superior Court action). See Exhibit "1". The Court's Temporary Restraining Order restrained Plaintiffs from such misconduct as interfering with the 394 co-owners ability to engage in snow removal activities. See Exhibit "1".

2

Soon thereafter, the Superior Court issued a Preliminary Injunction which, among other provisions, required that payments due Boylston be kept in escrow and the 394 co-owners be allowed to contract for snow removal services. See Exhibit "1".

On June 3, 2004, after an adversary hearing, Plaintiffs were found in Contempt of Court by the Superior Court for failing to properly place funds due Boylston into escrow. The 394 co-owners were awarded their attorneys' fees. See Exhibit "1".

Boylston's operations continued suffer as a result of Plaintiffs' misconduct and uncooperative behavior. The 394 co-owners filed a Motion to Appoint Receiver. On June 24, 2004, the Superior Court granted said Motion and issued an Order Appointing Receiver, specifically Sheryl Sarkis ("Receiver"). See Exhibit "1".

Thereafter, the Superior Court denied Plaintiffs' Motion for Reconsideration regarding their contempt and denied Plaintiffs' Motion to Remove and Replace Receiver. See Exhibit "1". The Plaintiffs responded with the filing of an Appeal.

Upon information and belief, the Plaintiffs hired and fired approximately four attorneys during the above-described proceedings, eventually continuing in the Superior Court action on a *pro se* basis.

In the course of her work as receiver, the Receiver secured a survey of the property in preparation for defining the scope of work necessary to correct the landscaping issues and for use in obtaining contractors' bids regarding the same. The cost associated with the survey was $2,500.00 and was assessed equally to each of the unit owners. Although the 394 co-owners paid their portion of the survey expense, the Plaintiffs refused to do so.

3

C.    THE DEFENDANTS' INVOLVEMENT

After failed attempts to secure the Plaintiffs' payment of their $1,250.00 assessment associated with the survey, the Receiver retained Perkins & Anctil, P.C. to secure collection.

On December 15, 2004, Attorney Charles A. Perkins, Jr. issued a 14-day demand letter to the Plaintiffs seeking payment of the $1,250.00 assessment as well as, in accord with the Condominium Statute section 6(a)(ii), payment of $390.00 in legal fees that had been incurred through said date. A copy of this letter is attached hereto as Exhibit "2". Attorney Perkins' letter informed Plaintiffs that the payments were requested due to the balance on their account with Boylston. In addition, the letter contained a notice of rights under the Federal Fair Debt Collection Practices Act ("FDCPA"). Said FDCPA notice was, as stated in the letter, provided for consumer debtors. Plaintiffs were instructed in the December 15, 2004 letter to obtain legal counsel regarding any questions relative thereto.

On December 22, 2004, Plaintiffs issued a letter to Attorney Perkins in which they posed several questions and disputed the charges on their account. A copy is attached hereto as Exhibit "3". In said letter, Plaintiffs acknowledge that they are in possession of the "plan" (referenced above as the "survey"), prepared by the Decelle Group, for which they were assessed $1,250.00.

On December 28, 2004, Attorney Gary M. Daddario issued a response to Plaintiffs' December 22nd letter. A copy is attached hereto as Exhibit "4". Attorney Daddario's letter answered the Plaintiffs' questions and cited provisions of applicable law. Attorney Daddario stated that, in accord with Massachusetts law, Plaintiffs were not permitted to challenge condominium debt without first making payment of the same and that, absent payment, collection would continue.

4

On December 31, 2004, Plaintiffs issued a letter to Attorney Daddario. A copy is attached hereto as Exhibit "5". In this letter, Plaintiffs questioned Attorney Daddario's statements of Massachusetts law and alleged that there were due additional verification of the debt.

On January 4, 2005, Attorney Daddario issued a response to the Plaintiffs' December 31, 2004 letter. A copy is attached hereto as Exhibit "6". In this letter, Attorney Daddario provided additional legal citation to fully support the demands made of the Plaintiffs. Attorney Daddario also reiterated the fact that under Massachusetts law, the Plaintiffs are required to make payment of condominium assessments before the same may be challenged. Attorney Daddario referenced the Receiver's authority to remedy the landscaping issues of the association. Based on the Receiver's initial failed attempts to collect the assessment, Attorney Perkins' description of the debt as being the balance on Plaintiffs' account with Boylston and the fact that, by Plaintiffs' own admission, they were in possession of the Decelle Group Plan that caused the assessment then due, Plaintiffs' demands for verification were disingenuous. Attorney Daddario responded to Plaintiffs' request for verification by stating that "an explanation has been provided to the extent possible at this time."

On January 7, 2005, Plaintiffs issued another letter to Attorney Daddario. A copy is attached hereto as Exhibit "7". In this letter, Plaintiffs again attempt to dispute the legitimacy of the debt. Having been previously provided with both legal citation applicable to the situation and a copy of the Decelle Group Plan for which they were assessed, Plaintiffs' statements in this regard were, again, disingenuous. Plaintiffs' continued demands for verification despite having been provided with the same on more than one occasion was, apparently, a tactic designed to continue Plaintiffs' misconduct and uncooperative behavior. Such conduct had plagued the

5

Superior Court proceedings. In fact, according to Attorney Troyer, Plaintiffs had previously walked out on a mediation session scheduled through the Superior Court and aimed at resolving the dispute.

On January 11, 2005, Attorney Daddario issued the Plaintiffs a formal Notice of Default (as required by the Condominium Statute and as referenced in prior correspondence to Plaintiffs) with respect to their outstanding balance due Boylston. A copy is attached hereto as Exhibit "8". In response to Plaintiffs' continued requests for verification of the debt, Attorney Daddario included with the Notice of Default a copy of an October 12, 2004 letter (previously issued from the Receiver) to all Boylston owners in which the assessment was explained and levied as well as the invoice submitted by the Decelle Group.

In accord with the Condominium Statute section 6(c), on February 7, 2005, Attorney Daddario issued 30-Day and 60-Day Notices to the Plaintiffs' first mortgage holder. Copies are attached hereto, collectively, as Exhibit "9".

Thereafter, the Receiver notified Perkins & Anctil, P.C. that Plaintiffs were engaging in a pattern of conduct designed to harass the Receiver's primary employer and strain her relationship therewith. As a result, a Motion for Permanent Injunction and an Order Requiring Payment (the "Receiver's Motion") was filed. A copy is attached hereto as Exhibit "10". The Receiver's Motion was filed within the ongoing Superior Court action referenced above. In this Motion, the Receiver sought an injunction preventing further harassment of her employer by Plaintiffs as well as an Order requiring payment of the outstanding balance then due Boylston.

On February 3, 2005, the Superior Court heard argument at an adversarial hearing on the Receiver's Motion. The Court ordered an evidentiary hearing to take place on February 8, 2005. All parties were heard at both of the Superior Court's hearings relative to the Receiver's Motion.

6

On February 15, 2005, the Superior Court issued an Order requiring the Plaintiffs to refrain from contact with the Receiver's employer and to pay the outstanding balance due Boylston including legal fees and costs. A copy is attached hereto as Exhibit "11". The Superior Court specifically found that the Receiver's Motion for the Injunction was made in response to the misconduct of the Plaintiffs.

Also on February 15, 2005, Plaintiffs filed another Motion to Dismiss Receiver. Despite their claim in a letter to Attorney Troyer that the Motion was filed pursuant to Superior Court Rule 9A, Defendants did not receive service with respect to this Motion and are unsure of the status of the same as of this writing.

Finally, on February 18, 2005, the Plaintiffs filed this action against the Defendants.

II.    ARGUMENT

      A.    THIS HONORABLE COURT LACKS SUBJECT MATTER JURISICITON

             1.    The Plaintiffs' Debt Is Not Consumer Debt and the FDCPA Does Not Apply

The FDCPA does not apply to condominium assessments. This position is supported by the Hampden County Superior Court case of *Franco v. Steve M. Marcus*. A copy is attached hereto as Exhibit "12." In *Franco*, the Court considered whether the FDCPA applied to attorneys collecting condominium debt. While it is clear that attorneys are responsible parties under the act (meeting the definition of "debt collectors"), the Defendant attorney argued that he should not be liable as he was collecting a "debt" that was not covered by the act.

In the decision, Judge Josephson, determined that the FDCPA does not apply to condominium assessments. The reasoning behind the decision is that the FDCPA defines a debt as, "Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction are

7

primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." (15 U.S.C. §1692 (a) 5).

In his analysis, Judge Josephson incorporated the reasoning of the Third Circuit Court of Appeals which held, "the act only applies to transactions in which a consumer offered or extended the right to acquire money, property, insurance or services which are primary for household purposes and to deferred payment." Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1168-1169 (3rd Cir. 1987). The Court reasoned that because the dues are uniformly assessed to all lot owners without regard to which owners specifically benefit thereby, they are not a "debt" for "personal, family or household purposes" within the meaning contemplated by the FDCPA. Therefore, as the underlying obligation is not defined as a "debt" within the meaning of the act no liability could be imposed on the attorney attempting to collect the debt. See also Albright v. Trustees of the Villa Grande Condominium, 2001 WL 589070 (Mass.App.Div.) holding that condominium assessments are not "debts" within the meaning of the Massachusetts Debt Collection Practice.

As the present case involves identical circumstances, the same reasoning applies. This debt, a condominium assessment, is not "primarily for personal, family, or household purposes" and, therefore, no liability can be attached under the FDCPA relative to efforts to collect this debt.

As such, the Plaintiffs' claims under the FDCPA must be dismissed.

2. The Plaintiffs' Claim and Standing Are Procedurally Flawed

Even assuming, *arguendo*, that the FDCPA were to apply to a case involving delinquent condominium assessments, the Plaintiffs' claim and, consequently, their standing are fatally flawed upon analysis of applicable Massachusetts Law.

8

All of Plaintiffs' allegations, in essence, fault the Defendants for failing to
properly acknowledge/respond to their dispute of the assessments due. However, as
explained to Plaintiffs in numerous correspondence, Massachusetts law requires that
condominium debt, like taxes, be paid first and then challenged in a separate proceeding
seeking reimbursement. The Condominium Statute, at section 7, prohibits withholding or
offset with respect to assessments. To the extent that a condominium must engage in
collection to secure payment of assessments, the Condominium Statute, at section
6(a)(ii), provides that all late fees, fines, interest, attorneys' fees, court costs and
collection costs will be treated as common expense assessments. In enforcing the statute,
the Massachusetts Supreme Judicial Court was clear:

> "A system that would tolerate a unit owner's refusal to pay an
> assessment because the unit owner asserts a grievance, **even a
> seemingly meritorious one**, would threaten the financial integrity
> of the entire condominium operation." (Emphasis supplied).
> *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass. 723,
> 726, 592 N.E.2d 1301, 1302 (1992).

Despite the provisions of the Condominium Statute and the *Prosser* case, two
years later it was argued that an exception may be made where there are allegations that
the assessment itself is illegal. In this case, the Appeals Court was equally clear and left
no question on the matter:

> "We suggest that aggrieved unit owners should timely pay—under
> protest—the common expense assessment. Thereafter, a judicial
> determination of the legality of the assessment, and suitable
> reimbursement, may be sought." *Blood v. Edgars, Inc.*, 36
> Mass.App.Ct. 402, 406, 632 N.E.2d 419, 421-422 (1994).

> "From the date of this opinion, a condominium unit
> owner may not challenge a common expense
> assessment by refusing to pay it." *Id.* at 410, 424.

9

Based on the above, it is abundantly clear that well-settled Massachusetts law requires condominium owners to submit payment of assessments in the first instance and to challenge the assessments, thereafter, in a separate proceeding. However, as of this writing, Plaintiffs still have not submitted any payment relative to the amounts sought by Defendants through collection.

In sum, having failed to avail themselves of the legal procedure required to properly dispute the underlying debt (despite having been informed of the same, repeatedly, by Defendants), Plaintiffs are not in a position to file suit against the Defendants alleging that the Defendants did not properly address their dispute.

B.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

1. Plaintiffs Have Failed to Allege Any Specific Violation of Law to Support a Legal Claim

Even assuming, *arguendo*, that the FDCPA applies to delinquent condominium debt and that the Plaintiffs may be excused from following the procedure required by Massachusetts law to dispute the same, the Plaintiffs have failed to properly allege a valid claim in their Complaint. It is important to note that Defendants have never, at any time, engaged in discussion of this matter with the Plaintiffs. With the exception of the hearings before the Superior Court (which resulted in an Order requiring the Plaintiffs to remit payment of the assessment and attorneys' fees and costs (See Exhibit "11")), the only communication between the parties to this action has been the written correspondence attached hereto. Accordingly, in order to set forth a valid claim, the Plaintiffs must succeed in establishing the existence of the same on the documents they have received. Defendants opine that it is clear that no such claim exists.

10

Each and every one of Plaintiffs' allegations either: a) fails to identify an action of Defendant and allege the same to be a violation of applicable law; or b) is factually incorrect. The former category requires no specific discussion. Plaintiffs' factual inaccuracies are explored below.

In Paragraph 5 of the Complaint, Plaintiffs complain that Defendants' letters contain an FDCPA notice despite the fact that Defendants claim the same is not applicable to this case. In Defendants' January 4, 2005 letter (see Exhibit "6"), Attorney Daddario explained to Plaintiffs that the notice is provided on all correspondence in the regular course of Defendants' business. This is the case because Defendants also engage in collection of debt to which the FDCPA does apply. Furthermore, a careful reading of the notice on all of Defendants' letters reveals that the same "only applies to consumer debtors" (emphasis in originals). Finally, Defendants' letters instruct Plaintiffs to seek advice of legal counsel with any question relative to the correspondence.

In Paragraph 7 of the Complaint, Plaintiffs complain that Defendants' initial letters provide 14 days for payment while the FDCPA allows 30 days to dispute the debt. In this regard, Plaintiffs have simply failed to read the entirety of the Defendants' FDCPA notice. The last line of said notice informs readers that the Federal Trade Commission has ruled that the FDCPA does not preclude the institution of legal action prior to expiration of the thirty-day period referenced in the statute.

In Paragraph 8-11 of the Complaint, Plaintiffs complain that Defendants failed to verify the debt. As set forth above, this allegation is patently false. Defendants were made aware at the inception of the case that the Receiver sought and was denied payment of the assessment after explanation thereof. Defendants properly described the debt in

11

their initial correspondence as being the balance on account with Boylston. In their December 22, 2004 letter (see Exhibit "3"), Plaintiffs admit to having in their possession a copy of the plan for which the assessment was charged. Finally, with the Notice of Default (see Exhibit "8"), Defendants provided Plaintiffs with a copy of the Receiver's prior October 12, 2004 letter and a copy of the Decelle Group invoice for the survey/plan prepared.

In Paragraph 12 of the Complaint, the Plaintiffs allege that the Defendants falsely implied that legal proceedings had begun. The December 15th letter speaks for itself and, Defendants note, includes no statement that a legal action was instituted.

In Paragraph 12, the Plaintiffs complain that Defendants' December 28, 2004 letter referenced the Receiver's statutory entitlement to foreclosure. The December 28th letter speaks for itself. For the sake of clarity, the entirety of the sentence at issue reads as follows:

> "In any court judgment regarding your outstanding balance, the 392-394 Boylston Commons Condominium, Sheryl Sarkis as Receiver, will be statutorily entitled to the court's authorization of a foreclosure of your property." (See Exhibit "4").

In drafting this sentence, Attorney Daddario was referring to M.G.L. c. 254, §5A which reads, in pertinent part, as follows:

> "When the amount of a lien under section six of chapter 183A or under section 29 of chapter 183B has been established by a court, the court shall enter an order authorizing the sale of the real estate to satisfy such lien."

Thus, a reading of the applicable law reveals that the statement of which the Plaintiffs complain is accurate. Further, in response to a question regarding the same, Attorney Daddario provided the appropriate explanation and legal citation in his letter to Plaintiffs

12

on January 4, 2005. (See Exhibit "6"). Thus Plaintiffs' allegations in this regard are disingenuous at this time.

In Paragraph 13 of the Complaint, the Plaintiffs simply misstate the status of Massachusetts law, particularly the holding of the *Blood* case cited above. In making this allegation and misstatement of law after having been provided with relevant legal citation previously by the Defendants, the Plaintiffs are disingenuous.

In Paragraph 14 of the Complaint, the Plaintiffs allege that Defendants "sent a notice to Plaintiffs' mortgage company, attaching a lien to the Plaintiffs' mortgage, in violation of Rule 4.1". Again, Plaintiffs misrepresent the facts and the law. The Condominium Statute, at section 6(c), provides that a condominium association engaged in collection of delinquent assessments must send the first mortgage holder of any subject unit a 30-day and a 60-day notice in order to secure the priority status of the condominium lien. These notices, attached as Exhibit "9", are the only correspondence sent by Defendants to Plaintiffs' mortgage holder. Further, the Condominium Statute, at section 6(a)(ii), provides that unpaid assessments constitute a lien on a unit on a unit from the time the assessment becomes due. This is a statutory lien requiring no affirmative act to perfect. Defendants have, indeed, taken no affirmative act to establish a lien on the Plaintiffs unit (and certainly not on their mortgage which is, itself, a lien). As the condominium lien occurs by operation of statutory law and Defendants have taken no affirmative action to create a lien, Rule 4.1 simply does not apply to the present circumstances.

### 2. The Plaintiffs Are Not Representatives of a Class

Despite requesting that they be appointed representatives of a class in their Prayer for Relief, Plaintiffs have failed, entirely, to demonstrate that they meet the requirements set forth in Massachusetts Federal Rules of Civil Procedure Rule 23. The Complaint lacks a single allegation aimed at satisfying any of the requirements of Rule 23.

Notwithstanding the above, Defendants affirmatively state that the Plaintiffs are not representatives of a class. Condominium debt is only one specific portion of Defendants' collection practice. Further, within the bounds of the law, different condominiums manage their collection cases in a manner best suited to their needs. Finally, no other unit owner of Boylston, the condominium at issue, has received collection correspondence from Defendants.

### C. THE PLAINTIFFS' ACTION IS RETALIATORY, FRIVOLOUS AND IN BAD FAITH

As set forth above, Plaintiffs filed the present action after being ordered by a Massachusetts Superior Court to pay the debt sought in collection by Defendants. Further, as set forth above, Plaintiffs' allegations contradict and misrepresent both fact and law. Since many of these misrepresentations apply to circumstances which were thoroughly explained to the Plaintiffs prior to the filing of the Complaint in this matter, the Plaintiffs' action appears retaliatory, frivolous and in bad faith.

Accordingly, as set forth in the accompanying Motion, Defendants reserve their rights, to the extent permitted by law, with respect to additional defenses and to counterclaims against the Plaintiffs as well as to bring independent claims against Diane Scott-Jones and John E. Jones, Jr. including, but not limited to, a Motion filed, pursuant to Massachusetts Federal Rules of Civil Procedure Rule 54(d), subsequent to this

14

Honorable Court's decision on the Defendants' Motion to Dismiss stating that Plaintiffs'

action is retaliatory, frivolous and in bad faith and seeking Defendants' attorneys' fees

and costs relative to defense of this suit.

Respectfully submitted,
For all Defendants

Date:  March 15, 2005

_____

Charles A. Perkins, Jr.
BBO# 394430
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978)251-8509

_____

Gary M. Daddario
BBO# 639615
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978)251-8509



EXHIBIT

tabbies®

"1"
Memorandum

## Commonwealth of Massachusetts
## MIDDLESEX SUPERIOR COURT
## Case Summary
## Civil Docket

# Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond

Details for Docket: MICV2003-05103

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2003-05103 | **Caption:** | Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond |
| **Filing Date:** | 12/18/2003 | **Case Status:** | Needs evaluation |
| **Status Date:** | 06/03/2004 | **Session:** | Cv F (10A Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Standard |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | X | **Discovery:** | |
| **Service Date:** | 03/17/2004 | **Disposition:** | 07/15/2004 |
| **Rule 15:** | | **Rule 12/19/20:** | |
| **Final PTC:** | 06/15/2004 | **Rule 56:** | |
| **Answer Date:** | 05/16/2004 | **Jury Trial:** | NO |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2003-05103 | **Caption:** | Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond |
| **Filing Date:** | 12/18/2003 | **Case Status:** | Needs evaluation |
| **Status Date:** | 06/03/2004 | **Session:** | Cv F (10A Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Miscellaneous |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | X | **Discovery:** | |
| **Service Date:** | 03/17/2004 | **Disposition:** | 07/15/2004 |
| **Rule 15:** | | **Rule 12/19/20:** | |
| **Final PTC:** | 06/15/2004 | **Rule 56:** | |
| **Answer Date:** | 05/16/2004 | **Jury Trial:** | NO |

## Parties Involved

5 Parties Involved in Docket: MICV2003-05103

| Party Involved: | | Role: | Defendant |
|---|---|---|---|
| Last Name: | Jones, Jr., indiv. and Tr 392-394 Boylston Commons Condo Tr. | First Name: | John |
| Address: | 392 Boylston Street | Address: | |
| City: | Newton Center | State: | MA |
| Zip Code: | 02459 | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Defendant |
|---|---|---|---|
| Last Name: | Scott - Jones, indiv and tr 392-394 Boylston Commons Condo Tr. | First Name: | Diane |
| Address: | 392 Boylston Street | Address: | |
| City: | Newton Center | State: | MA |
| Zip Code: | 02459 | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Plaintiff |
|---|---|---|---|
| Last Name: | Cheung, indiv & Derivatively on behalf 392-394 Boylstonn Commons | First Name: | Yu |
| Address: | | Address: | |
| City: | | State: | |
| Zip Code: | | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Plaintiff |
|---|---|---|---|
| Last Name: | Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond | First Name: | Qing |
| Address: | | Address: | |
| City: | | State: | |
| Zip Code: | | Zip Ext: | |
| Telephone: | | | |

| Party Involved: | | Role: | Receiver |
|---|---|---|---|
| Last Name: | Sarkis | First Name: | Sheryl A |
| Address: | Meredith Management Corporation | Address: | One Bridge Street, Suite 300 |

| | | | |
|---|---|---|---|
| City: | Newton | State: | MA |
| Zip Code: | 02458 | Zip Ext: | 1101 |
| Telephone: | | | |

## Attorneys Involved

11 Attorneys Involved for Docket: MICV2003-05103

| | | | |
|---|---|---|---|
| Attorney Involved: | | Firm Name: | PEAB01 |
| Last Name: | Connelly Jr | First Name: | Frederick E |
| Address: | 50 Rowes Wharf | Address: | 7th floor |
| City: | Boston | State: | MA |
| Zip Code: | 02110 | Zip Ext: | 3342 |
| Telephone: | 617-951-2100 | Tel Ext: | |
| Fascimile: | 617-951-2125 | Representing: | Jones, Jr., indiv. and Tr 392-3' Boylston Commons Condo Tr., John (Defendant) |

| | | | |
|---|---|---|---|
| Attorney Involved: | | Firm Name: | MARC03 |
| Last Name: | Moriarty | First Name: | Thomas O |
| Address: | 45 Braintree Hill Park | Address: | Suite 107 |
| City: | Braintree | State: | MA |
| Zip Code: | 02184 | Zip Ext: | |
| Telephone: | 781-843-5000 | Tel Ext: | 137 |
| Fascimile: | 781-843-1529 | Representing: | Lu, indiv & Derivatively on beh 392-394 Boylston Commons Cond, Qing (Plaintiff) |

| | | | |
|---|---|---|---|
| Attorney Involved: | | Firm Name: | PEAB01 |
| Last Name: | Connelly Jr | First Name: | Frederick E |
| Address: | 50 Rowes Wharf | Address: | 7th floor |
| City: | Boston | State: | MA |
| Zip Code: | 02110 | Zip Ext: | 3342 |
| Telephone: | 617-951-2100 | Tel Ext: | |
| Fascimile: | 617-951-2125 | Representing: | Scott – Jones, indiv and tr 392 394 Boylston Commons Condc Tr., Diane (Defendant) |

| Attorney Involved: | | Firm Name: | |
|---|---|---|---|
| Last Name: | Glaser | First Name: | Marian H |
| Address: | 33 Mount Vernon Street | Address: | |
| City: | Boston | State: | MA |
| Zip Code: | 02108 | Zip Ext: | |
| Telephone: | 617-367-8080 | Tel Ext: | |
| Fascimile: | 617-742-4953 | Representing: | Scott - Jones, indiv and tr 392 394 Boylston Commons Condo Tr., Diane (Defendant) |

| Attorney Involved: | | Firm Name: | |
|---|---|---|---|
| Last Name: | Glaser | First Name: | Marian H |
| Address: | 33 Mount Vernon Street | Address: | |
| City: | Boston | State: | MA |
| Zip Code: | 02108 | Zip Ext: | |
| Telephone: | 617-367-8080 | Tel Ext: | |
| Fascimile: | 617-742-4953 | Representing: | Jones, Jr., indiv. and Tr 392-3 Boylston Commons Condo Tr., John (Defendant) |

| Attorney Involved: | | Firm Name: | |
|---|---|---|---|
| Last Name: | Goodman | First Name: | Henry A |
| Address: | Goodman & Shapiro | Address: | 3 Allied Drive, Suite 120 |
| City: | Dedham | State: | MA |
| Zip Code: | 02026 | Zip Ext: | |
| Telephone: | 781-251-9800 | Tel Ext: | |
| Fascimile: | 781-329-8280 | Representing: | Scott - Jones, indiv and tr 392 394 Boylston Commons Condo Tr., Diane (Defendant) |

| Attorney Involved: | | Firm Name: | |
|---|---|---|---|
| Last Name: | Goodman | First Name: | Henry A |
| Address: | Goodman & Shapiro | Address: | 3 Allied Drive, Suite 120 |
| City: | Dedham | State: | MA |
| Zip Code: | 02026 | Zip Ext: | |
| Telephone: | 781-251-9800 | Tel Ext: | |
| Fascimile: | 781-329-8280 | Representing: | Jones, Jr., indiv. and Tr 392-3 Boylston Commons Condo Tr., |

John (Defendant)

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Laymon | **First Name:** | John W |
| **Address:** | 77 Franklin Street | **Address:** | 3rd Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-338-0089 | **Tel Ext:** | |
| **Fascimile:** | 617-338-0090 | **Representing:** | Scott - Jones, indiv and tr 392-394 Boylston Commons Condo Tr., Diane (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Laymon | **First Name:** | John W |
| **Address:** | 77 Franklin Street | **Address:** | 3rd Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-338-0089 | **Tel Ext:** | |
| **Fascimile:** | 617-338-0090 | **Representing:** | Jones, Jr., indiv. and Tr 392-394 Boylston Commons Condo Tr., John (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | MARC03 |
|---|---|---|---|
| **Last Name:** | Troyer | **First Name:** | Douglas A |
| **Address:** | 45 Braintree Hill Office Park | **Address:** | Suite 107 |
| **City:** | Braintree | **State:** | MA |
| **Zip Code:** | 02184 | **Zip Ext:** | |
| **Telephone:** | 781-843-5000 | **Tel Ext:** | |
| **Fascimile:** | 781-843-1529 | **Representing:** | Lu, indiv & Derivatively on beh 392-394 Boylston Commons Cond, Qing (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | MARC03 |
|---|---|---|---|
| **Last Name:** | Troyer | **First Name:** | Douglas A |
| **Address:** | 45 Braintree Hill Office Park | **Address:** | Suite 107 |
| **City:** | Braintree | **State:** | MA |
| **Zip Code:** | 02184 | **Zip Ext:** | |
| **Telephone:** | 781-843-5000 | **Tel Ext:** | |

| Fascimile: | 781-843-1529 | Representing: | Cheung, indiv & Derivatively o behalf 392-394 Boylstonn Commons, Yu (Plaintiff) |

## Calendar Events

16 Calendar Events for Docket: MICV2003-05103

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 12/23/2003 | 14:00 | Motion/Hearing: prel inj | F | Event not held-joint request |
| 2 | 01/06/2004 | 14:00 | Motion/Hearing: prel inj | F | Event not held-req of Defendant |
| 3 | 01/13/2004 | 14:00 | Motion/Hearing: prel inj | F | Event not held-joint request |
| 4 | 01/20/2004 | 14:00 | Motion/Hearing: prel inj | F | Event not held-req of Plaintiff |
| 5 | 01/20/2004 | 14:00 | Motion/Hearing: prel inj | F | Event not held-joint request |
| 6 | 01/26/2004 | 14:00 | Motion/Hearing: prel inj | F | Event held as scheduled |
| 7 | 05/12/2004 | 14:00 | Motion/Hearing: Contempt | F | Event not held-req of Plaintiff |
| 8 | 05/27/2004 | 14:00 | Motion/Hearing: Contempt | F | Event held as scheduled |
| 9 | 06/09/2004 | 14:00 | Conf: review status | F | Event held as scheduled |
| 10 | 06/16/2004 | 14:00 | Motion/Hearing: appoint receiver | F | Event not held-joint request |
| 11 | 06/23/2004 | 14:00 | Motion/Hearing: appoint receiver | F | Event held as scheduled |
| 12 | 07/22/2004 | 14:00 | Motion/Hearing: Assess Atty Fees | F | Event rescheduled by court prio date |
| 13 | 08/23/2004 | 14:00 | Motion/Hearing: Assess Atty Fees | F | Event held as scheduled |
| 14 | 09/17/2004 | 14:00 | Status: Clerk Follow UP | F | Event held as scheduled |
| 15 | 12/20/2004 | 16:30 | Status: Review Annual Fee | F | Event canceled not re-scheduled |
| 16 | 12/22/2004 | 14:00 | Motion/Hearing: Reconsideration | L | Event held as scheduled |

## Full Docket Entries

304 Docket Entries for Docket: MICV2003-05103

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 12/18/2003 | 1 | Complaint & civil action cover sheet filed |
| 12/18/2003 | | Origin 1, Type E99, Track X. |
| 12/18/2003 | 2 | Plaintiff's MOTION for appointment of special process server DHR |
| 12/18/2003 | 2 | Constables motion allowed. (Brassard, J.) |
| 12/18/2003 | 3 | Plaintiff's MOTION for Preliminary Injunction |

| 12/18/2003 | 4 | Memorandum of Law in support of plaintiffs' motion for preliminary |
| 12/18/2003 | 4 | injunction. |
| 12/18/2003 | 5 | Plaintiff's MOTION for Short Order of Notice, the within matter is |
| 12/18/2003 | 5 | set down for hearing on December 23, 2003 at 2:00pm. |
| 12/18/2003 | 6 | Summons and order of notice issued; returnable December 23, 2003cat |
| 12/18/2003 | 6 | 2:00 pm in courtroom 10A. |
| 12/23/2003 | 7 | SERVICE RETURNED: Diane Scott - Jones, indiv and tr 392-394 Boylston |
| 12/23/2003 | 7 | Commons Condo Tr.(Defendant) (L & U) |
| 12/23/2003 | 8 | SERVICE RETURNED: John Jones, Jr., indiv. and Tr 392-394 Boylston |
| 12/23/2003 | 8 | Commons Condo Tr.(Defendant) (L & U) |
| 12/23/2003 | 9 | SERVICE RETURNED (order of notice) defendants (L & U) |
| 12/23/2003 |   | MOTION (P#3) After hearing TRO to issue defendants are restrained |
| 12/23/2003 |   | from interfering with the plaintiffs ability to remove snow from the |
| 12/23/2003 |   | common driveway and the entrance to the plaintiffs garage & Unit, |
| 12/23/2003 |   | this order is entered for the purpose of allowing the plaintiff to |
| 12/23/2003 |   | remove snow & Deal with any emergency issue that may arise. (Raymond |
| 12/23/2003 |   | J. Brassard, Justice). |
| 12/23/2003 | 10 | TEMPORARY RESTRAINING ORDER issued; $90.00 fee received, returnable |
| 12/23/2003 | 10 | January 06, 2004 at 2:00pm in courtroom 10A under endorsement Of |
| 12/23/2003 | 10 | Brassard, J. this day. (Brassard, J.) |
| 01/05/2004 | 11 | ORDER continuing TRO in force until January 13, 2004 at 2:00 PM by |
| 01/05/2004 | 11 | agreement. By the Court (Chernoff, J.) copies sent |
| 01/08/2004 | 12 | SERVICE RETURNED (TRO): Diane Scott - Jones ,indiv and tr 392 |
| 01/08/2004 | 12 | Boylston Commons Condo Tr and Jones Jones, Jr., indiv, and Tr of |
| 01/08/2004 | 12 | 392-394 Boylston Commons Condo Tr., service made on January 24, 2003 |
| 01/08/2004 | 12 | (last and usual) |
| 01/26/2004 | 13 | PRELIMINARY INJUNCTION - After an adversary hearing held this day, |
| 01/26/2004 | 13 | this Court hereby ORDERS that: 1. The plaintiffs and defendants shall |
| 01/26/2004 | 13 | each hold in escrow the monies due from each as the monthly |
| 01/26/2004 | 13 | condominium fees. In addition, the defendants shall hold in escrow |
| 01/26/2004 | 13 | the monies they removed from the 392-394 Boylston Commons Condominium |
| 01/26/2004 | 13 | Trust ("the Trust") common funds account. Each party shall promptly |
| 01/26/2004 | 13 | provide the opposing party with a copy of all monthly statements |
| 01/26/2004 | 13 | obtained regarding these escrow accounts, beginning with the monthly |
| 01/26/2004 | 13 | statement for January 2004 received in February 2004. Each party |
| 01/26/2004 | 13 | shall also inform the opposing party of the identity of the escrow |
| 01/26/2004 | 13 | agent for the escrow account. No money shall be withdrawn from the |
| 01/26/2004 | 13 | escrow account without the approval of the opposing party, the |
| 01/26/2004 | 13 | party's attorney, the arbitrator, or the court. 2. The defendants, on |
| 01/26/2004 | 13 | behalf of the Trust, may enter forthwith into an agreement with Wayne |
| 01/26/2004 | 13 | Nigro for him and his employees to plow the property of the Trust to |

| 01/26/2004 | 13 | remove snow for the winter of 2004. That agreement shall not extend |
| 01/26/2004 | 13 | beyond the spring of 2004. The parties shall share equally in paying |
| 01/26/2004 | 13 | the cost of snowplowing. 3. In the event of an emergency involving |
| 01/26/2004 | 13 | the common area or other area for which the Trust would be |
| 01/26/2004 | 13 | responsible, the party who first observes the emergency shall |
| 01/26/2004 | 13 | immediately attempt to contact the opposing party by telephone in an |
| 01/26/2004 | 13 | effort to reach agreement as to how to address the emergency. If the |
| 01/26/2004 | 13 | party who observes the emergency cannot reach the opposing party by |
| 01/26/2004 | 13 | telephone despite best efforts or, upon reaching that party, cannot |
| 01/26/2004 | 13 | come to agreement as to what to do, the party who observes the |
| 01/26/2004 | 13 | emergency may exercise his or her best judgment as to how to address |
| 01/26/2004 | 13 | the emergency. The action that should be taken, in the absence of |
| 01/26/2004 | 13 | agreement, shall be limited to ending the emergency. Its cost, |
| 01/26/2004 | 13 | without the approval of the opposing party, the court, or the |
| 01/26/2004 | 13 | arbitrator, shall not exceed $500. In order to diminish the risk that |
| 01/26/2004 | 13 | the parties shall not be able to reach each other during an |
| 01/26/2004 | 13 | emergency, the parties, no later than January 30, 2004, shall provide |
| 01/26/2004 | 13 | each other with their home, work, and cell telephone numbers, and the |
| 01/26/2004 | 13 | work and cell telephone numbers of their attorneys. In addition, no |
| 01/26/2004 | 13 | later than January 30, 2004, each party shall provide the other with |
| 01/26/2004 | 13 | the name and telephone numbers of two plumbers and two electricians |
| 01/26/2004 | 13 | who may be called in the event of an emergency. If a party acts |
| 01/26/2004 | 13 | without the agreement of the other party to address an emergency, and |
| 01/26/2004 | 13 | needs to call a plumber or electrician, the first call shall be to |
| 01/26/2004 | 13 | one of the two plumbers or electricians provided by the other party. |
| 01/26/2004 | 13 | If that plumber or electrician cannot be reached, the second call may |
| 01/26/2004 | 13 | be to a plumber or electrician on that party's own list. The cost of |
| 01/26/2004 | 13 | addressing an emergency shall be borne equally by the parties except |
| 01/26/2004 | 13 | that, if a party acts unilaterally to address what is plainly not an |
| 01/26/2004 | 13 | emergency, that party shall bear the full cost of the response. 4. No |
| 01/26/2004 | 13 | changes are to be made to the rear or side yard of the Condominium |
| 01/26/2004 | 13 | property. 5. This Order shall remain in effect until the resolution |
| 01/26/2004 | 13 | of this matter by (or further order of) the arbitrator or the court. |
| 01/26/2004 | 13 | (Gants, J.) certified copies sent 1/27/04 |
| 05/05/2004 | 14 | Complaint for contempt filed by Qing Lu, indiv & Derivatively on |
| 05/05/2004 | 14 | behalf 392-394 Boylston Commons Cond |
| 05/05/2004 |    | MOTION (P#14) Summons on contempt returnable 5/12, 2004 at 2:00pm . |
| 05/05/2004 |    | (Ralph D. Gants, Justice). |
| 05/05/2004 | 15 | Summons on contempt issued re: defendants (Ralph D. Gants, Justice) |
| 05/05/2004 | 15 | returnable May 12, 2004 at 2:00pm In 10A. |
| 05/19/2004 | 16 | Plff's Amended Verified Complaint for Civil Contempt. A hearing on |

| 05/19/2004 | 16 | the complaint for contempt shall be held on Thursday, May 27, 2004 at |
| 05/19/2004 | 16 | 2:00 PM in Courtroom 10A. The defendant shall appear at that hearing |
| 05/19/2004 | 16 | regardless of whether or not they obtain new counsel. (Gants, J.) |
| 05/19/2004 | 17 | Plff's Emergency Motion for Alternative Service. Filed in Court and |
| 05/19/2004 | 17 | Allowed. (Gants, J.) |
| 05/19/2004 | 18 | Summons on contempt issued returnable May 27, 2004 at 2:00 PM in |
| 05/19/2004 | 18 | Courtroom 10A. |
| 05/27/2004 | 18 | Affidavit of Marian H. Glaser, Esq. RE: Appearance |
| 06/03/2004 | 19 | FINDINGS AND ORDER: On January 26, 2004, after an adversary |
| 06/03/2004 | 19 | hearing, this Court issued a preliminary injunction that ordered, in |
| 06/03/2004 | 19 | part, that: The plaintiffs and defendants shall each hold in escrow |
| 06/03/2004 | 19 | the monies due from each as the monthly condominium fees. In |
| 06/03/2004 | 19 | addition, the defendants shall hold in escrow the monies they removed |
| 06/03/2004 | 19 | from the 392-394 Boylston Commons Condominium Trust ("the Trust") |
| 06/03/2004 | 19 | common funds account. Each party shall promptly provide the opposing |
| 06/03/2004 | 19 | party with a copy of all monthly statements obtained regarding these |
| 06/03/2004 | 19 | escrow accounts, beginning with the monthly statement for January |
| 06/03/2004 | 19 | 2004 received in February 2004. Each party shall also inform the |
| 06/03/2004 | 19 | opposing party of the identity of the escrow agent for the escrow |
| 06/03/2004 | 19 | account. No money shall be withdrawn from the escrow account without |
| 06/03/2004 | 19 | the approval of the opposing party, the party's attorney, the |
| 06/03/2004 | 19 | arbitrator, or the court. The plaintiffs have asked this Court |
| 06/03/2004 | 19 | to find the defendants in contempt of this provision of the |
| 06/03/2004 | 19 | Preliminary Injunction because they failed to hold this money in |
| 06/03/2004 | 19 | escrow and provide them with monthly statements regarding the escrow |
| 06/03/2004 | 19 | accounts. Based on the affidavits submitted at the contempt hearing, |
| 06/03/2004 | 19 | this Court finds that the defendants failed to place the monthly |
| 06/03/2004 | 19 | condominium fees in escrow and failed to provide the required monthly |
| 06/03/2004 | 19 | statements regarding the escrow account. Because of the latter, it is |
| 06/03/2004 | 19 | not plain to this Court whether the monies the defendants removed |
| 06/03/2004 | 19 | from the Trust's common funds account were actually placed in escrow. |
| 06/03/2004 | 19 | The defendant John Jones, Jr. has credibly demonstrated that he sent |
| 06/03/2004 | 19 | a check in the amount of $2,536.47 to his attorney, Frederick |
| 06/03/2004 | 19 | Connelly, Jr. at Peabody & Arnold LLP, but it is not clear whether |
| 06/03/2004 | 19 | these are all the monies removed from the Trust's common funds |
| 06/03/2004 | 19 | account or whether Attorney Connelly placed these funds in an escrow |
| 06/03/2004 | 19 | account. Mr. Jones attests that responsibility for failing to |
| 06/03/2004 | 19 | adhere to this Court's Order rests with Attorney Connelly, who served |
| 06/03/2004 | 19 | as the escrow agent and, according to Mr. Jones, told him not to send |
| 06/03/2004 | 19 | the monthly condominium fees. Attorney Connelly, without leave of |
| 06/03/2004 | 19 | Court, has withdrawn as defense counsel in this action, contending |

| 06/03/2004 | 19 | that he was discharged by the defendants, who no longer wished to |
| 06/03/2004 | 19 | communicate with him. This Court need not allocate blame between |
| 06/03/2004 | 19 | Attorney Connelly and the defendants, because the defendants retain |
| 06/03/2004 | 19 | responsibility for complying with this Court's Order. This Court, |
| 06/03/2004 | 19 | therefore, finds the defendants in civil contempt for their failure |
| 06/03/2004 | 19 | to comply with the above-quoted provision in the preliminary |
| 06/03/2004 | 19 | injunction. A finding of civil contempt permits this Court to |
| 06/03/2004 | 19 | impose two types of sanctions: remedial and coercive. "Remedial or |
| 06/03/2004 | 19 | compensatory actions are essentially backward looking, seeking to |
| 06/03/2004 | 19 | compensate the complainant through the payment of money for damages |
| 06/03/2004 | 19 | caused by past acts of disobedience. Coercive sanctions, in contrast, |
| 06/03/2004 | 19 | look to the future and are designed to aid the plaintiff by bringing |
| 06/03/2004 | 19 | a defiant party into compliance with the court order or by assuring |
| 06/03/2004 | 19 | that a potentially contumacious party adheres to an injunction by |
| 06/03/2004 | 19 | setting forth in advance the penalties the court will impose if the |
| 06/03/2004 | 19 | party deviates from the path of obedience." Labor Relations |
| 06/03/2004 | 19 | Commission v. Fall River Educators' Association, 382 Mass. 465, 476 |
| 06/03/2004 | 19 | (1981), quoting Latrobe Steel Co. v. United Steelworkers Local 1537, |
| 06/03/2004 | 19 | 545 F.2d 1336, 1344 (3d Cir. 1976). This Court need not impose |
| 06/03/2004 | 19 | coercive sanctions because the defendants have retained new counsel, |
| 06/03/2004 | 19 | and this Court is confident that she will ensure future compliance |
| 06/03/2004 | 19 | with the preliminary injunction. The only remedial sanction sought |
| 06/03/2004 | 19 | (and the only sanction appropriate) is the award of the reasonable |
| 06/03/2004 | 19 | attorney's fees and expenses incurred by the plaintiffs in |
| 06/03/2004 | 19 | prosecuting this contempt action. This Court awards the plaintiff |
| 06/03/2004 | 19 | those reasonable attorney's fees and expenses. It would be |
| 06/03/2004 | 19 | fundamentally unfair to impose on the plaintiffs the burden of paying |
| 06/03/2004 | 19 | the attorney's fees and expenses that were necessitated by the |
| 06/03/2004 | 19 | defendants' failure to comply with this Court's Order. The |
| 06/03/2004 | 19 | defendants shall reimburse the plaintiffs for these fees and |
| 06/03/2004 | 19 | expenses, because their misconduct caused these fees and expenses to |
| 06/03/2004 | 19 | be incurred. ORDER Having found the defendants in civil contempt, |
| 06/03/2004 | 19 | this Court ORDERS that: 1. The defendants shall pay the plaintiffs |
| 06/03/2004 | 19 | the reasonable attorney's fees and expenses incurred by the |
| 06/03/2004 | 19 | plaintiffs in prosecuting this contempt action. 2. No later than |
| 06/03/2004 | 19 | June 30, 2004, plaintiffs' counsel shall serve upon defense counsel |
| 06/03/2004 | 19 | a request for attorney's fees and expenses, supported by an affidavit |
| 06/03/2004 | 19 | setting forth the reasonable attorney's fees and expenses incurred by |
| 06/03/2004 | 19 | the plaintiffs in litigating this contempt action. The defendants |
| 06/03/2004 | 19 | shall have until July 16, 2004 to serve their opposition to the |
| 06/03/2004 | 19 | request, and the plaintiffs shall file both the request and the |

| | | |
|---|---|---|
| 06/03/2004 | 19 | opposition no later than July 19, 2004. A hearing on the application |
| 06/03/2004 | 19 | for attorney's fees and expenses shall be conducted on July 22, 2004 |
| 06/03/2004 | 19 | at 2 p.m. Dated: May 28, 2004 (Ralph D. Gants, Justice) copies |
| 06/03/2004 | 19 | mailed June 3, 2004 |
| 06/09/2004 | 20 | Defendant Motion to Withdraw as Counsel |
| 06/09/2004 | | MOTION (P#22) ALLOWED after hearing, both as counsel and as escrow |
| 06/09/2004 | | agents. The defendants shall be decide to represent themselves pro'se |
| 06/09/2004 | | until new counsel files an appearance on their behalf. The |
| 06/09/2004 | | defendants shall notify the court and counsel of the identity of the |
| 06/09/2004 | | new escrow agent no later then June 18, 2004. Dated: June 9, 2004 |
| 06/09/2004 | | (Ralph D. Gants, Justice) Notices mailed June 14, 2004 |
| 06/23/2004 | 21 | Plaintiffs' MOTION for Appointment of Receiver and Proposed Order of |
| 06/23/2004 | 21 | Appointment of Receiver. |
| 06/24/2004 | 21 | ORDER APPOINTING RECEIVER: 1. That until further order of the |
| 06/24/2004 | 21 | Court, the Parties, their agents, servants and all those acting in |
| 06/24/2004 | 21 | concert with them are restrained from performing any duties as |
| 06/24/2004 | 21 | trustees of the 392-394 Boylston Commons Condominium Trust, |
| 06/24/2004 | 21 | ("Condominium"); 2. That until further order of the Court, Sheryl |
| 06/24/2004 | 21 | A. Sarkis of Meredith Management Corporation, One Bridge Street, |
| 06/24/2004 | 21 | Suite 300, Newton, MA 02458-1101 be and is hereby appointed Receiver |
| 06/24/2004 | 21 | of the estate, property, monies, debts and effects of every kind and |
| 06/24/2004 | 21 | nature of or belonging to the 392-394 Boylston Commons Condominium |
| 06/24/2004 | 21 | Trust; and she is hereby authorized and directed to take charge of |
| 06/24/2004 | 21 | and the porperty held in trust, the organization of Unit Owners of |
| 06/24/2004 | 21 | the Condominium pursuant to the Declaration of Trust in order to do |
| 06/24/2004 | 21 | the things necessary to operate, maintain, repair, replace, and alter |
| 06/24/2004 | 21 | the common areas of the Condominium and otherwise administer and care |
| 06/24/2004 | 21 | for the common areas and facilities of the Condominium, within the |
| 06/24/2004 | 21 | limitations set forth herein, as the Receiver deems proper; and, |
| 06/24/2004 | 21 | within the limitations set forth herein, she is hereby authorized and |
| 06/24/2004 | 21 | directed to effectuate all the powers and duties provided in and |
| 06/24/2004 | 21 | subject to MGLc. 156,s51 and MGLc. 155ss 52-53, Mass R Civ P 66, MGLc |
| 06/24/2004 | 21 | 183A, and Article V of the Declaration of Trust which incorporates |
| 06/24/2004 | 21 | the By-Laws of theCondominium. ( A copy of the By-Laws at Article V |
| 06/24/2004 | 21 | of the Declarartion of Trust are appended to this Order as Exhibit |
| 06/24/2004 | 21 | "1"); The Receiver shall promptly establish a budget for The |
| 06/24/2004 | 21 | Condominium operation for the remander of 2004, and ensure that |
| 06/24/2004 | 21 | sufficient funding is colleted from the Unit Owners to carry out the |
| 06/24/2004 | 21 | Receiver's duties as required by the terms of the Condominium |
| 06/24/2004 | 21 | documents at GL c 183A. 3. That until further order of the Court, |
| 06/24/2004 | 21 | the Receiver shall take all necessary and reasonable actions to |

| 06/24/2004 | 21 | assure the Condominium's compliance with all city, state and fedeal |
| 06/24/2004 | 21 | law in connection with any and all city, state and federal |
| 06/24/2004 | 21 | enforcement orders regarding the common areas of the Condominium. Any |
| 06/24/2004 | 21 | and all costs associated with complying with same shall be the |
| 06/24/2004 | 21 | responsibilty of both the Plaintiff and the Defendants who shall pay |
| 06/24/2004 | 21 | one-half of the cost of correcting the problems in the common areas |
| 06/24/2004 | 21 | of the condominium which is not clevered by insurance; 4. That |
| 06/24/2004 | 21 | until further order of the Court, the Parties shall turn over to |
| 06/24/2004 | 21 | said Receiver, all the property, monies, debts and effects of every |
| 06/24/2004 | 21 | kind and nature, belonging to the Condominium in the hands, |
| 06/24/2004 | 21 | possession or control, together with all books, deeds, documents, and |
| 06/24/2004 | 21 | papers relating thereto. It is further ordered that the escrow |
| 06/24/2004 | 21 | agents for the Parties, identified in compliance with this Court's |
| 06/24/2004 | 21 | January 26, 2004 Order, shall turn over said Receiver all monies held |
| 06/24/2004 | 21 | in escrow on behalf of the Parties. The Receiver shall, upon |
| 06/24/2004 | 21 | receipt of the escrow funds, open a checking account on behalf of the |
| 06/24/2004 | 21 | Condominium and deposit the escrow funds in said account for further |
| 06/24/2004 | 21 | condominium business as authorized under the constituent documents of |
| 06/24/2004 | 21 | the Condominium and as set forth herein. 5. The Receiver shall have |
| 06/24/2004 | 21 | no authority to assign financial liability for or otherwise |
| 06/24/2004 | 21 | prosecute, resolve or dismiss any action concerning the Parties |
| 06/24/2004 | 21 | existing dispute regarding whether any Trustee has breahed a |
| 06/24/2004 | 21 | fiduciary duty or whether any Trustee or Unit Owner committed |
| 06/24/2004 | 21 | wrongful actions in violation of the Condominium Documents and |
| 06/24/2004 | 21 | General Laws Chapter 183A including, without limitation, the dispute |
| 06/24/2004 | 21 | regarding the rights, duties and financial obligations of the Parties |
| 06/24/2004 | 21 | as a result of the landscaping projects conducted in the common areas |
| 06/24/2004 | 21 | of the Condominium in 2003. Nothing in this Paragraph is intended to |
| 06/24/2004 | 21 | limit the Receiver's ability to act with respect to the completion of |
| 06/24/2004 | 21 | the landscape project or compliance with state claims or municipal |
| 06/24/2004 | 21 | orders with regard to the common areas of the Condominium. This |
| 06/24/2004 | 21 | Paragraph is intended to allow the Parties to prosecute and/or |
| 06/24/2004 | 21 | resolve any and all financial claims, which stem from actions taken |
| 06/24/2004 | 21 | by either Party prior to the date of this Order; 6. The Receiver |
| 06/24/2004 | 21 | shall not be authorized to effect any improvements to the common |
| 06/24/2004 | 21 | areas and facilities of the Cndominium without compliance with MGL c |
| 06/24/2004 | 21 | 183A, s 19. The restoration of the backyard is presently a |
| 06/24/2004 | 21 | necessary repair and not an improvement and, therefore, the |
| 06/24/2004 | 21 | restoration of the existing elemtns does not require compliance with |
| 06/24/2004 | 21 | zmglc 183A, s18. 7. In the event both Unit Owners agree on a course |
| 06/24/2004 | 21 | of action the Receiver shall undertake such action so long as it |

| 06/24/2004 | 21 | complies with MGL c 183A and the constituent documents of the |
| 06/24/2004 | 21 | Condominium. The Parties shall have the right to jointly petition |
| 06/24/2004 | 21 | the Court to authorize the Receiver to take action which might not |
| 06/24/2004 | 21 | otherwise comply with MGLc 183A or the constituent documents of the |
| 06/24/2004 | 21 | Condominium; 8. That any party, or said Receiver, may apply to the |
| 06/24/2004 | 21 | Court, from time to time, for such further directions or orders, as |
| 06/24/2004 | 21 | may be necessary ; and 9. Grant such other and further relief as |
| 06/24/2004 | 21 | this Court deems just and equitable. (Gants, J.) copies sent |
| 06/24/2004 | 21 | 7/21/04 certified to Receiver 7/21/04 |
| 07/19/2004 | 22 | Plffs' MOTION to Assess attys' fees, defts' opposition |
| 07/20/2004 | 23 | Defendants' Opposition to plaintiffs' motion to assess attorney's fees |
| 08/23/2004 | 23 | Supplemental Affidavit of counsel Douglas A. Troyer, Esq. (Filed in |
| 08/23/2004 | 23 | Court) |
| 08/24/2004 | 24 | Defendant 's MOTION to remove and replace receiver. |
| 09/16/2004 | 25 | Defts' MOTION for reconsideration of Court Order dated 5/28/04, |
| 09/16/2004 | 25 | (P#19), affidavit in support, plffs' opposition |
| 09/16/2004 | 26 | Plffs' OPPOSITION to defts' motion to remove & replace receiver (re: |
| 09/16/2004 | 26 | #24) |
| 12/22/2004 |  | Hearing on Motion for Attorney Fees held, matter taken under |
| 12/22/2004 |  | advisement. (Gants, J.). |
| 12/23/2004 | 27 | ORDER: After hearing this day, this Court ORDERS as follows: 1. The |
| 12/23/2004 | 27 | Defendants' motion to reconsider this Court's Order dated May 28, |
| 12/23/2004 | 27 | 2004 finding the defendants in civil contempt is DENIED. 2. Pursuant |
| 12/23/2004 | 27 | to the May 28, 2004 Order finding civil contempt, this Court ORDERS |
| 12/23/2004 | 27 | that the defendants pay the plaintiff $1,000 in attorney's fees to |
| 12/23/2004 | 27 | reimburse the plaintiffs for the reasonable attorney's fees incurred |
| 12/23/2004 | 27 | in prosecuting this contempt action. 3. The defendants' motion to |
| 12/23/2004 | 27 | remove and replace the receiver is DENIED without prejudice. |
| 12/23/2004 | 27 | However, the receiver is ORDERED to provide both parties with copies |
| 12/23/2004 | 27 | of any correspondence received from any party or sent to her to any |
| 12/23/2004 | 27 | party. (Ralph D. Gants, Justice of the Superior Court). dated |
| 12/23/2004 | 27 | December 22, 2004 and entered on docket December 23, 2004. copies |
| 12/23/2004 | 27 | mailed December 23, 2004. |
| 12/23/2004 |  | File sent back to Cambridge Superior Court to the Attention of Karen |
| 12/23/2004 |  | O'Connor. |
| 01/03/2005 | 28 | Plaintiff's Counsel Motion to Withdraw Appearance, Affidavit of |
| 01/03/2005 | 28 | Counsel In Support of Motion to Withdraw Appearance |
| 01/18/2005 | 29 | Plaintiff Diane Scott - Jones, indiv and tr 392-394 Boylston Commons |
| 01/18/2005 | 29 | Condo Tr., John Jones, Jr., indiv. and Tr 392-394 Boylston Commons |
| 01/18/2005 | 29 | Condo Tr.'s notice of appeal from the Court's orders denying the |
| 01/18/2005 | 29 | motion to reconsider civil contempt, ordering the defendants pay the |

| 01/18/2005 | 29 | plaintiffs $1,000 in attorneys fees, and denying without prejudice |
| 01/18/2005 | 29 | the removal and replacement of the receiver entered on December 23, |
| 01/18/2005 | 29 | 2004. |
| 01/18/2005 |    | Notice of filing of appeal sent to all counsel of record. |
| 01/19/2005 | 30 | Corrected Notice of Appeal of Defendant Diane Scott - Jones, indiv |
| 01/19/2005 | 30 | and tr 392-394 Boylston Commons Condo Tr., John Jones, Jr., indiv. |
| 01/19/2005 | 30 | and Tr 392-394 Boylston Commons Condo Tr.'s from the orders denying |
| 01/19/2005 | 30 | the motion to reconsider civil contempt, ordering the defendants pay |
| 01/19/2005 | 30 | the plaintiffs $1,000 in attorney's fees, and denying without |
| 01/19/2005 | 30 | perjudice the removal and replacement of the receiver. These orders |
| 01/19/2005 | 30 | were entered on Deember 23, 2004. |
| 01/19/2005 |    | Notice of filing of appeal sent to all counsel of record. |

PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 542-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

EXHIBIT
"2"
Memorandum

CHARLES A. PERKINS, JR. *

ROBERT W. ANCTIL *

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

* ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO *

December 15, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA  02459

RE:    392-396 Boylston Commons Condominium

Dear Mr. and Mrs. Jones:

Please be advised this office represents Sheryl Sarkis, as Receiver of the 392-396 Boylston Commons Condominium Trust. We have been advised by Ms. Sarkis that there is a balance due on your account through December 13, 2004 in the amount of $1,250.00 as well as an additional amount of $390.00 representing legal fees incurred to date in this matter.

To resolve this matter without the need of any further legal proceedings and expense, please remit a check for the **full amount of $1,640.00** made payable to "Sheryl Sarkis, as Receiver of the 392-396 Boylston Commons Condominium Trust" and forward it to my attention within **fourteen (14) days** of the date of this letter.

## NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification of judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Mr. and Mrs. John Jones, Jr.
Page 2
December 15, 2004

Perkins & Anctil, PC is acting as a debt collector pursuant to the FDCP Act. Any information obtained will be used for that purpose. If you have any questions regarding this correspondence, you should seek the advice of counsel.

Very truly yours,

Charles A. Perkins, Jr.

CAP/sma

cc:    Sheryl Sarkis, as Receiver of 392-396 Boylston Commons Condominium Trust
       Gary M. Daddario, Esquire

EXHIBIT

"3"

Memorandum

VIA FIRST CLASS MAIL AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

December 22, 2004

Charles A. Perkins, Jr.
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Perkins:

We received your December 15, 2004 letter demanding that we pay Receiver Sheryl Sarkis $1640.

First, we are perplexed by the designation, "392-396 Boylston Commons Condominium." Receiver Sheryl Sarkis represents 392-394 Boylston Commons Condominium, as noted in Judge Ralph Gants' June 24, 2004 order. Please explain your use of "392-396 Boylston Commons Condominium."

Second, we do not understand the reference to "your account." Could you send us a copy of the account to which you refer? To our knowledge, Receiver Sheryl Sarkis has not established an account in our name. We have not received a statement of an account in our name since her appointment as receiver on June 24, 2004.

Third, we are concerned that you ask us to write the check to "Sheryl Sarkis, as Receiver of the 392-396 Boylston Commons Condominium Trust." We write our check for monthly fees to 392-394 Boylston Commons Condominium and we do not name Receiver Sheryl Sarkis on our checks.

Last, we have requested clarification of the $1250 charge from Receiver Sheryl Sarkis in an October 29, 2004, letter from our Attorney, John Laymon. Her only response was that the amount assessed is correct. We now have a copy of the "Existing Condition Plan" from The Decelle Group but Receiver Sheryl Sarkis has not provided an adequate justification for this work. We question whether this "Existing Condition Plan" is complete and relevant to the work needed at our condominium. Further, the "Existing Condition Plan" is dated August 21, 2004, but Receiver Sheryl Sarkis did not provide information about it until October 12, 2004.

Under these circumstances, we strongly dispute the charge of $1250 and the legal fee of $390.

Sincerely,

Diane Scott-Jones

John E. Jones, Jr.

VIA FIRST CLASS MAIL AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

December 22, 2004

Charles A. Perkins, Jr.
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Perkins:

We received your December 15, 2004 letter demanding that we pay Receiver Sheryl
Sarkis $1640.

First, we are perplexed by the designation, "392-396 Boylston Commons Condominium."
Receiver Sheryl Sarkis represents 392-394 Boylston Commons Condominium, as noted
in Judge Ralph Gants' June 24, 2004 order. Please explain your use of "392-396
Boylston Commons Condominium."

Second, we do not understand the reference to "your account." Could you send us a copy
of the account to which you refer? To our knowledge, Receiver Sheryl Sarkis has not
established an account in our name. We have not received a statement of an account in
our name since her appointment as receiver on June 24, 2004.

Third, we are concerned that you ask us to write the check to "Sheryl Sarkis, as Receiver
of the 392-396 Boylston Commons Condominium Trust." We write our check for
monthly fees to 392-394 Boylston Commons Condominium and we do not name
Receiver Sheryl Sarkis on our checks.

Last, we have requested clarification of the $1250 charge from Receiver Sheryl Sarkis in
an October 29, 2004, letter from our Attorney, John Laymon. Her only response was that
the amount assessed is correct. We now have a copy of the "Existing Condition Plan"
from The Decelle Group but Receiver Sheryl Sarkis has not provided an adequate
justification for this work. We question whether this "Existing Condition Plan" is
complete and relevant to the work needed at our condominium. Further, the "Existing
Condition Plan" is dated August 21, 2004, but Receiver Sheryl Sarkis did not provide
information about it until October 12, 2004.

Under these circumstances, we strongly dispute the charge of $1250 and the legal fee of
$390.

Sincerely,

Diane Scott-Jones                    John E. Jones, Jr.

EXHIBIT

"4"

Memorandum

# PERKINS & ANCTIL, P.C.

### ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1555
TELEPHONE (978) 251-8509 • (600) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawps.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANITA L CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO

December 28, 2004

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA 02459

Re:    **392-294 Boylston Commons Condominium**

Dear Mr. and Mrs. Jones:

As you are aware, this office represents Sheryl Sarkis as Receiver for the above-referenced condominium. I am in receipt of your letter of December 22, 2004 and I am writing to respond to the same.

First and foremost, please note that your letter shall not impact the collection process or the timing thereof. Accordingly, absent payment of your outstanding balance of $1,802.50 (including all legal fees to date) by January 3, 2005, a formal Notice of Default will be issued to you at considerable expense to your account. Payment must be made by check payable to your condominium association and forwarded to this office.

With respect to your question regarding the designation "392-396 Boylston Commons Condominium", you are advised that the same is a typographical error. All such designations were intended to read "392-394 Boylston Commons Condominium".

The term "your account" refers to your financial relationship with the 392-394 Boylston Commons Condominium. At this time, you have an outstanding balance of $1,802.50 and this correspondence is notice thereof. As stated above, absent payment, collection action will continue at further expense to your account in accord with M.G.L. c. 183A, §6(a)(ii). In any court judgment regarding your outstanding balance, the 392-294 Boylston Commons Condominium, Sheryl Sarkis as Receiver, will be statutorily entitled to the court's authorization of a foreclosure of your property.

Mr. and Mrs. Jones
December 28, 2004
Page -2-

At this time, checks made payable to "Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium Trust" or to "392-394 Boylston Commons Condominium" are equally acceptable for purposes of remitting payment to your condominium association. Be advised, however, that payment must be received in this office.

Finally, please be advised that this collection proceeding is not the appropriate forum in which to conduct inquiry regarding the work underlying the recent assessment. M.G.L. c. 183A and cases decided thereunder by both the Massachusetts Appeals Court and the Supreme Judicial Court dictate that a unit owner first make payment of assessments and thereafter, if applicable, challenge the same.

Until such time as your full outstanding balance has been paid, all correspondence regarding this matter must be directed to this office. Thereafter, appropriate information relative to the work being performed at the condominium may be sought from Ms. Sarkis.

## NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification of judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the
consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, P.C., is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

Mr. and Mrs. Jones
December 28, 2004
Page -3-

If you have any questions regarding this letter, you should seek advice of legal counsel.

Respectfully,

Gary M. Daddario

c:   Sheryl Sarkis, as Receiver of 392-394 Boylston Commons Condominium
     Attorney Charles A. Perkins, Jr.



EXHIBIT

"5"

Memorandum

VIA FACSIMILE, FIRST CLASS MAIL, AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

December 31, 2004

Gary M. Daddario
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Daddario:

We received your December 28, 2004, letter demanding that we pay Receiver Sheryl Sarkis $1802.50. We note that this amount is an increase over the $1640 you demanded we pay Receiver Sheryl Sarkis in your December 15, 2004, letter. You have now added $552.50 to the $1250 you claim we owe.

We again object to the initial $1250 fee. We also object to the attorney's fees, which are now 44% of the debt you claim we owe. We will outline below the basis for our objection to your demand for payment and to the foreclosure you have threatened.

1. In the response we sent you on December 22, 2004, we requested clarification of the $1250 charge from Receiver Sheryl Sarkis and we disputed the validity of the debt. According to the Fair Debt Collection Practices Act (FDCPA),

"if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."

We have yet to receive any information regarding the validity or verification of the debt from you. Until you fulfill your obligations under the FDCPA, you must cease collection of the alleged debt.

2. Your reply that you are using the term "your account" to refer to our financial relationship with our condominium is inadequate. You cannot substitute reference to an abstract relationship for a clear statement of an account.

3. We believe your statement regarding the court's authorization of a foreclosure of our property is in error. Massachusetts General Laws (MGL) Chapter 183A, section 6(a) (ii), which you cited as the basis for your threat, has no reference to foreclosure. On the contrary, this section gives a unit owner the right to appeal assessments to the organization of unit owners.

4. You are incorrect in your interpretation of our obligation to pay all fees as demanded at any time. You refer to the fee you demand on behalf of Receiver Sheryl Sarkis as an

"assessment" and you cite MGL Chapter 183A. As you know, Chapter 183A, section 6(a) (i) requires that common expense assessments be based on a budget. We repeatedly asked Receiver Sheryl Sarkis for a budget as required of her in the June 24, 2004, order appointing her as Receiver. She has provided a budget of sorts but only after her demand that we pay $1250; however, she included a disclaimer that the sketchy, poorly organized budget she provided was not an actual budget but was an "estimated budget prepared for the court." Therefore, the amount you are demanding does not fit the requirement of a common expense assessment as laid out in the statute requiring a budget prior to the assessment.

Receiver Sheryl Sarkis has required a common expense assessment of $160 per month, as budgeted prior to her appointment. Despite Receiver Sheryl Sarkis' refusal to allow the maintenance for which a portion of the $160 is intended, we have paid $160 each month and we have sought legal relief from her refusal to maintain our property. Therefore, we have met all obligations for common expense assessment at this time.

You further claim that "cases" support your demand that we pay the fee first and challenge it later. You failed to cite the "cases" and we can find no cases that fit our situation. Unless you can provide the citations, we will assume your statement is without merit.

5. We can find no statutory requirement that we pay you within 14 days of the date of your initial letter. Therefore, we assume the number of days you have allotted is arbitrary and not legally binding on us. Your statement, "First and foremost, please note that your letter shall not impact the collection process or the timing thereof," is in error.

If we were delinquent on our common expense assessment, Chapter 183A, Section 6 (c) provides clear procedures that Receiver Sheryl Sarkis has not followed. "When any portion of the unit owner's share of the common expenses has been delinquent for at least sixty days subsequent to April 1, 1993, the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner by certified and first class mail." We have not received such a sixty-day notice from Receiver Sheryl Sarkis.

In addition to the points noted above, we wish to object to other aspects of your actions against us. First, we are appalled that you are making threats regarding our home in a letter you now claim contains clerical errors. The clerical errors naming our ---- condominium "392-396 Bolyston Commons Condominium" occur in your initial letter in which you wrote only three sentences. This level of carelessness in a brief letter is unacceptable. We note that Receiver Sheryl Sarkis has made the same "mistake," i.e., changing the name of our condominium, several times in her own correspondence. Second, we are appalled at the ambiguity and slippage in your demand that we make checks payable to Sheryl Sarkis instead of our condominium association.

In summary, Receiver Sheryl Sarkis has not:
- established the legitimacy of the charge and allowed an appeal
- presented the charge in the context of a budget and common expense assessment
- followed notification procedures for delinquency

In addition, your law firm has not met the obligation to provide verification of the debt.

We continue to dispute strongly the charge of $1250. We look forward to your response, to your provision of copies of all documents related to this claim, and to your withdrawal of your inappropriate claims and threats.

Sincerely,

Diane Scott-Jones

John E. Jones, Jr.



EXHIBIT

"6"

Memorandum

PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8500 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-5859
www.perkinslawpc.com

CHARLES A. PERKINS, JR. *

ROBERT W. ANCTIL *

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

* ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO *

January 4, 2005

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA 02459

Re:    392-394 Boylston Commons Condominium

Dear Mr. and Mrs. Jones:

As you are aware, this office represents Sheryl Sarkis as Receiver for the above-referenced condominium. I am in receipt of your letter of December 31, 2004 and I am writing to respond to the same. You have alleged numerous issues and I will attempt to address each in turn.

The balance of $1,802.50 requested in my letter of December 28th is, indeed, greater than the $1,640.00 requested in the prior letter. The increase represents the additional legal fees incurred in the interim and for which you are responsible pursuant to M.G.L. c. 183A, §6(a)(ii). To be clear, I note that you will continue to be responsible for my client's legal fees in this matter until such time as your balance is paid in full. As a result of the time involved with the review of and response to your December 31st letter, your total balance is now $2,090.00.

The fact that you are responsible for the attorney's fees in this matter is a clear provision of the above-referenced statute. In addition, the same has been held, repeatedly, by Massachusetts Courts. Noteworthy cases include *Trustees of the Sandpiper Condominium Trust v. Snell*, 1994 WL 89440 (Mass.App.Div.), in which the unit owner was forced to pay legal fees incurred after Summary Judgment was granted in favor of the condominium because the condominium chose to pursue foreclosure of the unit at additional expense. *Maushop Village Condominium Trust 3A v. Bucci*, 1994 WL 110862 (Mass.App.Div.), is a case in which it was determined that the unit owner was responsible for legal fees incurred by the condominium even during the appeal of a case in which the condominium was displeased with the initial decision.

Diane Scott-Jones
John E. Jones. Jr.
January 4, 2005
Page -2-

Our legal fees are considered reasonable based on the hourly rate charged and the
time and work involved in processing the matter. At the appropriate stage of litigation, if
the same occurs, an Affidavit of Counsel will be provided to the Court detailing all legal
fees and costs in this matter. Condominium collection cases are not performed on a
"percentage of the debt" basis due, in part, to the fact that M.G.L. c. 183A provides
complete protection for the condominium's debt for a limited time period. As a result,
condominium associations must diligently pursue outstanding debt and litigation
typically occurs prior to the time when a "percentage basis" fee would provide reasonable
compensation to counsel.

As to the initial assessment of $1,250.00 at issue in this matter, an explanation has
been provided to the extent possible at this time. As you are aware, the same represents
your proportionate share of necessary landscaping repairs. You are free to review details
regarding the same with your association and/or Sheryl Sarkis when your balance is paid
and your file with this office is closed. In the meantime, as you are aware, Ms. Sarkis is
the court-appointed receiver for your condominium. The Order of the Middlesex
Superior Court establishing Ms. Sarkis' position specifically authorizes her to act with
respect to the completion of the current landscape project. The Court has determined that
the same is a "necessary repair". A copy of the Order is attached for your reference.

Notwithstanding the above, in the condominium context, even contested
assessments must be paid. Pursuant to M.G.L. c. 183A, §6(a)(ii), all fees as well as costs,
interest, late charges and attorney fees are treated, for purposes of collection, as common
expense assessments. M.G.L. c. 183A. §7 prohibits withholding or setoff of assessments.
In addition, the Massachusetts Supreme Judicial Court has held that:

> "A system that would tolerate a unit owner's refusal to pay an
> assessment because the unit owner asserts a grievance, **even a
> seemingly meritorious one**, would threaten the financial integrity
> of the entire condominium operation." (Emphasis supplied).
> _Trustees of Prince Condominium Trust v. Prosser_, 412 Mass. 723,
> 726, 592 N.E.2d 1301, 1302 (1992).

Like taxes, condominium assessments must be paid first and thereafter challenged in a
separate action seeking reimbursement. Any question remaining subsequent to the
above-referenced case was resolved by the Massachusetts Appeals Court two years later:

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -3-

> "We suggest that aggrieved unit owners should timely pay—under
> protest—the common expense assessment. Thereafter, a judicial
> determination of the legality of the assessment, and suitable
> reimbursement, may be sought." _Blood v. Edgars, Inc._, 36
> Mass.App.Ct. 402, 406, 632 N.E.2d 419, 421-422 (1994).

Thus it is now clear that even the legality of an assessment must be questioned only after
payment.

Although I understand your disagreement with my use of the term "your
account," I have explained the same to you and routinely use the same in the ordinary
course of conducting condominium collection cases. Massachusetts Courts are familiar
with this terminology.

I believe that you have mischaracterized my reference to "foreclosure" as a
"threat". Such was neither my intent nor present in the tone of the verbiage contained in
my letter. Rather, I informed you as to a statutory relief available to my client. Further, I
did not cite M.G.L. c. 183A for the same. The statutory provision to which I refer is
M.G.L. c. 254, §5A which reads, in pertinent part, as follows:

> "When the amount of a lien under section six of chapter 183A or
> under section 29 of chapter 183B has been established by a court,
> the court shall enter an order authorizing the sale of the real estate
> to satisfy such lien."

In accord with said statute, as I stated in my December 28th letter, should this matter
proceed to litigation and you be held to owe an outstanding balance to your
condominium, my client will be entitled to a Judgment including, as a portion of the
relief, the authority to sell the unit at foreclosure.

You are correct in your assertion that payment of your outstanding balance within
a fourteen-day period is not a statutory requirement. Our request that you pay your
outstanding balance within such time was issued to you as a courtesy to provide you with
an opportunity to resolve this situation prior to incurring substantial legal fees and costs.
The sixty-day notice to which you refer is a formal notice resulting in significant legal
fees. Absent receipt of full payment of your current balance of **$2,090.00** received in this
office **on or before January 10, 2005**, said notice will be issued to you.

I regret that the reference to "392-396" Boylston Commons appears to have
caused you inconvenience. Please note, however, that I did not characterize the same as a
"clerical" error as set forth in your recent letter.

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -4-

Rather, I advised you that said reference was a typographical error. Unfortunately, despite your allegation of "carelessness," typographical errors can occur despite the writer's best intentions.

I am concerned with respect to your complete mischaracterization of our instructions regarding the preparation of payment checks. Please take careful note of the fact that this office never instructed you to "make checks payable to Sheryl Sarkis instead of [the] condominium association" as alleged in your recent letter. Rather, our letter of December 15, 2004 instructed you to make checks payable to "Sheryl Sarkis, as receiver" of the condominium. Moreover, our letter of December 28, 2004 indicated that checks made payable to "392-394 Boylston Commons Condominium" or to "Sheryl Sarkis, as Receiver of the 392-294 Boylston Commons Condominium Trust" are "equally acceptable for purposes of remitting payment to your condominium association." There has been neither "ambiguity" nor "slippage" in this regard, despite your allegations.

With respect to an internal appeal, a careful reading of M.G.L. c. 183A, §6(a)(ii) reveals that the same is available with respect to assessment of "costs" associated with "energy conservation devises," "water," and "other utilities." Said provision has no application to this case.

Notwithstanding the above explanations and legal citations, the FDCPA warning is included on correspondence from this office as a matter of course in the ordinary conduct of our business. As payment of condominium assessments is not "consumer debt," the FDCPA is not applicable to this case.

In sum, based on the above, you have a legal obligation to remit payment of your outstanding balance. Absent receipt in this office of payment of $2,090.00 by January 10, 2005, collection action will proceed at further and considerable expense to your account.

In the event that you opt not to make payment in accord with this letter or have any questions relating hereto, I strongly recommend that you seek the advice of legal counsel.

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -5-

## NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification of judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the
consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, P.C., is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

Respectfully,

Gary M. Daddario

c:    Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium —
      Attorney Charles A. Perkins, Jr.

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

CIVIL DOCKET#: MICV2003-05103-F

RE:    Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond et al v Scott-Jones, indiv and tr 392-394 Boylston Commons Condo Tr. et al

TO:    Thomas O Moriarty, Esquire
       Marcus Errico Emmer & Brooks
       45 Braintree Hill Park
       Suite 107
       Braintree, MA 02184

## NOTICE OF DOCKET ENTRY

You are hereby notified that on 06/24/2004 the following entry was made on the above referenced docket:

ORDER APPOINTING RECEIVER: 1. That until further order of the Court, the Parties, their agents, servants and all those acting in concert with them are restrained from performing any duties as trustees of the 392-394 Boylston Commons Condominium Trust, ("Condominium"); 2. That until further order of the Court, Sheryl A. Sarkis of Meredith Management Corporation, One Bridge Street, Suite 300, Newton, MA 02458-1101 be and is hereby appointed Receiver of the estate, property, monies, debts and effects of every kind and nature of or belonging to the 392-394 Boylston Commons Condominium Trust; and she is hereby authorized and directed to take charge of and the porperty held in trust the organization of Unit Owners of the Condominium pursuant to the Declaration of Trust in order to do the things necessary to operate, maintain, repair, replace, and alter the common areas of the Condominium and otherwise administer and care for the common areas and facilities of the Condominium, within the limitations set forth herein, as the Receiver deems proper; and, within the limitations set forth herein, she is hereby authorized and directed to effectuate all the powers and duties provided in and subject to MGLc. 156,s51 and MGLc. 155ss 52-53, Mass R Civ P 66, MGLc 183A, and Article V of the Declaration of Trust which incorporates the By-Laws of theCondominium. ( A copy of the By-Laws at Article V of the Declarartion of Trust are appended to this Order as Exhibit "1"); The Receiver shall promptly establish a budget for The Condominium operation for the remander of 2004, and ensure that sufficient funding is colleted from the Unit Owners to carry out the Receiver's duties as required by the terms of the Condominium documents at GL c 183A. 3. That until further order of the Court, the Receiver shall take all necessary and reasonable actions to assure the

notigen enc 2 wpd 2596298 order gouveal

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

Condominium's compliance with all city, state and fedeal law in connection with any and all city, state and federal enforcement orders regarding the common areas of the Condominium. Any and all costs associated with complying with same shall be the responsibilty of both the Plaintiff and the Defendants who shall pay one-half of the cost of correcting the problems in the common areas of the condominium which is not clevered by insurance; 4. That until further order of the Court, the Parties shall turn over to said Receiver, all the property, monies, debts and effects of every kind and nature, belonging to the Condominium in the hands, possession or control, together with all books, deeds, documents, and papers relating thereto. It is further ordered that the escrow agents for the Parties, identified in compliance with this Court's January 26, 2004 Order, shall turn over said Receiver all monies held in escrow on behalf of the Parties. The Receiver shall, upon receipt of the escrow funds, open a checking account on behalf of the Condominium and deposit the escrow funds in said account for further condominium business as authorized under the constituent documents of the Condominium and as set forth herein. 5. The Receiver shall have no authority to assign financial liability for or otherwise prosecute, resolve or dismiss any action concerning the Parties existing dispute regarding whether any Trustee has breahed a fiduciary duty or whether any Trustee or Unit Owner committed wrongful actions in violation of the Condominium Documents and General Laws Chapter 183A including, without limitation, the dispute regarding the rights, duties and financial obligations of the Parties as a result of the landscaping projects conducted in the common areas of the Condominium in 2003. Nothing in this Paragraph is intended to limit the Receiver's ability to act with respect to the completion of the landscape project or compliance with state claims or municipal orders with regard to the common areas of the Condominium. This Paragraph is intended to allow the Parties to prosecute and/or resolve any and all financial claims, which stem from actions taken by either Party prior to the date of this Order; 6. The Receiver shall not be authorized to effect any improvements to the common areas and facilities of the Cndominium without compliance with MGL c 183A, s 18. The restoration of the backyard is presently a necessary repair and not an improvement and. therefore. the restoration of the existing elemtns does not require compliance with zmglc 183A, s18. 7. In the event both Unit Owners agree on a course of action the Receiver shall undertake such action so long as it complies with MGL c 183A and the constituent documents of the Condominium. The Parties shall have the right to jointly petition the Court to authorize the Receiver to take action which might not otherwise comply with MGLc 183A or the constituent documents of the Condominium; 8. That any party, or said Receiver, may apply to the Court, from time to time, for such further directions or orders, as may be necessary ; and 9. Grant such other and further relief as this Court deems just and equitable. (Gants, J.) copies sent 7/21/04 certified to Receiver 7/21/04

Dated at Cambridge, Massachusetts this 21st day of July, 2004.

judgement_2 wpd 2736286 Index-youre.al

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

Edward J. Sullivan,
Clerk of the Courts

BY: Phil Massa
Assistant Clerk

Telephone: 617-494-4010 EXT 4281

EXHIBIT

"7"

Memorandum

VIA FACSIMILE, FIRST CLASS MAIL, AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

January 7, 2005

Gary M. Daddario
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Daddario:

We received your January 4, 2005, letter demanding that we pay $2090 to Receiver Sheryl Sarkis of Meredith Management Corporation. We note that this amount is an increase over the $1802.50 you demanded we pay Receiver Sheryl Sarkis in your December 28, 2004, letter. You have now added $840 to the $1250 you claim we owe.

We again object to the initial $1250 fee. We also object to the attorney's fees, which are now 67% of the debt you claim we owe.

We have asked you in two previous letters to provide evidence of the debt you claim we owe. You have provided no such evidence. We can only surmise that you have no evidence of a legitimate debt. The June 24, 2004, order appointing receiver is not evidence of debt.

We continue to dispute strongly the charge of $1250. We again ask you to provide copies of all documents Receiver Sheryl Sarkis submitted to you related to this claim. We ask you to withdraw your inappropriate claims and threats.

Sincerely,

Diane Scott-Jones

John E. Jones, Jr.

EXHIBIT

tabbies

"8"

Memorandum

PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-2558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANE M. CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO*

January 11, 2005

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA  02459

## NOTICE OF DEFAULT AND INTENT TO COLLECT RENTS
## AND SIXTY (60) DAY NOTIFICATION PURSUANT TO M.G.L. c. 183A., §6(c)

| | |
|---|---|
| **CONDOMINIUM ASSOCIATION:** | **392-394 Boylston Commons Condominium** |
| **UNIT OWNER:** | **Diane Scott-Jones & John E. Jones, Jr.** |
| **UNIT NUMBER:** | **392** |
| **PREVIOUS BALANCE THROUGH 01/11/05:** | **$2,090.00*** |
| **LEGAL FEES AND COSTS:** | |

| | |
|---|---|
| Notice of Default | $   475.00 |
| Title Exam Fee | $     75.00 |
| Title Exam Review Fee | $     25.00 |
| Constable Fee | $     32.00 |
| Certified Mail Fee | $       4.42 |

**TOTAL AMOUNT DUE:**        **$2,701.42**

*Plus common area charges which become due, interest, late charges, court costs and
reasonable attorney's fees until payment is received in full.

Dear Mr. & Mrs. Jones:

I represent the Board of Trustees of the 392-394 Boylston Commons Condominium.  The
Trustees have informed me that your account for payment of common area charges is more than
sixty (60) days in arrears.  Failure to promptly pay common area charges seriously impairs the
ability of the Condominium Association to operate efficiently.

We are in receipt of your letter dated January 7, 2005.  As stated in our previous
correspondence, you have been provided with sufficient evidence of the outstanding assessment

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -2-

to warrant your payment of the same. In any event, enclosed is another copy of the October 12, 2004 letter issued to you with an attached invoice representing charges to your Association and to which the assessment will be applied.

Your legal obligation as a Unit Owner to pay common area charges and assessments is required by the following documents:

1.    Massachusetts General Laws, Chapter 183A.
2.    The Master Deed and By-Laws of the Condominium.
3.    The Unit Deed(s) conveying the Unit(s) to you.
4.    Your mortgage recorded with the Registry of Deeds.

The aforesaid Condominium Documents, and M.G.L. Chapter 183A, Section 6, as amended, provide the Condominium Association with certain rights and powers to enforce payment. Enforcement may be by judicial action to collect unpaid amounts or by enforcement of the lien created by Chapter 183A, Section 6, by foreclosure. In the event that the Condominium Association exercises its right to enforce the lien by foreclosure, it is possible that your Unit(s) could be sold as part of the foreclosure proceedings to pay the outstanding amounts.

The Condominium Association shall take all appropriate actions to enforce payments and collections which may include, but not be limited to the following:

1.    Attachment of rents paid by your tenant(s);

2.    Acceleration of your annual assessment;

3.    Notification to your mortgagee of the default and of the Association's intention to commence judicial proceedings to enforce payment, as provided for in the Condominium Documents;

4.    Perfecting a lien by filing a Complaint with the Middlesex County Superior Court and recording an attested copy with the Middlesex County Registry of Deeds;

5.    Foreclosing on said liens; and/or collecting from you said amounts as a personal financial obligation to the Association; and

6.    Levying additional late charges and interest until payment in full is received.

You have ten (10) days from your receipt of this Notice, for purposes of the attachment of rents, to deliver to us a written response under the pains and penalties of perjury which response must include: (1) as to the monthly common area fees, proof of payment (cancelled checks,

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -3-

receipts, etc.); (2) as to all other charges, a plain and simple statement setting forth the grounds upon which you assert the amounts are not correctly calculated or not properly charged and what amount you admit is due. Please note, if in your response to this Notice you knowingly misrepresent any material fact, you may be liable for treble damages in any action brought to recover the amounts due. Please further note that nothing contained in this Notice shall be construed as preventing the 392-394 Boylston Commons Condominium from pursuing any other remedies available at law.

Alternatively, you must remit payment of the full balance by check payable to your condominium association and forwarded to this office within fourteen (14) days of the date of this letter. Absent full payment, or arrangements acceptable to your Board of Trustees, collection action will continue at further expense to your account.

NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification or judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, PC, is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

NOTICE PURSUANT TO M.G.L. C. 183A SECTION 6 (c)

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -4-

Please be advised that this correspondence shall institute notification that in addition to all items contained hereunder, that pursuant to Massachusetts General Law Chapter 183A, Section 6 (c) that you are at least sixty (60) days delinquent in the payment of the above amounts to the Condominium Association.

If you have any questions regarding this letter you should seek the advice of counsel.

Respectfully,

Gary M. Daddario

GMD/lfd
enclosure
c:     Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium

Boylston Commons Condominium
Sheryl A. Sarkis, As Receiver
P. O. Box 389
Revere, MA 02151
617/241-7779

October 12, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA 02459

Mr. Lu Qing/Ms. Yu Cheung
396 Boylston Street
Newton, MA 02459

Dear Unit Owners:

For the past few months we have been working to resolve the situation that currently exists in the rear yard of your property. We have met with City of Newton personnel, engineers and contractors. In this regard, we had to hire an engineer to survey the property so that we could appropriately bid out the necessary specifications to contractors who could remove the fill, regrade and hydroseed the yard, in addition to aerating the area down below that was damaged as a result of the bobcat used in the original scope of the project. The cost of the engineer was $2,560 (copy of bill enclosed for your records).

At this time we find it necessary to assess the Association for the cost of the engineer since there are not adequate funds to cover this unanticipated expense in your operating account/budget.

Each unit owner should submit a check payable to 392-394 Boylston Common Condominium Trust and mail to: P. O. Box 389, Revere, MA 02151 no later than November 15, 2004 in the amount of $1,250. If payment is not received by this date, your account will be forwarded to an attorney for collection action. All legal fees associated with this matter will be the responsibility of the unit owner. Per order of the receivership and in accordance with your Master Deed/By-Laws, Section 5.1.2 etc. unit owners are obliged to pay all common area and special assessments levied.

On a similar note, we have sent out the bid package and are waiting for the price to perform the above-mentioned work. We anticipate that we will have obtained three bids by the end of this month. We will then notify you of your cost associated with the completion of this project. Assuming we receive the appropriate approval(s), as well as the cooperation of the unit owners, we hope to complete the project by the end of the year, weather permitting and the assumption that the funds necessary will be set aside in advance.

We thank you for your continued patience and look forward to a speedy resolution.

Sincerely,


Sheryl A. Sarkis,
As Receiver

CC: Alison Levins, Property Manager

*Invoice*

# THE DECELLE GROUP

### 400 WASHINGTON STREET
### SUITE LL-9
### BRAINTREE, MA 02184
1-781-794-6800 (O)    1-781-794-6801 (F)

| Date | Invoice # |
|------|-----------|
| 8/30/2004 | 229 |

Bill To

Sheryl Sarkis
P.O. Box 389
Revere, MA  02151

| Due Date | Account # | | Project |
|----------|-----------|--|---------|
| 8/30/2004 | | | 128 043-Newton |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Prepare site plan of 396 boylston Street showing design and current grades | 1 | 2,500.00 | 2,500.00 |
| Less applied retainer | 1 | -850.00 | -850.00 |
| Delivery | | 35.00 | 35.00 |

PLEASE Call to Discuss

Approaching  90 DAYS

THANKS

Jim Burke

| Total | $1,685.00 |
|-------|-----------|
| Payments/Credits | $0.00 |
| **Balance Due** | $1,685.00 |



PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.•

ROBERT W. ANCTIL

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

•ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO•

February 7, 2005

HSBC Mortgage Corp.
2929 Walden Ave.
Depew, NY  14043

RE:    **Sixty (60) Day Notice to Mortgagee of Intent to Institute Action to Enforce Lien
        pursuant to M.G.L. c. 183A, §6 (c)**
        **Unit Owner(s):        Diane Scott Jones & John E. Jones, Jr.**
        **Address:                392-394 Boyston St., Unit 392, Newton, MA**
        **Delinquency through 01/11/05:        $2,701.42**

Dear First Mortgage Holder:

        Please be advised that this office represents the 392-394 Boylston Commons Condominium
Association regarding the above matter.  It is our understanding that your organization holds a first
mortgage on Unit #392 at said Condominium.  A copy of the mortgage and unit deed are included.
Please consider this formal notice to your organization that the above unit owner at the
aforementioned Association is sixty (60) days delinquent in payments due pursuant to the attached
Notice of Default and current ledger sheet.

        Pursuant to M.G.L. c. 183A, §6(c), certain of these assessments, charges and costs can be a
priority over your mortgage if the Association is required to enforce its Lien.  Your assistance in
securing the payment of the listed amount from your mortgagor is therefore requested.  If you have
any questions regarding this letter, you should seek the advice of counsel.  Your cooperation would be
greatly appreciated.

                                        Respectfully,

                                        Gary M. Daddario

GMD/lfd
enclosures

c:      Trustees, 392-394 Boylston Commons Condominium
        Sheryl Sarkis as Receiver
        Diane Scott Jones & John E. Jones, Jr.

Return To:
HSBC MORTGAGE CORPORATION
(USA)
2929 WALDEN AVE. DEPEW, NY
14043

Bk 41201 Pg 536
Recorded: 11/05/2001
Doc number 00XXX Page 1 of 24

Prepared By:

RIVAS, REYNALDO

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 10, 2001 together with all Riders to this document.
(B) "Borrower" is JOHN R JONES JR AND DIANE SCOTT-JONES

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is HSBC MORTGAGE CORPORATION (USA)

Lender is a DELAWARE CORPORATION
organized and existing under the laws of DELAWARE

MA 3112                                                            0379429101
MASSACHUSETTS Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01
6(MA)(0005)

Page 1 of 15

VMP MORTGAGE FORMS  (800)521-7291

RECEIVED & ENTERED
REGISTRY OF DEEDS
COUNTY OF LEEDS
SOUTHERN DISTRICT
ATTEST:

REGISTER

Lender's address is 2929 WALDEN AVENUE, DEPEW, NY 14043

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated October 10, 2003.
The Note states that Borrower owes Lender ONE HUNDRED SEVENTY FIVE THOUSAND and NO/100 Dollars (U.S. $175,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 01, 2033.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction]
of MIDDLESEX [Name of Recording Jurisdiction]
SEE SCHEDULE A ATTACHED HERETO

Parcel ID Number: which currently has the address of
392 BOYLSTON STREET [Street]
NEWTOWN [City], Massachusetts 02459 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_John E. Jones Jr._
_William Compson Atty in Fact_ (Seal)
JOHN E. JONES JR                                Borrower

_Diane Scott Jones_ (Seal)
DIANE SCOTT JONES                               Borrower

_____ (Seal)        _____ (Seal)
                        Borrower                              Borrower

_____ (Seal)        _____ (Seal)
                        Borrower                              Borrower

_____ (Seal)        _____ (Seal)
                        Borrower                              Borrower

MA 3112                                          0373429101

GMAC Mortgage                    Page 14 of 15      Form 3022  1/01

COMMONWEALTH OF MASSACHUSETTS,                     *Middlesex*          County ss

On this    *16th*    day of    *October, 2003*,          before me personally appeared

*John E. Jones, Jr. and Diane Sion Jones*

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires    *5/20/06*

Notary Public    *MICHAEL P. EGGERT*

MA 3112

6IMAI (0/05)                                                    0375429101

Form 3022  1/01

Exhibit A - Property Description

Closing Date        10/10/2003

Borrower(s)          John E. Jones, Jr. and Diane Scott-Jones

Property
Address             392-396 Boylston Street, Unit 392, Newton, Massachusetts
                    02459

The "Unit" known as Unit 392 in a condominium known as 392-396 Boylston Commons Condominium, having a post office address at 392-394 Boylston Street, Unit 392, Newton, MA 02459 and established pursuant to Massachusetts General Laws, Chapter 183A, as amended and by Master Deed dated August 31, 2000 and recorded with Middlesex South Registry of Deeds on September 1, 2000 in Book 31786, Page 500, as amended by Amendment recorded in Book 31935, Page 149 and as further amended. The Unit is laid out as shown on the unit plan recorded with the first unit deed of this Unit, to which is affixed the verified statement of a registered architect in the form required by Section 9 of M.G.L. c. 183A.

Together with an undivided percentage interest of 50% in the common areas and facilities of said Condominium and together with the rights, if any, to exclusive use of any of the common areas and facilities of said Condominium as more fully set forth in the aforesaid Master Deed and Unit Deed.

Said Unit is conveyed with the benefit of and subject to the easements, restrictions, conditions, rights and obligations set forth or referred to in said Master Deed, Unit Deed and provisions of 392-394 Boylston Commons Condominium Trust, its By-Laws, Rules and Regulations, as amended.

For Mortgagor's title, see deed recorded with Middlesex South Registry of Deeds in Book 31786, Page 548.

UNIT DEED

I, Janet R. Barr, Trustee of R & M Realty Trust dated
11/24/99 _____ and _____
South Region of Deeds in Book 4534, Page 632,
for consideration paid of One Hundred Twenty Two Thousand and no/100.

GRANTS TO  DIANE SOUTHGATE  and JOHN E. JONES , as
Husband and Wife, as Tenants by the Entirety,
whose address is  392 394 Boylston Street, Unit 692, Newton,
Massachusetts

WITH QUITCLAIM COVENANTS

Unit 392 of the 392 394 Boylston Commons Condominium created
by Master Deed dated _August 31, 200_ and recorded in Registry
South Registry of Deeds _____ September 1, 200_ _____
number _____ of _____ as shown on plan recorded in
said Registry as shown herewith as said plan dated _August 31, 2000_
recorded as plan number _____ as instrument number _____
of _____

The post office address of the Unit is  392 394 Boylston
Street, Unit 392, Newton, Massachusetts.

The unit is shown on a plan recorded herewith as Unit 392
Boylston Street, Newton, Massachusetts, to which is affixed a
verified statement in the form provided by d.b.c. 183A section 9,
and is conveyed subject to and with the benefit of the obligations,
restrictions, rights and liabilities contained in d.b.c. 183A, the
Master Deed, the documents establishing the organization of unit
owners and the by laws as amended of record.

Each of the units in the Condominium is intended for
residential purposes and such other uses as set forth in the
Master Deed.

The undivided percentage interest of the Unit in the common
areas and facilities is  .50 %

The same being a portion of premises conveyed in deed of  Book
30349 , Page 528

Executed under seal this 31  day of  August  2000

_____
Janet R. Barr, Trustee

CANCELLED
CAMBRIDGE
DEEDS REGION
MIDDLE SOUTH
SEE PLAN IN RECORD BOOK _____ PAGE _____

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                    August 31                         , and

Then personally appeared the above-named James C. Berry, Trustee and acknowledged the foregoing instrument to be his free act and deed, before me.

Laura A. Carlson, Notary Public
My Commission Expires:



PERKINS & ANCTIL, P.C.
ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1588
TELEPHONE (978) 251-8500 • (500) 642-6906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3850
www.perkinslawpc.com

CHARLES A. PERKINS, JR.

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANGELA CHINIARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO*

January 11, 2005

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA  02459

### NOTICE OF DEFAULT AND INTENT TO COLLECT RENTS
### AND SIXTY (60) DAY NOTIFICATION PURSUANT TO M.G.L. c. 183A., §6(c)

| | |
|---|---|
| CONDOMINIUM ASSOCIATION: | 392-394 Boylston Commons Condominium |
| UNIT OWNER: | Diane Scott-Jones & John E. Jones, Jr. |
| UNIT NUMBER: | 392 |
| PREVIOUS BALANCE THROUGH 01/11/05: | $2,090.00* |

LEGAL FEES AND COSTS:

| | |
|---|---|
| Notice of Default | $ 475.00 |
| Title Exam Fee | $ 75.00 |
| Title Exam Review Fee | $ 25.00 |
| Constable Fee | $ 32.00 |
| Certified Mail Fee | $ 4.42 |

TOTAL AMOUNT DUE:                 $2,701.42

*Plus common area charges which become due, interest, late charges, court costs and reasonable attorney's fees until payment is received in full.

Dear Mr. & Mrs. Jones:

I represent the Board of Trustees of the 392-394 Boylston Commons Condominium.  The Trustees have informed me that your account for payment of common area charges is more than sixty (60) days in arrears.  Failure to promptly pay common area charges seriously impairs the ability of the Condominium Association to operate efficiently.

We are in receipt of your letter dated January 7, 2005.  As stated in our previous correspondence, you have been provided with sufficient evidence of the outstanding assessment

Mr. & Mrs. John E. Jones, Jr
January 11, 2005
Page -2-

to warrant your payment of the same. In any event, enclosed is another copy of the October 12,
2004 letter issued to you with an attached invoice representing charges to your Association and to
which the assessment will be applied.

Your legal obligation as a Unit Owner to pay common area charges and assessments is
required by the following documents:

1.  Massachusetts General Laws, Chapter 183A.
2.  The Master Deed and By-Laws of the Condominium.
3.  The Unit Deed(s) conveying the Unit(s) to you.
4.  Your mortgage recorded with the Registry of Deeds.

The aforesaid Condominium Documents, and M.G.L. Chapter 183A, Section 6, as
amended, provide the Condominium Association with certain rights and powers to enforce
payment. Enforcement may be by judicial action to collect unpaid amounts or by enforcement of
the lien created by Chapter 183A, Section 6, by foreclosure. In the event that the Condominium
Association exercises its right to enforce the lien by foreclosure, it is possible that your Unit(s)
could be sold as part of the foreclosure proceedings to pay the outstanding amounts.

The Condominium Association shall take all appropriate actions to enforce payments and
collections which may include, but not be limited to the following:

1.  Attachment of rents paid by your tenant(s);

2.  Acceleration of your annual assessment;

3.  Notification to your mortgagee of the default and of the Association's intention to
commence judicial proceedings to enforce payment, as provided for in the Condominium
Documents;

4.  Perfecting a lien by filing a Complaint with the Middlesex County Superior Court
and recording an attested copy with the Middlesex County Registry of Deeds;

5.  Foreclosing on said liens; and/or collecting from you said amounts as a personal
financial obligation to the Association; and

6.  Levying additional late charges and interest until payment in full is received.

You have ten (10) days from your receipt of this Notice, for purposes of the attachment of
rents, to deliver to us a written response under the pains and penalties of perjury which response
must include: (1) as to the monthly common area fees, proof of payment (cancelled checks,

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -3-

receipts, etc.); (2) as to all other charges, a plain and simple statement setting forth the grounds upon which you assert the amounts are not correctly calculated or not properly charged and what amount you admit is due. Please note, if in your response to this Notice you knowingly misrepresent any material fact, you may be liable for treble damages in any action brought to recover the amounts due. Please further note that nothing contained in this Notice shall be construed as preventing the 392-394 Boylston Commons Condominium from pursuing any other remedies available at law.

Alternatively, you must remit payment of the full balance by check payable to your condominium association and forwarded to this office within fourteen (14) days of the date of this letter. Absent full payment, or arrangements acceptable to your Board of Trustees, collection action will continue at further expense to your account.

NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification or judgment will be mailed to the consumer by the debt collector, and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, PC, is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

NOTICE PURSUANT TO M.G.L. C. 183A SECTION 6 (c)

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -4-


Please be advised that this correspondence shall institute notification that in addition to all items contained hereunder, that pursuant to Massachusetts General Law Chapter 183A, Section 6 (c) that you are at least sixty (60) days delinquent in the payment of the above amounts to the Condominium Association.

If you have any questions regarding this letter you should seek the advice of counsel.

Respectfully,

Gary M. Daddario

GMD/fd
enclosure
c:      Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium

Boylston Commons Condominium
Sheryl A. Sarkis, As Receiver
P. O. Box 389
Revere, MA 02151
617/241-7779

October 12, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA 02459

Mr. Lu Qing/Ms. Yu Cheung
396 Boylston Street
Newton, MA 02459

Dear Unit Owners:

For the past few months we have been working to resolve the situation that currently exists in the rear yard of your property. We have met with City of Newton personnel, engineers and contractors. In this regard, we had to hire an engineer to survey the property so that we could appropriately bid out the necessary specifications to contractors who could remove the fill, regrade and hydroseed the yard, in addition to aerating the area down below that was damaged as a result of the bobcat used in the original scope of the project. The cost of the engineer was $2,500 (copy of bill enclosed for your records).

At this time we find it necessary to assess the Association for the cost of the engineer since there are not adequate funds to cover this unanticipated expense in your operating account/budget.

Each unit owner should submit a check payable to 392-394 Boylston Common Condominium Trust and mail to: P. O. Box 389, Revere, MA 02151 no later than November 15, 2004 in the amount of $1,250. If payment is not received by this date, your account will be forwarded to an attorney for collection action. All legal fees associated with this matter will be the responsibility of the unit owner. Per order of the receivorship and in accordance with your Master Deed/By-Laws, Section 5.1.2 etc. unit owners are obliged to pay all common area and special assessments levied.

On a similar note, we have sent out the bid package and are waiting for the price to perform the above-mentioned work. We anticipate that we will have obtained three bids by the end of this month. We will then notify you of your cost associated with the completion of this project. Assuming we receive the appropriate approval(s), as well as the cooperation of the unit owners, we hope to complete the project by the end of the year, weather permitting and the assumption that the funds necessary will be set aside in advance.

We thank you for your continued patience and look forward to a speedy resolution.

Sincerely,


Sheryl A. Sarkis,
As Receiver

CC:  Alison Levins, Property Manager

# THE DeCelle Group

*Invoice*

400 WASHINGTON STREET
SUITE LL-9
BRAINTREE, MA 02184

1-781-794-6800 (O)    1-781-794-6801 (F)

| Date | Invoice # |
|------|-----------|
| 8/30/2004 | 229 |

Bill To

Sheryl Sarris
P.O. Box 389
Revere, MA 02151

| Due Date | Account # |
|----------|-----------|
| 8/30/2004 | |

| | Project |
|--|---------|
| | 128.043-Newton |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Prepare site plan of 350 Boylston Street showing design and current grades | 1 | 2,300.00 | 2,300.00 |
| Less applied retainer | 1 | -850.00 | 850.00 |
| Delivery | | 35.00 | 35.00 |

Please Call to Discuss
Appreatting 90 DAYS

THANKS

Jim Burke

| Total | $1,685.00 |
|-------|-----------|
| Payments/Credits | $0.00 |
| **Balance Due** | $1,685.00 |

PERKINS & ANCTIL, P.C.
ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

**FILE COPY**

CHARLES A. PERKINS, JR. •

ROBERT W. ANCTIL •

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

• ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A. MACERO•

February 7, 2005

HSBC Mortgage Corp.
2929 Walden Ave.
Depew, NY  14043

RE:    **Thirty (30) Day Notice to Mortgagee of Intent to Institute Action to Enforce Lien
       pursuant to M.G.L. c. 183A, §6 (c)
       Unit Owner(s):       Diane Scott Jones & John E. Jones, Jr.
       Address:             392-394 Boyston St., Unit 392, Newton, MA 02459
       Delinquency through 01/11/05:       $2,701.42**

Dear First Mortgage Holder:

    Please be advised that this office represents the 392-394 Boylston Commons Condominium Trust relative to the above matter. It is our understanding that your organization holds a first mortgage on Unit #392 located at said Condominium. In accordance with M.G.L. c. 183A, §6(c), notice is hereby given of the Condominium Association's intent to institute a collection and lien enforcement action thirty (30) days from the date of this letter. You may avoid the Association's institution of its collection and lien enforcement action by securing your mortgagor's payment of these sums. Please note, that if institution of this action is necessary, the Association's Lien will have priority over your mortgage to the extent of regular monthly fees due for up to six (6) months, plus all collection costs.

    We therefore request your assistance in securing payment by your mortgagor. If you have any questions regarding this letter, you should seek advice of counsel.

                                        Respectfully,

                                        Gary M. Daddario

GMD/lfd

c:    Trustees, 392-394 Boylston Commons Condominium
      Sheryl Sarkis as Receiver
      Diane Scott Jones & John E. Jones, Jr.

EXHIBIT

"10"

Memorandum

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                  CIVIL ACTION NO. 03-5103

QUING LU and YU CHEUNG, Individually and    )
Derivatively on behalf of 392-394 BOYLSTON  )
COMMONS CONDOMINIUM TRUST,                   )
        Plaintiffs                           )
                                             )
                                             )
v.                                           )
                                             )
DIANE SCOTT-JONES and JOHN JONES, JR.,      )
Individually and as Trustees of the 392-394  )
BOYLSTON COMMONS CONDOMINIUM                 )
TRUST                                        )
        Defendants                           )
                                             )

## COURT-APPOINTED RECEIVER'S MOTION FOR A
## PERMANENT INJUNCTION AND ORDER REQUIRING PAYMENT

NOW COMES the Court-appointed receiver in this matter Sheryl Sarkis and, by

and through counsel, respectfully moves this Honorable Court for a Permanent Injunction

preventing the Defendants' interference with the June 24, 2004 Order of this Honorable

Court and, specifically, from interference with Sheryl Sarkis' performance of her duties

as Receiver, contact with Sheryl Sarkis' employer and interference with Sheryl Sarkis'

employment. In addition, Ms. Sarkis seeks an Order requiring Defendants to pay their

outstanding assessment. In support hereof, Sheryl Sarkis offers the following:

1. The above-captioned Plaintiffs and Defendants represent all of the owners of the

   two-unit condominium known as 392-394 Boylston Commons Condominium

   Trust ("Boylston Commons").

2. Disagreement between the Plaintiffs and Defendants regarding the proper management of Boylston Commons and the expenditure of its financial resources including, specifically, the proper handling of issues related to a 2003 landscaping project, resulted in this litigation.

3. In the context of this litigation, this Honorable Court, on June 24, 2004, granted Plaintiff's Motion for Appointment of Receiver.

4. Pursuant to this Honorable Court's June 24th Order, Sheryl Sarkis was appointed as Receiver.

5. Although identified with Meredith Management because she is gainfully employed with said organization, Ms. Sarkis' acceptance of the Receiver position in this matter was as an individual and Meredith Management has not and does not currently maintain any interest in this matter.

6. Ms. Sarkis and not Meredith Management is the Receiver of Boylston Commons.

7. Defendants exhibited intent to avoid compliance with Ms. Sarkis' directions as Receiver by making a Motion to Remove and Replace Receiver on August 24, 2004.

8. Defendant's Motion to Remove and Replace Receiver was denied by this Honorable Court.

9. Defendants exhibited further intent to avoid compliance with Ms. Sarkis' directions as receiver by filing an Appeal of the denial of their Motion to Remove and Replace Receiver.

10. Defendants have defied the Receiver's assessment of $1,250 towards a portion of the expense associated with correcting landscaping issues at Boylston Commons.

11. This Honorable Court's June 24, 2004 Order specifically authorizes the Receiver to take action necessary to correct landscaping issues.

12. As a result of Defendants' failure to pay the assessment, the Receiver has engaged Perkins & Anctil, P.C. to institute collection action.

13. At present, Defendants have an outstanding balance of $2,701.42 for the landscaping assessment, including legal fees to which Boylston Commons is entitled pursuant to M.G.L. c. 183A, §6(a)(ii).

14. Defendants have resorted to harassment and interference with Ms. Sarkis' gainful employment in further attempts to interfere with this Court's June 24, 2004 Order and Ms. Sarkis' role as Receiver, as well as to thwart the efforts of this Honorable Court and the Court-appointed Receiver.

15. Defendants' harassment and interference with Ms. Sarkis' gainful employment has been accomplished by Defendants' repeated contacting of John Rosenthal, President/Owner of Meredith Management, Ms. Sarkis' employer.

16. Defendants' harassment and interference has continued despite Defendants being informed that Meredith Management has no role in this matter or Ms. Sarkis' Receivership.

17. Defendants' harassment and interference has continued despite Ms. Sarkis providing the proper points of contact for Defendants' concerns regarding this matter (e.g. Sheryl Sarkis, Receiver for 392-394 Boylston Commons Condominium, P.O. Box 95022, Newton, MA 02495, or by telephone at 617-241-7779).

18. Defendants' harassment and interference have and continue to divert John Rosenthal's time from the business of operating Meredith Management, strain the relation between Ms. Sarkis and Meredith Management and jeopardize Ms. Sarkis' gainful employment at Meredith Management.

19. Ms. Sarkis has expressed a desire to resign from this Receivership, if necessary, to avoid interference with her primary employment at Meredith Management.

20. Ms. Sarkis' resignation would hinder the progress of resolving the issues of Boylston Commons and would result in the loss of time and financial resources of the Plaintiffs, said Plaintiffs having invested in this Receivership, with the support of this Honorable Court, as a means of resolving outstanding issues and preparing Boylston Commons to properly conduct operations in the future.

21. Defendants have no basis for defying the outstanding assessment (including related legal fees) as their defiance contradicts this Honorable Court's June 24, 2004 Order, M.G.L. c. 183A, §6(a)(ii), M.G.L. c. 183A, §7 and well-settled Massachusetts case law (See *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass. 723, 726. 592 N.E.2d 1301, 1302, (1992) and *Blood v. Edgars, Inc.*, 36 Mass.App.Ct.402, 406, 632 N.E.2d 419, 421-422 (1994).

22. Defendants have no basis for harassment of John Rosenthal and interference with Ms. Sarkis' gainful employment as Meredith management has no involvement in this matter or Ms. Sarkis' Receivership and Defendants have been clearly informed of the same.

WHEREFORE, Sheryl Sarkis as Receiver hereby prays that this Honorable Court:

A. Issue a Permanent Injunction prohibiting Defendants from contacting John

Rosenthal and Meredith Management regarding this matter;

B. Issue an Order requiring Defendants to pay their outstanding balance of

$2,701.42;

C. Order Defendant to pay for the legal fees and costs associated with this

Motion; and

D. Take any other action deemed in the best interest of justice.

Respectfully submitted,
Sheryl Sarkis, Receiver
By her attorneys,

Date: January 26, 2005

Gary M. Daddario
BBO #639615
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978) 251-8509



# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET#: **MICV2003-05103-F**

RE:    Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond et al v Scott - Jones, indiv and tr 392-394 Boylston Commons Co

TO:    Gary M Daddario, Esquire
Perkins & Associates (Charles A)
73 Princeton Street
Suite 306
North Chelmsford, MA 01863

---

## CLERK'S NOTICE

## SEE ATTACHED COPIES.

Dated at Cambridge, Massachusetts this 16th day of February, 2005.

Edward J. Sullivan,
Clerk of the Courts

BY: Martha Fulham Brennan
Assistant Clerk

Telephone: 617-494-4010 EXT 4281

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

cvdblanknotice 2 wpd 2684553 order cherubin

$H2$

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 03-5103

| | |
|---|---|
| QUING LU and YU CHEUNG, Individually and Derivatively on behalf of 392-394 BOYLSTON COMMONS CONDOMINIUM TRUST, Plaintiffs | ) ) ) ) ) |
| v. | ) ) |
| DIANE SCOTT-JONES and JOHN JONES, JR., Individually and as Trustees of the 392-394 BOYLSTON COMMONS CONDOMINIUM TRUST Defendants | ) ) ) ) ) ) |

### ORDER

The above-captioned matter having come before the Court on February 3, 2005 and February 8, 2005 relative to the Court-Appointed Receiver's Motion for Injunction and Order of Payment, the Court has heard from all parties and examined documentation provided. After a full hearing on the merits and examination of relevant evidence, this Court Orders as follows:

1.  Defendants Diane Scott-Jones and John Jones, Jr. shall refrain from any and all contact with Meredith Management Corporation and John Rosenthal, President thereof, relative to this matter as said parties have no involvement with the above-captioned case.

2.  Documentation reviewed by the Court revealed that the Defendants had been provided with appropriate contact information for Sheryl Sarkis, the Court-Appointed Receiver, prior to their contacts with Meredith Management Corporation and John Rosenthal. Further, documentation reviewed by this Court revealed that the Defendants made comments to Mr. Rosenthal which appeared to be designed to undermine Ms. Sarkis' relationship and credibility with her employer. As such, the Motion for Injunction was made in response to the Defendants' misconduct.

3. Pursuant to M.G.L. c. 183A, §6(a)(ii), "[i]f any expense is incurred by the organization of unit owners as a result of the unit owner's...misconduct...the organization of unit owners may assess that expense exclusively against the unit owner and such assessment shall constitute a lien against that unit from the time the assessment is due, and such assessment shall be enforceable as a common expense assessment under this chapter." Accordingly, the Defendants are hereby Ordered to remit payment of $1,645.75, representing the legal fees and costs associated with the Motion for Injunction as per the Supplemental Affidavit of Counsel, to the Plaintiff, 392-394 Boylston Commons Condominium, by means of payment submitted to the Court-Appointed Receiver.

4. The Defendants are further Ordered to remit payment of $1,250.00, representing the first assessment levied by the Court-Appointed Receiver, to 392-394 Boylston Commons Condominium by means of payment submitted to the Court-Appointed Receiver.

5. Pursuant to M.G.L. c. 183A, §6(a)(ii), "[t]he organization of unit owners may also assess any fees, attorney's fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest charged pursuant to this chapter against the unit owner and such assessment shall constitute a lien against the unit from the time the assessment is due and shall be enforceable as a common expense assessment under this chapter." Accordingly, the Defendants are hereby Ordered to remit payment of $2,227.67, representing the legal fees and costs associated with the collection of the above-referenced assessment as per the Supplemental Affidavit of Counsel, to the Plaintiff, 392-394 Boylston Commons Condominium, by means of payment submitted to the Court-Appointed Receiver.

Bonnie H. MacLeod, J.

Date: February 15, 2005

---

MIDDLESEX, ss.    **Commonwealth of Massachusetts**

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set my hand and affix the seal of said Superior Court this sixteenth day of February, 2005.

Deputy        Assistant Clerk



EXHIBIT

"12"

Memorandum

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 92-1684

HAMPDEN COUNTY
SUPERIOR COURT
FILED
APR 13 1995

*Mane G. Mazza*
CLERK-MAGISTRATE

JOSEPH A. FRANCO

vs.

STEPHEN M. MARCUS & Another[1]

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION TO REINSTATE DEFAULT JUDGMENT
AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's verified complaint alleges illegal debt collection practices (Count I), interference with advantageous contractual relations (Count II), negligent and intentional infliction of emotional distress (Count III), abuse of process (Count IV), and unfair and deceptive business practices (Count V). The matter is presently before the Court on defendants' motions to reinstate default judgment and for summary judgment.

## I.  BACKGROUND

In 1986, plaintiff purchased real estate in a development in Tolland, Massachusetts known as Wildwood ("Wildwood"). As a result of making this purchase, plaintiff became a member of the Wildwood Property Owners Association (the "Association").

It is undisputed that plaintiff's deed to Wildwood requires purchasers to remain members in good standing of the Association, that the By-Laws of the Association impose upon Wildwood lot owners an obligation to contribute to dues and assessments for the

---

[1]      Marylou Muirhead

2

maintenance and operation of Wildwood's common areas, and that the master deed to the Association provides that the Association shall have the right to prevent violation of any of the deed restrictions by injunction or other lawful procedure.

Nonetheless, plaintiff began to withhold payment of dues based on the Association's alleged noncompliance with various environmental and sanitary and health code requirements. During this period, defendant Marcus, a Massachusetts attorney representing the Association, corresponded with plaintiff on the matter of the outstanding dues. Marcus's letters threatened, among other things, to place a lien on plaintiff's unit, to foreclose, to notify plaintiff's mortgagee, and to suspend all membership rights in the Association. When the Association promised to correct certain of the health code and environmental deficiencies, plaintiff paid his dues in full through 1991.

Subsequently, in May 1992, the Association filed a complaint for declaratory and injunctive relief in the Land Court (Action No. 179-026), seeking clarification of the rights and obligations of the Association to collect dues, assessments, interest, and late fees from Wildwood lot owners; and further seeking to enjoin defendants in that action from using Wildwood's common elements and participating in Association governance until such time as their membership was in good standing. Plaintiff herein was a named defendant in the Land Court action.

Shortly after the Land Court action was commenced by the Association, plaintiff herein commenced an action in the Hampden

3

County Housing Court (No. 92-CV-0115), naming as defendants the Association and the Association's counsel, defendants Marcus and Muirhead herein. The Housing Court action was dismissed on July 3, 1992 for lack of subject matter jurisdiction and failure to state a claim. The allegations of the Housing Court complaint, however, are substantially the same as those contained in the instant complaint, which was filed on October 27, 1992. On October 24, 1994 defendants filed a motion for summary judgment.

Meanwhile, on March 7, 1994, this Court entered a judgment of dismissal as to both defendants herein pursuant to Mass. R. Civ. P. 33(a) due to plaintiff's failure to answer interrogatories. Plaintiff subsequently moved to vacate the default judgment. That motion was heard by this Court (Sweeney, J.) on September 28, 1994. It was ordered, in part, that the default be removed provided that plaintiff paid attorneys' fees incurred by defendants in pursuing the answers to interrogatories upon filing of affidavit by the defense. On January 13, 1995, defendants moved to reinstate the default judgment on the ground that the fees had not yet been paid.

## II.   DISCUSSION

## A.   Motion to Reinstate Default Judgment

Defendants have moved to reinstate the default judgment of March 7, 1994. Defendants state that they have complied with the Court's order of September 28, 1994 by forwarding to plaintiff an affidavit of attorney's fees incurred in pursuing answers to interrogatories; and further that counsel for defendants has attempted to secure payment and has telephoned plaintiff's counsel

4

several times but has not received a return telephone call. In his opposition, plaintiff responds that the attorney's fee affidavit prepared by counsel for defendants states the billable hours for legal services rendered to defendants in connection with plaintiff's <u>motion to vacate</u> the default judgment, and not, as was ordered, attorney's fees incurred by defendants in pursuing <u>answers to interrogatories</u>.

Under the circumstances, reinstatement of the default judgment would be inappropriate because defendants have failed technically to comply with the Court's order of September 28, 1994.

## B.    Motion for Summary Judgment

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. <u>Cassesso</u> v. <u>Comm'r of Correction</u>, 390 Mass. 419, 422 (1983); <u>Community Nat'l Bank</u> v. <u>Dawes</u>, 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, "and [further] that the moving party is entitled to judgment as a matter of law." <u>Pederson</u> v. <u>Time, Inc.</u>, 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." <u>Flesner</u> v. <u>Technical Communications Corp.</u>, 410 Mass. 805, 809 (1991); accord, <u>Kourouvacilis</u> v. <u>General Motors</u>

5

Corp., 410 Mass. 706, 716 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." Pederson, 404 Mass. at 17. "[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment." LaLonde v. Eissner, 405 Mass. 207, 209 (1989).

## 1.   Fair Debt Collection Practices

Count I of plaintiff's complaint alleges that defendants' conduct constituted an unfair debt collection practice under federal and state debt collection statutes. Under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C.A., § 1692a.

The relationship contemplated between debtor and creditor is a traditional commercial relationship which contemplates some type of pro tanto exchange. Staub v. Harris, 626 F.2d 275, 278 (3rd Cir.1980). The Act only applies to transactions in which a consumer is offered or extended the right to acquire money, property, insurance or services which are primarily for household purposes, and to defer payment. Zimmerman v. HBO Affiliate Group,

6

834 F.2d 1163, 1168-1169 (3rd Cir.1987).   In contrast, the
Association dues at issue here are used to maintain the extensive
common elements at Wildwood, recreational in nature, including
lakes, beaches, ski slope, common buildings, and landscaped areas
and lawns.   Because the dues are uniformly assessed to all lot
owners without regard to which owners are specifically benefitted,
they are not a "debt" for "personal, family, or household purposes"
within the meaning contemplated by the Fair Debt Collection
Practices Act.

     There is a paucity of case law directly on point; however,
analogizing a similar assessment to a tax assessed equally against
all owner's uniformly, a Michigan District Court ordered summary
disposition of a case involving a condominium association.   In
Meisner v. Alexander, Oakland County [Michigan] District Court
action No. 91-CO 1341 GC, the plaintiff sought to recover an
assessment for a share of the cost of inspecting and replacing
electrical fixtures in the condominium project, including
replacement of some fixtures in the plaintiff's own unit.   The
court likened the assessment to a tax because the assessment was
made uniformly against all condominium owners, and not just those
who benefitted directly.

     Massachusetts' fair debt collection statute similarly protects
citizens who have incurred debt "primarily for personal, family or
household purposes."  G.L. c. 93, § 49; 940 C.M.R. 7.03.  There is
no indication that the legislature intended to define a covered
debt more broadly.

7

The Association dues here at issue do not constitute debt incurred primarily for personal, family or household purposes. Accordingly, the statute does not apply, and defendants are entitled to summary judgment as a matter of law.

## 2.   Interference With Advantageous Contractual Relations

In  Count  II  of  his  complaint,  plaintiff  alleges  that defendants interfered with advantageous contractual relations between him and the Association and its members.  Defendants did this, according to plaintiff, when they "intentionally counseled and  recommended  that  the  ASSOCIATION  [sic]  terminate  the plaintiff's right to services within the plaintiff's property rights as defined in the Rules and By-Laws of said ASSOCIATION [sic]."

In Sriberg v. Raymond, 370 Mass. 105, 108 (1976), the court observed that "[t]he public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients commends itself to us."  The court noted,

> "it is, on the whole, for the public interest, and best
> calculated to subserve the purposes of justice, to allow
> counsel full freedom of speech, in conducting the causes, and
> advocating and sustaining the rights, of their constituents;
> "[I]t is, on the whole, for the public interest, and best
> calculated to subserve the purposes of justice, to allow
> counsel full freedom of speech, in conducting the causes, and
> advocating and sustaining the rights, of their constituents;
> and this freedom of discussion ought not to be impaired by
> numerous and refined distinctions."

370 Mass. at 109, quoting from Hoar v. Wood, 3 Met. 193, 197-198 (1841).   The  court  held  that  "[w]here  a  communication  to  a prospective defendant relates to a proceeding which is contemplated

8

n good faith and which is under serious consideration, ...
privilege should attach." 370 Mass. at 109.

In his Opposition to the Motion for Summary Judgment, the
plaintiff states that defendants have totally misconstrued his
claim for intentional interference with contractual relations, and
that the contractual relationship referred to in the Complaint is
defendants' threats to interfere with the relationship between
plaintiff and his mortgagee. The language of the Complaint,
however, clearly alleges that defendants' alleged interference with
plaintiff's rights as a member of the Association "was specifically
designed to embarrass and intimidate the plaintiff in his dealings
with the ASSOCIATION [sic] and its members." Complaint, para. 19
(emphasis supplied).

Defendants' communications with the Association were
privileged under Sriberg. Accordingly, defendants are entitled to
judgment on Count II of the complaint as a matter of law.

3.    Infliction of Emotional Distress

Count III alleges negligent and intentional infliction of
emotional distress. In order for plaintiff to recover for
intentional infliction of emotional distress, he must show (1) that
defendants' intended to inflict emotional distress or knew or
should have known that emotional distress was the likely result of
their conduct; (2) that defendants' conduct was extreme and
outrageous, was beyond all possible bounds of decency, and was
utterly intolerable in a civilized community; (3) that the
defendants' actions were the cause of plaintiff's distress; and (4)

9

that the emotional distress sustained by the plaintiff was severe
and of a nature that no reasonable person could be expected to
endure it.   Agis v. Howard Johnson Company, 371 Mass. 140, 145
(1976).   Also see Beecy v. Pucciarelli, 387 Mass. 589 (1982);
Rafferty v. Comm'r of Public Welfare, 20 Mass. App. Ct. 718, rev.
denied, 396 Mass. 1103 (1985).   The mere commencement of legal
proceedings is not the sort of "extreme and outrageous" conduct
that is required to make out a claim for intentional infliction of
emotional distress against the attorney for an adverse party.
Beecy, 387 Mass. at 596.

     For plaintiff to recover for negligent infliction of emotional
distress, he must prove (1) negligence on the part of defendants,
(2) emotional distress, (3) causation, (4) objective evidence of
physical harm, and (5) that a reasonable person would have suffered
emotional distress under the circumstances.   Sullivan v. Boston Gas
Co., 414 Mass. 129 (1993); Payton v. Abbott Labs, 386 Mass. 540,
557 (1982).   However, the Supreme Judicial Court has observed that
creating in an attorney a duty in favor of his client's adversary
would create an unacceptable conflict of interest which would
seriously hamper an attorney's effectiveness as counsel for his
client.   See Beecy, 387 Mass. at 597, and cases cited.   Further,
"the nature of the adversary system precludes an adverse party from
relying on his opposing party's attorney. ...   This absence of
foreseeable reliance ... is another reason for denying an adverse
party a cause of action based on negligence."  Id.   The Beecy court
held that "an attorney should not be held liable to his client's

10

adversary for the consequence of his professional negligence." <u>Id.</u> Accordingly, defendants are entitled, as a matter of law, to summary judgment on the claim of negligent infliction of emotional distress.

### 4.   Abuse of Process

Count IV of plaintiff's Complaint lies in abuse of process. Defendants attack the sufficiency of the complaint's allegations. In merely attacking the sufficiency of the complaint, however, defendants have not sustained their summary judgment burden of demonstrating that plaintiff "has no reasonable expectation of proving an essential element" of his claim.   See <u>Flesner</u> v. <u>Technical Communications Corp.</u>, 410 Mass. 805, 809 (1991).   The defendants burden may be met only by reference to materials described in Mass. R. Civ. P. 56(c), i.e., pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any. Mass. R. Civ. P. 56(c). Accordingly, summary judgment must be Denied.

### 5.   Unfair and Deceptive Business Practice

Count V of the complaint alleges that the defendants' actions constituted an unfair and deceptive business practice as defined by G.L. c. 93A.   Defendants urge that this claim is "specious at best," however they have failed to demonstrate that proof of an essential element is unlikely to be forthcoming at trial.   See <u>Flesner</u>, supra, 410 Mass. at 809.   Having failed to meet their burden, summary judgment must be denied.

11

### III.   CONCLUSION

Defendants' motion to reinstate default judgment is **DENIED**. Further, defendants' motion for summary judgment is **DENIED** as to Counts IV and V.   Summary judgment is **ALLOWED** as to Counts I, II, and III.

Bertha D. Josephson
Justice of the Superior Court

Dated: April 3, 1995