UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10350JLT

| | |
|---|---|
| DIANE SCOTT-JONES and JOHN E. JONES, JR., INDIVIDUALLY AND AS TRUSTEES OF THE 392-394 BOYLSTON COMMONS CONDOMINIUM TRUST, **Plaintiffs** | ) ) ) ) ) |
| v. | ) ) |
| CHARLES A. PERKINS, JR. ,GARY M. DADDARIO, and PERKINS & ANCTIL, PC **Defendants** | ) ) ) ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I.    PRELIMINARY STATEMENT

In the Defendants' Memorandum of Law, the section labeled "Introduction and Facts" contains false and misleading statements, inflammatory language (e.g., "vengeful maneuver") instead of a fact-based context for their claims, and statements that have no direct bearing on the issues raised by the Defendants as grounds for dismissal of the Plaintiffs' Complaint. The issues the Defendants raised are: whether this Court has subject matter jurisdiction, whether the Plaintiffs have stated a claim upon which relief may be granted, and whether the Plaintiffs' complaint under the Fair Debt Collection Practices Act (FDCPA) is retaliatory, frivolous, and in bad faith.

The Defendants have claimed, in their letters to the Plaintiffs, to have little information about the alleged debt they were attempting to collect. The Defendants' "Introduction and Facts" section, however, suggests they have been deeply involved in

the larger, ongoing actions against the Plaintiffs. The Plaintiffs were not aware of and had not anticipated the depth of the Defendants' involvement beyond their debt collection activities. Space will not permit the Plaintiffs to address all the background and the misleading statements in the Defendants' Memorandum of Law. In the next sections, the Plaintiffs will provide a brief summary of the Background, will list examples of the false and misleading statements in the Defendants' "Introduction and Facts" Section, and will turn to the issues of law and fact related to the Defendants' Motion.

## A. BACKGROUND

The Plaintiffs, Diane Scott-Jones and John E. Jones, Jr., own and live in one unit of a small (1/3 acre) two-unit residential condominium purchased as new construction in Newton, MA, on September 1, 2000. Qing Lu and Yu Cheung (hereinafter, "Lu's") own and live in the second of the two units, which they purchased approximately one month after the Plaintiffs. Owners of the two units are Trustees of 392-394 Boylston Commons Condominium. There is no external condominium association to provide maintenance and upkeep, which must be decided and paid jointly by the owners of the two units.

Plaintiff Diane Scott-Jones is Professor of Psychology at Boston College. Plaintiff John E. Jones, Jr, is the Deputy Director of the National Weather Service, U.S. Department of Commerce; his office is in Washington, DC. The Plaintiffs own a second single-family home in the Maryland suburbs and, since September, 2000, have divided their time between their homes in Maryland and Newton.

In August, 2003, the owners of the second unit (Lu's) caused to be deposited on the common area of the two-unit condominium an enormous amount of solid waste (asphalt, brick, and concrete rubble). The solid waste, which by MA Solid Waste

Regulations at 310 CMR 16.00 and 310 CMR 19.00 must be deposited only at authorized dump sites, runs from the front to the back of the west side of the property, near the Lu's unit. The Lu's arranged for these materials to be deposited in the Plaintiffs' absence and without the Plaintiffs' permission, in violation of 392-394 Boylston Commons Condominium Trust, 5.8.1 and MGLc.183A, sec. 5 (g), in an effort to build up a side yard next to the Lu's unit, where previously there was a steep slope. The illegal solid waste materials encroach on the neighboring property, endanger the wetland behind the condominium, violate grade change regulations, and are related to violations with the City of Newton Conservation Commission, Inspectional Services Department, and Health Department. The Health Department marked the location of the solid waste on the map appended hereto as Exhibit A.

When the Plaintiffs returned to their Newton home on September 1, 2003, the Lu's refused to provide information about the extensive solid waste and other work on the common areas, in violation of the Trust, 5.18, requirement that all documents be made available for inspection. The Lu's also refused to repay the Plaintiffs a personal loan ($4,675) the Plaintiffs made to the Lu's for the Lu's half of an authorized landscape project in the back yard of the condominium. The Lu's used the threat of nonpayment of the $4,675 as leverage to demand more money from the Plaintiffs' savings for the Lu's to use for their side of the property only.

The Plaintiffs requested arbitration (September 9 and 13, 2003) as required in the Trust but the Lu's refused. The Plaintiffs suggested as a resolution an informal division of maintenance of the grounds, and separate payment of the small number of joint expenses, but the Lu's refused.

Subsequently, the Lu's began to claim the Condominium Association, and not the Lu's personally, owed the $4,675 repayment to the Plaintiffs. The Lu's claimed that the Condominium Association would need to meet and vote on whether to repay the Plaintiffs. The Lu's claim was nonsensical because the Condominium Association consisted of only the two unit owners. This claim, however, evolved into the Lu's position that they themselves are the Condominium Association, with the power to demand money from the Plaintiffs; to institute debt collection action if payment is not forthcoming; and, if nonpayment continues, to foreclose on the Plaintiffs' home. The Lu's also have asserted the power to prohibit all routine maintenance such as lawn mowing and gutter cleaning.

Because the Lu's insisted the Plaintiffs could only be repaid from the Condominium funds, the Plaintiffs reluctantly repaid themselves from those funds. The Lu's share of the small Condominium funds was far less than the debt the Lu's owed the Plaintiffs. The Plaintiffs also were concerned about the Lu's having forced a renaming of the Condominium to 392-**396** Boylston Commons Condominium, without the Plaintiffs' agreement, and the Plaintiffs closed the accounts with the falsified designation of the Condominium. The Plaintiffs informed the Lu's of all their actions. On December 5, 2003, the Plaintiffs filed a Small Claims Action against the Lu's for the repayment of the balance of the personal loan; the Court ruled in the Plaintiffs' favor on March 11, 2004, and that judgment was upheld upon appeal on April 21, 2004.

**B. SUPERIOR COURT PROCEEDINGS**

The Lu's, again taking advantage of the Plaintiffs' time spent at their second home, filed for a Temporary Restraining Order and Preliminary Injunction in Aid of

4

Arbitration on or around December 18, 2003.   Although the Lu's and their attorneys knew the Plaintiffs were out of town, the Temporary Restraining Order was granted on December 23, 2003, based on the Lu's false claim that the Plaintiffs put snow on their side of the driveway.

The Preliminary Injunction in Aid of Arbitration was scheduled for hearing on January 6, 2004, prior to the expiration of the required twenty-day period for a reply. When Plaintiffs returned to Newton, they had only one business day before the scheduled hearing on the Preliminary Injunction.   The Plaintiffs' found that a huge stack of documents, none of them in envelopes, had been dumped on their doorstep in their absence, with various documents written by three different attorneys, Patrick Brady, Thomas Moriarty, and Douglas Troyer, all of the firm Marcus, Errico, Emmer, & Brooks. Plaintiffs were required to begin responding to the confusing jumble of documents on an emergency basis.

To summarize the Superior Court proceedings that followed, a Preliminary Injunction in Aid of Arbitration was issued on January 26, 2004.   After more than fourteen months, however, the Lu's have not allowed arbitration to occur.   The Lu's initial Complaint for a Preliminary Injunction in Aid of Arbitration was designated as the X track or accelerated Track and the case should have been disposed by July 15, 2004, according to Standing Order 1-88.   The Lu's appear to be using the Preliminary Injunction to accomplish their arbitration goals without a fair hearing of the evidence regarding the Lu's dumping illegal solid waste on the common area in August, 2003. The Lu's have also refused Plaintiffs' offers to settle the dispute, asserting that the only acceptable resolution is that the Plaintiffs move.

The Lu's refused to allow arbitration to occur as scheduled and, instead, on May 5, 2005, after arbitration should have been completed, came forward with a contempt complaint, alleging that the Defendants had refused to place condominium fees in escrow.

Still refusing arbitration, the Lu's caused a Receiver to be appointed (June 24, 2004) who appears to be under the control of the Lu's. The Receiver, Sheryl A. Sarkis, is the Defendants' client and she has continued what the Lu's began. The Defendants' client has prohibited routine maintenance, has withheld information and documents from the Plaintiffs, has not arranged to remove the solid waste the Lu's deposited on the common area, has not addressed the violations resulting from the deposit of the illegal solid waste, and has initiated unfair debt collection actions against the Defendants based on an unlawful assessment. The neglect of routine maintenance has forced the Plaintiffs to live in deplorable conditions. Clogged gutters have led to water damage in the Plaintiffs' family room. The common area became filled with weeds reaching 6-8 feet high before they died in the fall. (Photographs of the east side yard, rear yard, weed-filled patio area, and air conditioning unit surrounded by weeds are appended as Exhibit 2.) Presently, the yard is filled with tall, brown remains of the dead weeds.

The Defendants' debt collection actions appear to be part of a larger, ongoing series of unjust actions aimed at harming the Plaintiffs and, ultimately, forcing the Plaintiffs to move.

## C.DEFENDANTS' MISLEADING STATEMENTS

**1.The Defendants state p. 3, "...the Plaintiffs hired and fired approximately four attorneys..."**

6

The Plaintiffs' apologize to the Court for their self-representation, which is not by choice. The Plaintiffs have lost a substantial amount of money to a succession of four attorneys who were unable or unwilling to accomplish arbitration, a settlement, or routine maintenance of the condominium. The Plaintiffs have no legal training and are representing themselves at great financial, personal, and professional costs. Many attorneys will not take this case because of ethical concerns; the dollar value of the dispute is far less than the costs of representation.

The Plaintiffs' first attorney quit without observing procedures when, after five months, the Lu's attorneys refused to allow arbitration to occur and threatened to tie Plaintiffs' attorney up in Court indefinitely. The Plaintiffs did not fire their first attorney.

Another of Plaintiffs' former attorneys failed to reveal that he was a former partner of the law firm Marcus, Errico, Emmer, & Brooks, the firm retained by the Lu's. After Plaintiffs paid his retainer, that attorney was openly offensive; he submitted documents to the Court without Plaintiffs' agreement and against Plaintiffs' interests; and he worked with the Lu's attorney to appoint the Receiver, who is a property manager well-known to these attorneys.

**2."...Plaintiffs had previously walked out on a mediation session scheduled through the Superior Court and aimed at resolving the dispute."**
There has been no mediation scheduled through the Superior Court and Plaintiffs have never walked out of any session.

## II.    ARGUMENT

## A1. THE FDCPA DOES COVER ALLEGED CONDOMINIUM ASSESSMENTS

The FDCPA was passed in response to "...abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors..." and

to "...promote consistent State action to protect consumers against debt collection

abuses." (15 U.S.C. section 1692 (a), (e)).

The FDCPA, 15 U.S.C. 1692a(5), states:

The term "debt" means any obligation or alleged obligation of a consumer to pay money
arising out of a transaction in which the money, property, insurance or services which are
the subject of the transaction are primarily for personal, family, or household purposes,
whether or not such obligation has been reduced to judgment.

Case law is sufficient to establish the applicability of the FDCPA to the alleged

condominium assessment.  Relevant cases are *Ladick v. Van Gemert,* 146 F. 3d 1205

(10th Cir. 1998); *Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F. 3d 477 (7th Cir.

1997); *Thies v. Law Offices of William A. Wyman,* 969 F. Supp. 604 (S.D. Cal. 1997);

*Taylor v. Mount Oak Manor Homeowners Association, Inc.*, 11 F. Supp, 2nd 753 (D. Md.

1998).  All these cases found that assessments alleged to be owed to condominium

associations are covered under the FDCPA.  The relevant transaction is the consumer's

initial purchase of the condominium, for which the *Newman* decision states, "there can be

little doubt that the subject of those transactions had a personal, family, or household

purpose."  The obligation, or alleged obligation, to pay assessments, or alleged

assessments, is tied to the initial purchase of the condominium.

Further, *Newman* found that assessments themselves have a "personal, family, or

household purpose", as required in the FDCPA.  *Newman* rejected the argument that

condominium assessments are like tax obligations.  Tax obligations are not considered

"debts" under the FDCPA because taxes generally are not used for personal or family

purposes.  *Newman* stated:

The assessments here have a more specific household purpose than taxes collected by a
governmental entity.  Rather than generally providing for government services, these
assessments are collected in order to improve and maintain commonly-owned areas used

by each unit owner. The assessments thereby directly benefit each household in the development.

The Defendants in the instant Complaint cited one Massachusetts case, *Franco v. Marcus,* in support of their Motion to Dismiss. In *Franco v. Marcus*, the Defendant Marcus claimed that Plaintiffs' obligation to pay condominium association dues withheld in protest of environmental violations did not constitute a "debt" as defined in the FDCPA. The ruling was that the condominium association dues were not debt incurred primarily for personal, family or household purposes. Instead, the condominium dues were said to be used to maintain the extensive common elements, which were recreational in nature, including lakes, beaches, ski slope, common buildings, and landscaped areas and lawns. The condominium association dues were assessed to all owners in the recreational complex without regard to which owners actually benefited from the facilities available and thus were not primarily for personal, family, or household purposes.

The Defendants have asserted that "...the present case involves identical circumstances..." to *Franco v. Marcus*. The Plaintiffs' situation at 392-394 Boylston Commons Condominium, however, is dramatically different from the case the Defendants cited as their sole support for lack of jurisdiction. The Plaintiffs live in one unit of a small two-unit condominium on one-third acre of land. This two-unit condominium is more like a single family home than like the large recreational complex in the *Franco v. Marcus* case. The 392-394 Boylston Commons Condominium has no large and potentially unused facilities and services.

The Defendants have claimed without sufficient justification that alleged condominium assessments are not covered by the FDCPA. The sole authority the

9

Defendants cite is a case in which the Defendant is Stephen M. Marcus, of Marcus, Errico, Emmer, & Brooks, which is the firm representing the owners of the second unit at the two-unit condominium where the Plaintiffs reside. The Defendants do not have a basis in law for their Motion to Dismiss because of a lack of jurisdiction.

## A2. CONDOMINIUM LAW DOES NOT PRECLUDE DEFENDANTS' ADHERING TO THE FDCPA

The Defendants appear to be making the claim that the U.S. District Court lacks subject matter jurisdiction because Massachusetts law requires the Plaintiffs to pay all condominium association assessments first, without asking for explanations, and then to seek relief through a separate legal proceeding. Although this claim is not relevant to Defendants' obligations to abide by the FDCPA, the Plaintiffs will outline the flaws in this section of the Defendants' arguments.

The Defendants cite two cases that involve owners' refusal to pay monthly condominium assessments, established through a lawful procedure. These cases are not relevant because Plaintiffs' have paid their monthly condominium assessment, despite the Defendants' client's long-term refusal, since June 24, 2004, to provide any routine maintenance. (See Exhibit 2.) The Defendants' debt collection actions do not involve the monthly condominium assessments, which Plaintiffs have paid in full. The Defendants and their client are pressing the Plaintiffs for payment of an extra, controversial charge that was not established as a lawful common expense.

Common expenses must be necessary as defined in M.G.L. c.183A, sec.1, as "the expenses of administration, maintenance, repair or replacement of the common areas and facilities, and expenses declared common expenses by this chapter." The criterion for

establishing the assessment of common expenses is spelled out in M.G.L. c.183A, sec.

6(a)(i): "Common expense assessments must be made at least annually, based on a

budget adopted at least annually in accordance with the master deed, trust, or by-laws."

The Defendants' client failed to meet her obligation to establish a budget for the

condominium, despite the Plaintiffs' repeated requests for information about the budget.

The requirement of a "lawful assessment" is clear in M.G.L. c.183A, sec. 7:

No unit owner may exempt himself from liability for his contribution toward the common
expenses by waiver of the use or enjoyment of any of the common areas and facilities or
by abandonment of the unit or otherwise; and no unit owner shall be entitled to an offset,
deduction, or waiver of common expenses or other charges levied or lawfully assessed by
the organization of unit owners.

The phrase "lawful assessment" also is used in relevant case law. The Defendants

cited *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass., 592 N.E.2[nd] (1992), a

case in which a homeowner withheld legitimate monthly common expense assessments

because his parking space became unusable. That case does not support the Defendants'

position; on the contrary, that case provides support for the view that lawfully assessed

condominium charges must be paid and not withheld because of a separate grievance.

The decision stated "Whatever grievance a unit owner may have against the

condominium trustees must not be permitted to affect the collection of lawfully assessed

condominium charges."

The second case the Defendants cited as establishing a condominium

homeowner's obligation to pay all assessments is *Blood v. Edgars, Inc.*, 36 Mass.App.Ct.,

632 N.E.2[nd] (1994). Edgar's, the only commercial owner in a residential condominium

complex, refused to pay any common expenses assessments over a two-year period

because a part of the assessment (fees for services to owners who rented their residential

11

units) was unjustified. The Court held that "a unit owner in a condominium association may not challenge a common expense assessment by refusing to pay it." Again, the condominium owner withheld all assessments as a means to advance a specific grievance concerning only a portion of the overall lawfully established assessment.

The Plaintiffs, unlike Edgar's, have complied with the obligation to pay the monthly common expense assessment, despite the Defendants' client's refusal to provide routine maintenance since June 24, 2004, (see Exhibit 2) and her refusal to provide the Plaintiffs information about the budget for the monthly common expense assessment and the reserve funds. The Defendants have sought legal relief, albeit unsuccessfully, by bringing a Motion to Remove the Receiver. Therefore, the Defendants have met all obligations for paying common expense assessments and then seeking legal redress.

The Defendants are promoting a coercive interpretation of condominium law that allows enormous possibilities for fraud. If Defendants' arguments were to prevail, little or no control would be exerted over the demand for extra, unjustified payments. The condominium homeowner would have only a retrospective or retroactive protection against unfair assessments. The obligation to pay would be entirely one-sided and would not be balanced by a corresponding obligation to provide upkeep of the condominium. A two-unit condominium is especially vulnerable to abuse of this kind. The sole beneficiary of unfair demands for payments from the Plaintiffs is the second unit-owner.

Further, the Defendants fail to note that the law they cite in support of their claims regarding condominium homeowners' obligations to pay all assessments was established in response to concerns about absentee owners who failed to pay their monthly condominium assessments and caused harm to all the paying homeowners in the

12

condominium. The law may be anachronistic in that the law can now be used, not only to protect the paying homeowners in a condominium association, but to abuse condominium homeowners by forcing them to pay illegitimate charges.

The Defendants' client's demand for an extra, unexplained payment is not comparable to the monthly common expense assessments withheld in the two cases the Defendants cited. Thus, the Defendants have not established a basis in law for their claim of a lack of jurisdiction arising from condominium homeowners' obligations to pay all assessments. The Defendants' assertion of condominium homeowners' obligation to pay all charges, including charges that all parties know to be unjustified, is a coercive and unjust interpretation of condominium law and is not adequate ground for dismissing Plaintiffs' Complaint.

## B1.PLAINTIFFS HAVE SUBSTANTIAL LEGAL CLAIMS AGAINST THE DEFENDANTS

The Defendants claim the Plaintiffs' allegations in the Complaint are false but the Defendants do not provide documentation of their claims. The Plaintiffs hereby reassert the basic statements of fact in their complaint are correct. The Defendants have not established adequate ground for dismissal of the Plaintiffs' Complaint because of a lack of facts.

## B2.PLAINTIFFS HAVE NOT CLAIMED TO BE CLASS REPRESENTATIVES

In Part 2 of their assertion that "Plaintiffs have failed to state a claim upon which relief can be granted", the Defendants do not object to any claim the Plaintiffs have made. Instead, the Defendants are objecting to one element of the Plaintiffs' Prayer for

13

Relief, which is a request for certification of a class of all individuals who receive debt collection letters from the Defendants. The Plaintiffs respectfully requested that the Court consider appointing the Plaintiffs as class representatives.

Mass. Civil Procedure Rule 23(a) states as prerequisites that (1) the class is numerous; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Plaintiffs have no way to verify Rule 23(a)(1), the number of possible class members. The Plaintiffs therefore asked the Court to consider whether others have been affected by the Defendants' claims that the FDCPA does not apply to debt collection actions that are actually covered. The prerequisites of Rule 23(a)(2), (3), and (4) can be met.

Despite their inclusion of the FDCPA notice in all their letters, the Defendants have taken the position that the FDCPA does not actually apply. The provisions of the FDCPA are relatively easy to follow and, without such clear protection, homeowners and other consumers, as well as legitimate, law-abiding debt-collectors, are penalized. A review of the Defendants' files could easily and quickly establish whether they are routinely violating the FDCPA. The possibility of Defendants' routine violation of the FDCPA, as a part of their practice, seems especially appropriate and feasible for a review for class action. Stopping and preventing the routine violation of the FDCPA would be in the interest of justice.

The Plaintiffs' inclusion of the request for certification of a class in their Prayer for Relief is not adequate ground for dismissing the entire Complaint.

14

## C. PLAINTIFFS' COMPLAINT IS NECESSARY TO PROTECT AGAINST DEFENDANTS' VIOLATION OF THE FDCPA AND DEFENDANTS' DECEPTIVE AND UNFAIR PRACTICES

The Defendants have not shown any evidence that the Plaintiffs' actions are retaliatory, frivolous, or in bad faith. On the contrary, the Plaintiffs have remained patient and solution-oriented in response to extraordinary actions against them on the part of the owners of the second unit in the two-unit condominium. The Defendants appear to have stepped forward, under the guise of debt collection, to assist the owners of the second unit in the effort to force the Plaintiffs out of their home. The Defendants have failed to meet their obligations under the FDCPA and they have committed egregious breaches of the implied covenant of good faith and fair dealing.

## III.    CONCLUSION

The Defendants have not established a sufficient legal or factual basis for their claim that the Court lacks subject matter jurisdiction; that the Plaintiffs have failed to state a claim upon which relief may be granted; and that the Plaintiffs' Complaint under the FDCPA is retaliatory, frivolous, and in bad faith.

**WHEREFORE,** the Plaintiffs respectfully request that this Honorable Court:

A. Deny Defendants' Motion to Dismiss in its entirety;

B. Allow the Plaintiffs' Complaint to be scheduled for a hearing;

C. Take any and all other actions judged to be in the interest of justice.

**Respectfully submitted,**

**Diane Scott-Jones, Pro Se          John E. Jones, Jr., Pro Se**
**March 30, 2005**
**392 Boylston Street, Newton, MA  02459          617-558-3522**

15

# EXHIBIT 1

Click the Print button to print this map.



**Assessor's Map For:**
**SCOTT-JONES DIANE &**
**JOHN E JR**
**392-396 BOYLSTON ST**
**Unit 392**
**Neighborhood: 4A**

**CITY OF NEWTON**
MASSACHUSETTS
ASSESSING DEPARTMENT
1000 COMMONWEALTH AVE.
NEWTON CENTRE, MA 02459
PHONE: 617-796-1160

**4/26/2004**

Map for Reference Only
NOT A LEGAL DOCUMENT

Because of different update schedules,
current property assessments may not
reflect recent changes to property
boundaries. Check with the Board of
Assessors to confirm boundaries used at
time of assessment.



# EXHIBIT 2





C8 Weeds outside familiaroom door to survival

Cal. Jan Numbe 2, 2001

