UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                                    CIVIL ACTION NO. 05-10350JLT

_____
                                                    )
DIANE SCOTT-JONES and JOHN E. JONES, JR., )
Individually and as Trustees of the 392-394        )
BOYLSTON COMMONS CONDOMINIUM                        )
TRUST,                                              )
          Plaintiffs,                              )
                                                    )
v.                                                  )
                                                    )
CHARLES A. PERKINS, JR., GARY M.                   )
DADDARIO and PERKINS & ANCTIL, P.C.,               )
          Defendants.                              )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the above-captioned Defendants (collectively "Perkins & Anctil"), by and through counsel, and respectfully submit, pursuant to Massachusetts Federal Rules of Civil Procedure Rule 56(b) and Local Rules for the District of Massachusetts Rule 56.1, this Memorandum of Law in Support of Defendants' Motion for Summary Judgment to this Honorable Court.

## I.    LEGAL STANDARD

Summary Judgment is a "device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." *Community National Bank v. Dawes*, 369 Mass. 550, 553, 340 N.E.2d 877, 879, 18 UCC Rep.Serv. 723 (1976) (*citing* 3 W.W. Barron & A. Holtzoff, Federal Practice & Procedure (Rules Edition) s 1231, at 96 (Wright rev.ed. 1958) and C.A. Wright & A.R. Miller, Federal Practice & Procedure s 2712, at 370 (1973)). "The motion for summary judgment is in order and 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

1

admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ibid.* *(citing* Mass.R.Civ.P. Rule 56(c) [which sets forth the identical standard as that of Federal Rule 56 (c)]).

Although the moving party bears the initial burden of "showing that there is an absence of evidence to support the case of the nonmoving party," *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 714, 575 N.E.2d 734, 739 (1991) *(citing Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)), this burden may be met through a demonstration that "the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Id.* at 716, 740. Thus, in order to succeed in obtaining a grant of Summary Judgment, a moving party need only show that the opposing party can not reasonably be expected to prove its case and, consequently, "need not submit affirmative evidence to negate one or more elements of the other party's claim." *Ibid.*

Once the moving party has met its burden, the burden shifts to the non-moving party who "may not simply rest on his pleadings or general denials; he must 'set forth specific facts' showing that there is a genuine, triable issue." *Community National Bank*, at 554, 879 *(quoting* Mass.R.Civ.P. Rule 56(e) [which sets forth the identical standard as that of Federal Rule 56(e)]).

## II.    MATERIAL FACTS

As a result of various disputes concerning the operation of the 392-394 Boylston Commons Condominium ("Boylston Commons"), including the proper course of action for remedying a landscaping project that resulted in issues with their municipality, the

2

Lus (as co-owners of Boylston Commons) retained Marcus, Errico, Emmer and Brooks, P.C. as legal counsel and instituted a suit against their co-owners, the Jones (Plaintiffs in this matter) seeking, among other relief, the appointment of a Receiver to conduct the condominium's affairs (Middlesex Superior Court Civil Action 03-5103). As a result, Sheryl Sarkis was appointed as Receiver.

The Defendants (collectively "Perkins & Anctil") were retained by the Court-Appointed Receiver, to collect a delinquent assessment from the Plaintiffs. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario filed herewith. Perkins & Anctil are not and have never been counsel to Boylston Commons. *Ibid.* Perkins & Anctil are not and have never been responsible for or associated with the operation of Boylston Commons. *Ibid.* To the extent that Plaintiffs take issue with the operation of their condominium, the condition or finances thereof, the management thereof, the appointment or performance of the Court-Appointed Receiver or the like, said issues are not properly raised against Perkins & Anctil. The only actions taken by Perkins & Anctil in pursuit of the delinquent assessment were the drafting of the letters attached as Exhibits to this Memorandum and discussed in greater detail below. *Ibid.*

As set forth in the Affidavit of the Court-Appointed Receiver, Sheryl Sarkis (filed herewith) the Plaintiffs were apprized of the reason for the assessment that Perkins & Anctil were retained to collect. See Affidavit of Sheryl Sarkis at ¶ 8-9. Specifically, in order to correct improper landscaping on the condominium's common areas, the Decelle Group was retained to perform a topography survey. See Affidavit of Sheryl Sarkis at ¶ 5. The final cost of the survey was $2,500.00 and, accordingly, each of the two units of Boylston Commons was assessed $1,250.00. This was explained to Plaintiffs by Sheryl

Sarkis. See Affidavit of Sheryl Sarkis at ¶ 6-9. Further, Ms. Sarkis issued written correspondence to all unit owners. See Affidavit of Sheryl Sarkis at ¶9. Finally, Plaintiffs were provided with documentation prior to the issue of collection correspondence by Perkins & Anctil. See Affidavit of Sheryl Sarkis at ¶ 9. Perkins & Anctil were retained because Ms. Sarkis' prior attempts to collect the assessment had failed. See Affidavit of Sheryl Sarkis at ¶ 10.

The letters written by Perkins & Anctil constitute their only actions in the attempt to collect the assessment and, perhaps as important, their only contact with Plaintiffs. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario at ¶6, respectively. Perkins & Anctil's initial collection letter to the Plaintiffs (See Exhibit "1") began a series of written correspondence between Perkins & Anctil and the Plaintiffs. Copies of the letters are attached, in chronological order, as Exhibits "2-7".

After Superior Court hearings on February 3rd and February 8, 2005, the Superior Court issued an Order requiring the Plaintiffs to remit payment of the assessment sought, as well as all legal fees and costs. Copy of the Order of Bonnie H. MacLeod, Justice, attached hereto as Exhibit "8". The Plaintiffs' subsequent Motion to Stay the Order Pending Appeal was denied after "an extensive hearing and review of the documents." Copy of the Order of Leila R. Kearn, Justice, attached hereto as Exhibit "9".

The Plaintiffs have filed this action against Perkins & Anctil alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). As such, it is the conduct of Perkins & Anctil in their attempt to collect the delinquent assessment that is relevant to this lawsuit.

## III.   **ARGUMENT**

4

## A.    THE CASE IS RIPE FOR SUMMARY JUDGMENT

As set forth with specificity in the Concise Statement filed herewith, the material facts regarding this matter are amply supported by the record. Further, as set forth above, the material facts in this case are few in number and clear in concept.

The suit filed in this matter is, essentially, a set of allegations attempted to establish that Perkins & Anctil violated the FDCPA. However, Perkins & Anctil's only actions in the attempt to collect the delinquent assessment, in fact Perkins & Anctil's only communications and/or contact with Plaintiffs, consist of the issuance of the above-referenced letters attached hereto as Exhibits "1", "3", "5" and "7". Accordingly, unless Plaintiffs can establish an FDCPA violation on the basis of said letters, their claims must fail.

Based upon the parties' teleconference in preparation for this Honorable Court's Scheduling Conference and the documents filed in conjunction therewith, it is clear that Plaintiffs are unable to distinguish this lawsuit from the underlying issues with their condominium association or those of the Superior Court proceedings. Plaintiffs refer to numerous issues and disputes with the condominium association, the Court-Appointed Receiver and the Superior Court. Unfortunately, none of these are material, or even relevant, to their Complaint in this matter. In sum, neither the condition of their condominium, their satisfaction with the Court-Appointed Receiver's performance, their agreement or disagreement with the handling of the condominium's operations nor their assent or disagreement with the assessment in question, the issues before the Superior Court or their satisfaction with the Superior Court's performance have any bearing

whatsoever upon the issue raised by their Complaint in this matter- whether Perkins & Anctil violated the FDCPA in their efforts to collect the delinquent assessment.

As set forth above, given the allegations of the Plaintiffs and the relative lack of contact between Perkins & Anctil and the Plaintiffs, absent an FDCPA violation resulting from the letters attached hereto as Exhibits "1", "3", "5" and "7", Perkins & Anctil are entitled to judgment in their favor as a matter of law. As explained in detail below, no FDCPA violations were committed.

## B.     THE FDCPA

As set forth in §1692(e), the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged...." Thus, by its own terms, the FDCPA is neither designed to hinder legitimate debt collection nor to interfere with a debt collection (such as that at issue in this case) conducted in accord with applicable law by professional attorneys.

Plaintiffs in this case make much of the issue of "verification" of the debt. For the reasons set forth below, their allegations are fraudulent misrepresentations to this Court and thus worse than allegations simply lacking merit. But, the details below aside, it is important to note that the FDCPA's verification provision, §1692g(b) requires that a debtor receive the contact information of the original creditor and a copy of debt verification or a judgment (if one exists). Thus, this aspect of the FDCPA protects the consumer by requiring communication sufficient to determine the "identity" of the debt. Based on the Plaintiffs' allegations, it appears that Plaintiffs confuse this provision to mean that a debt collector must seek a debtor's acquiescence regarding the debt and

6

obligation to pay. That the Plaintiffs' interpretation is incorrect is evidenced by the

Federal Trade Commission Staff Commentary ("[a]n attorney debt collector may take

legal action within 30 days of sending the notice, regardless of whether the consumer

disputes the debt") and 7th Circuit decision cited in the context of the argument below.

## C.   THE ALLEGATIONS OF THE COMPLAINT DO NOT ESTABLISH AN FDCPA VIOLATION

### i.   "[T]he Defendants made false and misleading statements regarding the Plaintiffs' rights."

The "Count" section of the Complaint begins with Paragraph 5. Here, the

Plaintiffs allege that Perkins & Anctil made false and misleading statements because

although the initial collection letter contained an FDCPA notice, a subsequent letter

indicated that the FDCPA is not applicable as condominium assessments are not

consumer debts.

This allegation does not establish an FDCPA violation for several reasons. First

and foremost, in a May 4, 1992 Opinion Letter issued by Attorney Thomas E. Kane on

behalf of the Federal Trade Commission, it is written that the FDCPA "does not prohibit

those who are covered by the Act from simply denying that they are covered." Thus,

even if Perkins & Anctil felt that the FDCPA was applicable (a point which is contested

as demonstrated by the Motion to Dismiss and arguments contained herein), their denial

of the same does not constitute a violation of the Act.

In addition, the initial notice issued by Perkins & Anctil contained the language

"You should be aware that the FDCPA Act only applies to consumer debtors."

(Emphasis in original). See Exhibit "1".

7

Further, the initial letter informed Plaintiffs "If you have any questions regarding this correspondence, you should seek the advice of counsel." See Exhibit "1".

Moreover, when addressing Plaintiffs' concern on this point, Perkins & Anctil, in addition to stating that condominium debt is not consumer debt, noted that "[T]he FDCPA warning is included on correspondence from this office as a matter of course in the ordinary conduct of our business." See Exhibit "5".

Finally, as set forth in the Defendants' Motion to Dismiss and accompanying Memorandum filed with this Honorable Court, Perkins & Anctil opines that condominium debt is not consumer debt and that the FDCPA is, therefore, not applicable. Perkins & Anctil cited law in support of this proposition in said Motion. Although this Honorable Court cited law for the alternative position, it appears that the question has not been resolved in this Circuit. Certainly, at the time of Perkins & Anctil's subject writing (aside from the above-quoted opinion of the Federal Trade Commission allowing the simple denial of FDCPA coverage) Perkins & Anctil were entitled to assert their understanding and position with respect to the law. Especially in light of the facts that it was clear Perkins & Anctil did not represent Plaintiffs and that Perkins & Anctil directed Plaintiffs to obtain counsel to address any questions, it was not an FDCPA violation for Perkins & Anctil to assert a legal position.

### ii. "After the Defendants' initial December 15, 2004, letter, they continued to send letters dated December 28, 2004, January 4, 2005, and January 11, 2005."

The above allegation appears as Paragraph 6 in the "Count" section of Plaintiffs' Complaint. This sentence constitutes the entire allegation of Paragraph 6. As the Perkins

& Anctil letters described were each issued to Plaintiffs in response to letters sent by

Plaintiffs, it appears quite clear that the same do not constitute violations of the FDCPA.

> **iii. "The Defendants' initial December 15, 2004, letter claimed the Plaintiffs' had 14 days from the date of the letter to pay whereas 15 U.S.C. section 1692g(a)(3) allows thirty days after receipt of the letter for the consumer to dispute the validity of the debt."**

The above allegation constitutes the entirety of Paragraph 7 of the "Count"

section of Plaintiffs' Complaint. The same fails to establish an FDCPA violation as the

FDCPA notice cited by Plaintiffs also indicates that it applies to "consumer" debtors. As

set forth in the Defendants' Motion to Dismiss and accompanying Memorandum, and as

discussed above and below herein, there is legal support for the proposition that the

FDCPA is not applicable.

Further, Perkins & Anctil's provision of a 14-day period for payment did not, by

the terms of the letter or in actuality, prevent Plaintiffs from asserting a dispute.

Moreover, even if the FDCPA applied and the Plaintiffs have thirty days to set forth a

dispute, the Federal Trade Commission has ruled that the FDCPA does not preclude the

institution of legal action prior to the expiration of the thirty-day period. The Federal

Trade Commission Staff Commentary on the FDCPA notes that "[a]n attorney debt

collector may take legal action within 30 days of sending the notice, regardless of

whether the consumer disputes the debt." This information was supplied to Plaintiffs in

the December 28, 2004 letter (See Exhibit "3") issued by Perkins & Anctil.

Indeed, the Seventh Circuit has held that "[t]he debt collector is perfectly free to

sue within the thirty days; he just must cease his efforts at collection during the interval

between being asked for verification of the debt and mailing the verification to the

9

debtor." *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997). In the present case, verification of the debt is not an issue. Verification of the debt, as explained in detail and with supporting documents below, was provided both prior to any correspondence issued by Perkins & Anctil and by Perkins & Anctil. Plaintiffs recited this fact, as set forth below with supporting documentation, in their first letter to Perkins & Anctil. Accordingly, Plaintiffs requests for verification were disingenuous. Nonetheless, Perkins & Anctil still provided verification, as set forth below with supporting documentation.

More importantly, other than responses to letters from Plaintiffs, Perkins & Anctil's only actions subsequent to their initial notice were the issuance of the Notice of Default (Exhibit "7") and the 30- and 60-Day Notices (See Exhibits "10" and "11") to the first mortgage holder. Such correspondence, legal prerequisites to litigation (pursuant to M.G.L. c. 183A, as set forth in detail below) are exceptions to even the "cease communication" request that a debtor may issue pursuant to 1692c(c).

Finally, as explained to Plaintiffs in Perkins & Anctil's letter of January 4, 2005 (See Exhibit "5"), the "14-Day" letter issued by Perkins & Anctil is issued as a courtesy to delinquent unit owners. The Massachusetts Condominium Statute anticipates collection beginning with a Notice of Default. Said notice is more formal, of greater length and depth and costlier than the 14-day letter issued by Perkins & Anctil. In addition, said Notice of Default triggers the issuance of two notices (required by M.G.L. c. 183A, §6(c)) to the first mortgage holder (which, in turn, necessitates a title examination to determine the first mortgage holder of record). The fact that Perkins & Anctil chooses to provide delinquent unit owners with an initial 14-day period for

10

purposes of clearing their account without undue correspondence or expense should not be used to establish an FDCPA violation.

        iv.    **"The Defendants failed to provide verification of the debt...."**

This allegation is presented in Paragraph 8 of the "Count" section of the Complaint. In sum, this allegation is patently false. For the reasons set forth below, inclusion of this allegation in the Plaintiffs' pleadings and oral statements at the September 6, 2005 Scheduling Conference amount to fraudulent misrepresentations to this Honorable Court.

Plaintiffs were provided with explanation and verification of the debt prior to receiving correspondence from Perkins & Anctil. See Affidavit of Sheryl Sarkis at ¶ 8-9. In fact, in their very first letter to Perkins & Anctil, dated December 28, 2004 (See Exhibit "2"), the Plaintiffs wrote that "[w]e now have a copy of the "Existing Condition Plan" from the Decelle Group". Thus the Plaintiffs, by their own admission, were in possession of the very work product which formed the basis of the assessment. Further, in that same letter (See Exhibit "2"), Plaintiffs complained "the "Existing Condition Plan" is dated August 21, 2004, but Receiver Sheryl Sarkis did not provide information about it until October 12, 2004." Thus demonstrating, again, that plaintiffs had verification prior to Perkins & Anctil's involvement. As set forth in the Affidavit of Sheryl Sarkis and in her letter of October 12, 2004 (attached as Exhibit "B" to her Affidavit), all Boylston Commons unit owners were provided with a copy of the Decelle Group invoice as an attachment to the October 12, 2004 letter. Therefore, by their own admission (See Exhibit "2") the Plaintiffs had, in fact, received a letter of explanation and, thus, the related and attached invoice for the services provided.

        To be clear, prior to correspondence issued by Perkins & Anctil, Plaintiffs

received an explanation of the assessment and its purpose, a written statement regarding

the assessment from the Receiver, the invoice from the Decelle Group for the services

rendered and a copy of the work product produced by the Decelle Group. See Affidavit

of Sheryl Sarkis at ¶ 6-9 and Exhibit "B" thereto and Exhibit "2" attached hereto. The

Plaintiffs had, by October 12, 2004, every conceivable form of verification for the debt

constituting the assessment that Perkins & Anctil sought to collect. Nevertheless,

Plaintiffs included contrary allegations in their Complaint and made contrary oral

statements at the September 6, 2005 Scheduling Conference.

        In light of the above, Plaintiffs' allegations at Paragraphs 8-9 and, especially,

Paragraph 10 of the Complaint constitute fraudulent misrepresentations to this Honorable

Court. Likewise, Plaintiffs committed the same offense when, at the Scheduling

Conference on September 6, 2005, they stated to this Honorable Court that they lack

verification of the debt and further stated that they "disagreed" when counsel for Perkins

& Anctil indicated that verification had, in fact, been provided. The Plaintiffs are, quite

simply, asserting misrepresentations in this regard.

        Plaintiffs' allegations of lack of verification of the debt have, quite clearly, been

completely rebutted. However, notwithstanding all of the above, in addition, Perkins &

Anctil's initial letter (See Exhibit "1") identified the nature of the debt as the balance on

their condominium account per the Court-Appointed Receiver. In addition, it is again

explained to Plaintiffs in Perkins & Anctil's January 4, 2005 letter (See Exhibit "5") that

the assessment is related to the necessary landscaping repairs (the initial assessment

sought by Perkins & Anctil was for the topography study done by the Decelle Group in

                                            12

preparation of the actual landscaping). In fact, in said letter, Perkins & Anctil refers

Plaintiffs to the Superior Court Order in which the Receiver is appointed and the

landscaping project is defined as a necessary repair. Then, notwithstanding all of the

above, with the January 11, 2005 Notice of Default issued to Plaintiffs (See Exhibit "7"),

Perkins & Anctil attached a copy of the October 12, 2004 letter issued by the Court-

Appointed Receiver and to which was attached a copy of the invoice from the Decelle

Group.

### v.      "The Defendants again refused to provide verification...."

This allegation appears as Paragraph 9 of the "Count" section of the Complaint.

For the reasons set forth above, this allegation rings hollow and fails to establish an

FDCPA violation.

### vi.      "[T]he Defendants provided a copy of an invoice, dated August 30, 2004, which was not a copy of any invoice the Plaintiffs had ever received."

This allegation appears as Paragraph 10 of the "Count" section of the Complaint.

As set forth above, the allegation is patently false. Plaintiffs have consistently been

informed (both prior to correspondence from Perkins & Anctil and in correspondence

from) that the debt sought by Perkins & Anctil related to their condominium account and

the landscaping repairs required at the site. There has never been a true, legitimate

question as to the origin of the assessment. Moreover, as set forth above, from the first

correspondence they issued (See Exhibit "2"), Plaintiffs admitted to being in possession

of the work product for which they were assessed and referenced the Receiver's letter

regarding the explanation of the same and which provided a copy of the invoice for the

services rendered to Boylston Commons by the Decelle Group.

13

Thus, Plaintiffs' allegations regarding "verification of the debt" simply do not establish an FDCPA violation in this matter. As to the fact that Plaintiffs disagree with the Receiver's actions, find fault with the Decelle Group's study, find fault with the Decelle Group and the like, these are issues for the underlying Superior Court case. The same have no bearing on judging Perkins & Anctil's actions in their attempts to collect the delinquent assessment.

### vii.    "The Defendants' letter dated January 11, 2005, stated that the Plaintiffs had 10 days to pay or object to the alleged debt."

Appearing in Paragraph 11 of the "Count" section of the Complaint, this statement is part of an allegation suggesting that Perkins & Anctil did not properly acknowledge the Plaintiffs' dispute and request for verification. Perkins & Anctil's response to these allegations, generally, is as set forth above. However, more specifically and more importantly, with respect to this allegation, Perkins & Anctil notes that the statement quoted in the allegation is a portion of a sentence which actually reads:

> "You have ten (10) days from your receipt of this Notice, **for purposes of the attachment of rents**, to deliver to us a written response...." (Emphasis supplied). (See Exhibit "7").

As the Massachusetts Condominium Statute allows a condominium association to attach the rent of a delinquent unit owner (where the unit owner is renting the unit as investment property), Perkins & Anctil includes the above statement in correspondence to delinquent unit owners to apprize them of their rights with respect to this available form of relief that may be undertaken by their condominium association. As the Plaintiffs reside in and do not rent their unit, this statement has always been inapplicable to their situation and, therefore, does not establish a violation of the FDCPA.

14

### viii. "The Defendants violated 15 U.S.C. 1692e by falsely implying in their initial letter, dated December 15, 2004, that legal proceedings had already begun."

The above appears in Paragraph 12 of the "Count" section of the Complaint.

Perkins & Anctil notes that their initial letter (See Exhibit "1") is a document which speaks for itself. Said letter does not state that legal proceedings had begun. Although the letter provides direction to "resolve this matter without the need of any further legal proceedings", the letter is simply referencing the action taken by Perkins & Anctil in issuing said letter. To Boylston Commons and the Court-Appointed Receiver, the collection of the delinquent assessment had become a legal matter and they had retained counsel, Perkins & Anctil, to resolve the same. Further, that the initial letter was, in fact, an initial, introductory letter was made known to Plaintiffs through the language used therein. The letter begins "Please be advised this office represents Sheryl Sarkis....". See Exhibit "1". Thus Plaintiffs were made aware that they were receiving a first correspondence from Perkins & Anctil and the same was, therefore, obviously not a continuation of a legal proceeding.

### ix. "The Defendants' second letter, dated December 28, 2004, claimed that Sheryl A. Sarkis "will be statutorily entitled to the court's authorization of a foreclosure on your property."

This allegation also appears in Paragraph 12 of the "Count" section of the Complaint. The Plaintiffs are referencing Exhibit "3" attached hereto. The relevant portion thereof actually reads:

> "In any court judgment regarding your outstanding balance...Sheryl Sarkis as Receiver, will be statutorily entitled to the court's authorization of a foreclosure of your property."

M.G.L. c. 254, §5A reads:

15

"When the amount of a lien under section six of chapter 183A [the Condominium Statute] or under section 29 of chapter 183B has been established by a court, the court **shall** enter an order authorizing the sale of the real estate to satisfy such lien." (Emphasis supplied).

Thus, the complained-of statement referenced in the allegation was simply a recitation of

the Receiver's clear statutory right under Massachusetts Law. Perkins & Anctil clearly

explained the same to Plaintiffs in their letter of January 4, 2005. See Exhibit "5".

Perkins & Anctil's simple recitation of the law as set forth in an applicable statute

does not establish a violation of the FDCPA.

> x. **"The Defendants claimed in their letter, dated January 4, 2005, that "the legality of an assessment must be questioned only after payment."**

This allegation appears in Paragraph 13 of the "Count" section of the Complaint.

In the referenced letter (See Exhibit "5"), Perkins & Anctil again provided a legal

position based upon Massachusetts Law. In particular, Perkins & Anctil actuality quoted

the case of *Blood v. Edgars, Inc.*, 36 Mass.App.Ct. 402, 406, 632 N.E.2d 419, 421-422

(1994), in which the Massachusetts Appeals Court held:

> "We suggest that aggrieved unit owners should timely pay-under protest-the common expense assessment. Thereafter, a judicial determination of the legality of the assessment, and suitable reimbursement, may be sought."

> "From the date of this opinion, a condominium unit owner may not challenge a common expense assessment by refusing to pay it." *Id.* at 410, 424.

The *Blood* case was decided two years after the case of *Trustees of Prince*

*Condominium Trust v. Prosser*, 412 Mass. 723, 726, 592 N.E.2d 1301, 1302 (1992), in

which the Massachusetts Supreme Judicial Court held:

> "A system that would tolerate a unit owner's refusal to pay an
> assessment because the unit owner asserts a grievance, **even a
> seemingly meritorious one**, would threaten the financial integrity
> of the entire condominium operation." (Emphasis supplied).

Thus, once again, with respect to the complained-of statement, Perkins & Anctil were

simply reciting Massachusetts Law. Further, as explained above, pursuant to the opinion

and commentary of the Federal Trade Commission and the precedent of the 7th Circuit,

Perkins & Anctil were not prohibited from filing suit (or sending prerequisites thereto) by

the Plaintiffs' alleged dispute. As such, Plaintiffs' allegations in this regard do not

establish a violation of the FDCPA.

It bears mention that in said letter (See Exhibit "5"), Attorney Daddario wrote:

> "In the event that you opt not to make payment in accord with this
> letter or have any questions relating thereto, I strongly recommend
> that you seek the advice of legal counsel."

Finally, it must be noted that Plaintiffs, like all Massachusetts condominium

owners, have sufficient legal protection. Specifically, the Massachusetts decisions

establish that a unit owner may bring an action seeking reimbursement after payment of a

contested assessment. Thus, those wishing to dispute an assessment are not without

remedy. Rather, they must simply follow the proper procedure set forth by the

Massachusetts Legislature and Courts. This procedure is not novel, but also applies in

situations involving tax disputes. It has been correctly determined that the needs of the

condominium association in maintaining adequate operations outweighs the

inconvenience presented to those unit owners that seek to dispute the judgment of their

Boards of Trustees.

           **xi.**      **"The Defendants sent a notice to the Plaintiffs' mortgage
company, attaching a lien to the Plaintiffs' mortgage, in
violation of Rule 4.1, procedures for attachment of real estate."**

This allegation appears as Paragraph 14 of the "Count" section of the Complaint. The notices issued by Perkins & Anctil to the Plaintiffs' mortgage holder are attached hereto as Exhibits "10" and "11". Perkins & Anctil states that these letters are documents which speak for themselves. However, Perkins & Anctil also note that such notices are required by M.G.L. c. 183A, §6(c) and, therefore, the issuance of the same does not constitute a violation of the FDCPA. Further, the issuance of said notices did not "attach a lien" and, therefore, Rule 4.1 is not applicable. Moreover, as a mortgage is, itself, a lien, the notion of attaching a lien to a mortgage is, quite simply, illogical. Plaintiffs' allegations in this regard fail to establish an FDCPA violation and, instead, demonstrate a disingenuous attempt to distort the actions of Perkins & Anctil to attempt to establish a claim against them.

> **xii.** **"The Defendants, on or around January 27, 2005, filed in Superior Court a motion to compel payment and to permanently enjoin the Plaintiffs from speaking with the head of the property management firm for which Sheryl A. Sarkis works."**

This allegation appears as Paragraph 15 of the "Count" section of the Complaint. Perkins & Anctil asserts that, on its face, this Paragraph fails to establish a violation of the FDCPA. In fact, neither the allegation nor the underlying events relate to Perkins & Anctil's actions in the attempted collection of the delinquent assessment (although such events did occur in the underlying Superior Court action in conjunction therewith).

Perkins & Anctil further notes that the subject Motion is attached hereto as Exhibit "12". The subject Order of the Superior Court is attached hereto as Exhibit "8". In the Order, the Superior Court specifically finds that the Plaintiffs engaged in inappropriate conduct with respect to contacting Ms. Sarkis' boss. John Rosenthal. As

Ms. Sarkis' appointment as Receiver was separate and distinct from her primary

employment as a property manager with Meredith Management, the Plaintiffs' contact

with the President of Meredith Management, John Rosenthal, regarding their

condominium's affairs was not appropriate and interfered with Ms. Sarkis' employment.

See Affidavit of Sheryl Sarkis at ¶ 12-16.

In addition, the Superior Court specifically ordered Plaintiffs to pay the

assessment sought by Perkins & Anctil and the legal fees associated therewith in accord

with M.G.L. c. 183A, §6(a)(ii). The Superior Court's Order issued after the Court

explicitly announced that a careful review of relevant documents had been undertaken by

the Court and after two days of hearing, including testimony of the Receiver, and at

which the Plaintiffs appeared, questioned the Receiver and spoke in Opposition to the

Motion. Perkins & Anctil's filing of this Motion does not constitute a violation of the

FDCPA.

### xiii.    The "Claim For Relief"

The Plaintiffs' "Claim For Relief" section of the Complaint is a reiteration of the

allegations discussed above. As such, the responses of Perkins & Anctil apply to

Paragraphs 16-17 as set forth above.

### xiv.    The Claim Regarding Good Faith and Fair Dealing

To the extent that Plaintiffs attempt to assert a claim for breach of the covenant of

good faith and fair dealing, Perkins & Anctil notes that the same is entirely misplaced.

This claim applies to situations in which a contract has been breached under

Massachusetts Law. Here, Perkins & Anctil was retained by the Court-Appointed

Receiver to collect a delinquent condominium assessment from the Plaintiffs and, quite clearly, has never entered into a contractual relationship with the Plaintiffs.

## D. THE PLAINTIFFS' DEBT IS NOT CONSUMER DEBT AND THE FDCPA DOES NOT APPLY

In the denial of the Defendants' Motion to Dismiss, this Honorable Court issued a single, conclusory statement to the effect that condominium debt is consumer debt and cited law of the 7th Circuit in support for said proposition. Although this Honorable Court did not accept Perkins & Anctil's argument for purposes of the Motion to Dismiss, law was cited in support therefor. See Motion to Dismiss at Pages 7-8. It appears that the issue is, as yet, unresolved in the First Circuit. Other Federal Courts have determined that condominium debts are not consumer debts: *Nance v. Petty, Livingston, Dawson & Devening*, 881 F.Supp. 223 (W.D. Va. 1994) (fees due homeowner's association used on common road and therefore not primarily for personal, family or household purchases) *citing Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir. 1994) (holding child support payments were not debts under FDCPA); *Azar v. Hayter*, 874 F.Supp. 1314 (N.D.Fla. 1995) (holding condominium assessments for common area maintenance lack the *pro tanto* exchange required for debt under FDCPA) *citing Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) (holding that relationship between taxing authority and taxpayer does not have sufficient *pro tanto* exchange qualities to warrant application of FDCPA).

Perkins & Anctil notes that the above decisions and reasoning are in line with both the Massachusetts Condominium Statute and the Massachusetts Supreme Judicial Court decision thereunder (See *Prosser* at 726, 1302 in which the Supreme Judicial Court likens condominium assessments to taxes). Further, that the assessment presented in this case (for a land topography study in preparation for remedial landscaping to correct

20

issues of common areas exterior to the Plaintiffs' unit) is in the nature of, and most closely analogous to, that presented in the *Nance* case.

Perkins & Anctil therefore reiterates this argument in conjunction with this Motion.

### E.      THE PLAINTIFFS' CLAIM AND STANDING ARE PROCEDURALLY FLAWED

Perkins & Anctil set forth an argument in this regard, with citation to applicable statutory and case law, in the Defendants' Motion to Dismiss. See Motion to Dismiss at Pages 8-10. As the same was not addressed by this Honorable Court in the denial of the Motion to Dismiss, Perkins & Anctil reiterates this argument herein.

### F.      THE PLAINTIFFS' ACTION IS RETALIATORY, FRIVOLOUS AND IN BAD FAITH

Perkins & Anctil argued in this respect in the Defendants' Motion to Dismiss. See Motion to Dismiss at Pages 14-15. Perkins & Anctil reiterates the arguments previously set forth, herein, and continues to reserve all rights with respect to potential claims against Plaintiffs.

Respectfully submitted,
For all Defendants

James S. Franchek (BBO #177030)
Franchek & Porter, LLC
85 Devonshire St, 6th FL
Boston MA 02109
Dated: September _14_, 2005                   (617) 573-0020

21



ATTORNEYS AT LAW

75 PRINCETON STREET, SUITE 304
NORTH CHELMSFORD, MASSACHUSETTS 01863-1553
TELEPHONE (978) 251-8509 • (800) 642-9906
FAX (978) 251-3603
REAL ESTATE FAX (978) 251-3669
www.perkinslawpc.com

CHARLES V. PERKINS, JR.

ROBERT W. ANCTIL*

GARY M. D'ADDARIO

ANITA L. CLIMLARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

December 15, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA 02459

    RE:    392-396 Boylston Commons Condominium

Dear Mr. and Mrs. Jones:

    Please be advised this office represents Sheryl Sarkis, as Receiver of the 392-3 Boylston Commons Condominium Trust. We have been advised by Ms. Sarkis that there i balance due on your account through December 15, 2004 in the amount of $1,250.00 as well an additional amount of $390.00 representing legal fees incurred to date in this matter.

    To resolve this matter without the need of any further legal proceedings and exper please remit a check for the **full amount of $1,640.00** made payable to "Sheryl Sarkis, Receiver of the 392-396 Boylston Commons Condominium Trust" and forward it to my atte it within **fourteen (14) days** of the date of this letter.

### NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

    Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer deb is required to be sent the following notice: (1) unless the consumer, within thirty days af receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will assumed to be valid by debt collector, (2) if the consumer notifies the debt collector in writ within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy such verification of judgment will be mailed to the consumer by the debt collector; and (3) up the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the curre creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Mr. and Mrs. John Jones, Jr.
Page 2
December 15, 2004

Perkins & Anctil PC is acting as a debt collector pursuant to the FDCP Act. A information obtained will be used for that purpose. If you have any questions regarding t correspondence, you should seek the advice of counsel.

Very truly yours,

Charles A. Perkins, Jr.

CAP/sma

cc:    Sheryl Sarkis, as Receiver of 392-396 Boylston Commons Condominium Trust
Gary M. Daddario, Esquire

VIA FIRST CLASS MAIL AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

December 22, 2004

Charles A. Perkins, Jr.
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Perkins:

We received your December 15, 2004 letter demanding that we pay Receiver Sheryl
Sarkis $1640.

First, we are perplexed by the designation, "392-396 Boylston Commons Condominium."
Receiver Sheryl Sarkis represents 392-394 Boylston Commons Condominium, as noted
in Judge Ralph Gants' June 24, 2004 order. Please explain your use of "392-396
Boylston Commons Condominium."

Second, we do not understand the reference to "your account." Could you send us a copy
of the account to which you refer? To our knowledge, Receiver Sheryl Sarkis has not
established an account in our name. We have not received a statement of an account in
our name since her appointment as receiver on June 24, 2004.

Third, we are concerned that you ask us to write the check to "Sheryl Sarkis, as Receiver
of the 392-396 Boylston Commons Condominium Trust." We write our check for
monthly fees to 392-394 Boylston Commons Condominium and we do not name
Receiver Sheryl Sarkis on our checks.

Last, we have requested clarification of the $1250 charge from Receiver Sheryl Sarkis in
an October 29, 2004, letter from our Attorney, John Laymon. Her only response was that
the amount assessed is correct. We now have a copy of the "Existing Condition Plan"
from The Decelle Group but Receiver Sheryl Sarkis has not provided an adequate
justification for this work. We question whether this "Existing Condition Plan" is
complete and relevant to the work needed at our condominium. Further, the "Existing
Condition Plan" is dated August 21, 2004, but Receiver Sheryl Sarkis did not provide
information about it until October 12, 2004.

Under these circumstances, we strongly dispute the charge of $1250 and the legal fee of
$390.

Sincerely,

Diane Scott-Jones                        John E. Jones, Jr.

PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3698
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANITA L. CLIMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

December 28, 2004

Diane Scott-Jones
John E. Jones, Jr.
592 Boylston Street
Newton, MA 02459

#### Re: 392-294 Boylston Commons Condominium

Dear Mr. and Mrs. Jones:

As you are aware, this office represents Sheryl Sarkis as Receiver for the above referenced condominium. I am in receipt of your letter of December 22, 2004 and I am writing to respond to the same.

First and foremost, please note that your letter shall not impact the collection process or the timing thereof. Accordingly, absent payment of your outstanding balance of $1,802.50 (including all legal fees to date) by January 3, 2005, a formal Notice of Default will be issued to you at considerable expense to your account. Payment must be made by check payable to your condominium association and forwarded to this office.

With respect to your question regarding the designation "392-396 Boylston Commons Condominium", you are advised that the same is a typographical error. All such designations were intended to read "392-394 Boylston Commons Condominium".

The term "your account" refers to your financial relationship with the 392-394 Boylston Commons Condominium. At this time, you have an outstanding balance of $1,802.50 and this correspondence is notice thereof. As stated above, absent payment, collection action will continue at further expense to your account in accord with M.G.L. c. 183A, §6(a)(ii). In any court judgment regarding your outstanding balance, the 392-294 Boylston Commons Condominium, Sheryl Sarkis as Receiver, will be statutorily entitled to the court's authorization of a foreclosure of your property.

Mr. and Mrs. Jones
December 28, 2004
Page -2-

At this time, checks made payable to "Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium Trust" or to "392-394 Boylston Commons Condominium" are equally acceptable for purposes of remitting payment to your condominium association. Be advised, however, that payment must be received in this office.

Finally, please be advised that this collection proceeding is not the appropriate forum in which to conduct inquiry regarding the work underlying the recent assessment. M.G.L. c. 183A and cases decided thereunder by both the Massachusetts Appeals Court and the Supreme Judicial Court dictate that a unit owner first make payment of assessments and thereafter, if applicable, challenge the same.

Until such time as your full outstanding balance has been paid, all correspondence regarding this matter must be directed to this office. Thereafter, appropriate information relative to the work being performed at the condominium may be sought from Ms. Sarkis.

## NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification of judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the
consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, P.C., is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

Mr. and Mrs. Jones
December 28, 2004
Page -3-

If you have any questions regarding this letter, you should seek advice of legal counsel.

Respectfully,

Gary M. Daddario

c    Sheryl Sarkis, as Receiver of 392-394 Boylston Commons Condominium
     Attorney Charles A. Perkins, Jr.



VIA FACSIMILE, FIRST CLASS MAIL, AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

December 31, 2004

Gary M. Daddario
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Daddario:

We received your December 28, 2004, letter demanding that we pay Receiver Sheryl
Sarkis $1802.50. We note that this amount is an increase over the $1640 you demanded
we pay Receiver Sheryl Sarkis in your December 15, 2004, letter. You have now added
$552.50 to the $1250 you claim we owe.

We again object to the initial $1250 fee. We also object to the attorney's fees, which are
now 44% of the debt you claim we owe. We will outline below the basis for our
objection to your demand for payment and to the foreclosure you have threatened.

1. In the response we sent you on December 22, 2004, we requested clarification of the
$1250 charge from Receiver Sheryl Sarkis and we disputed the validity of the debt.
According to the Fair Debt Collection Practices Act (FDCPA),

"if the consumer notifies the debt collector in writing within the thirty-day period that
the debt, or any portion thereof, is disputed, the debt collector will obtain verification of
the debt or a copy of a judgment against the consumer and a copy of such verification or
judgment will be mailed to the consumer by the debt collector."

We have yet to receive any information regarding the validity or verification of the debt
from you. Until you fulfill your obligations under the FDCPA, you must cease
collection of the alleged debt.

2. Your reply that you are using the term "your account" to refer to our financial
relationship with our condominium is inadequate. You cannot substitute reference to an
abstract relationship for a clear statement of an account.

3. We believe your statement regarding the court's authorization of a foreclosure of our
property is in error. Massachusetts General Laws (MGL) Chapter 183A, section 6(a) (ii),
which you cited as the basis for your threat, has no reference to foreclosure. On the
contrary, this section gives a unit owner the right to appeal assessments to the
organization of unit owners.

4. You are incorrect in your interpretation of our obligation to pay all fees as demanded at
any time. You refer to the fee you demand on behalf of Receiver Sheryl Sarkis as an

"assessment" and you cite MGL Chapter 183A. As you know, Chapter 183A, section 6(a) (i) requires that common expense assessments be based on a budget. We repeatedly asked Receiver Sheryl Sarkis for a budget as required of her in the June 24, 2004, order appointing her as Receiver. She has provided a budget of sorts but only after her demand that we pay $1250; however, she included a disclaimer that the sketchy, poorly organized budget she provided was not an actual budget but was an "estimated budget prepared for the court." Therefore, the amount you are demanding does not fit the requirement of a common expense assessment as laid out in the statute requiring a budget prior to the assessment.

Receiver Sheryl Sarkis has required a common expense assessment of $160 per month, as budgeted prior to her appointment. Despite Receiver Sheryl Sarkis' refusal to allow the maintenance for which a portion of the $160 is intended, we have paid $160 each month and we have sought legal relief from her refusal to maintain our property. Therefore, we have met all obligations for common expense assessment at this time.

You further claim that "cases" support your demand that we pay the fee first and challenge it later. You failed to cite the "cases" and we can find no cases that fit our situation. Unless you can provide the citations, we will assume your statement is without merit.

5. We can find no statutory requirement that we pay you within 14 days of the date of your initial letter. Therefore, we assume the number of days you have allotted is arbitrary and not legally binding on us. Your statement, "First and foremost, please note that your letter shall not impact the collection process or the timing thereof," is in error.

If we were delinquent on our common expense assessment, Chapter 183A, Section 6 (c) provides clear procedures that Receiver Sheryl Sarkis has not followed. "When any portion of the unit owner's share of the common expenses has been delinquent for at least sixty days subsequent to April 1, 1993, the organization of unit owners shall send a notice stating the amount of the delinquency to the unit owner by certified and first class mail." We have not received such a sixty-day notice from Receiver Sheryl Sarkis.

In addition to the points noted above, we wish to object to other aspects of your actions against us. First, we are appalled that you are making threats regarding our home in a letter you now claim contains clerical errors. The clerical errors naming our condominium "392-396 Bolyston Commons Condominium" occur in your initial letter in which you wrote only three sentences. This level of carelessness in a brief letter is unacceptable. We note that Receiver Sheryl Sarkis has made the same "mistake," i.e., changing the name of our condominium, several times in her own correspondence. Second, we are appalled at the ambiguity and slippage in your demand that we make checks payable to Sheryl Sarkis instead of our condominium association.

In summary, Receiver Sheryl Sarkis has not:
- established the legitimacy of the charge and allowed an appeal
- presented the charge in the context of a budget and common expense assessment
- followed notification procedures for delinquency

In addition, your law firm has not met the obligation to provide verification of the debt.

We continue to dispute strongly the charge of $1250. We look forward to your response, to your provision of copies of all documents related to this claim, and to your withdrawal of your inappropriate claims and threats.

Sincerely,

Diane Scott-Jones

John E. Jones, Jr.

PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8500 • (800) 642-5906
FAX (978) 251-3609
REAL ESTATE FAX (978) 251-3855
www.perkinslaw.pc.com

CHARLES A. PERKINS, JR. *

ROBERT W. ANCTIL †

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

* ALSO ADMITTED IN NH

January 4, 2005

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA 02459

### Re:    392-394 Boylston Commons Condominium

Dear Mr. and Mrs. Jones:

As you are aware, this office represents Sheryl Sarkis as Receiver for the above referenced condominium. I am in receipt of your letter of December 31, 2004 and I am writing to respond to the same. You have alleged numerous issues and I will attempt to address each in turn.

The balance of $1,802.50 requested in my letter of December 28th is, indeed, greater than the $1,640.00 requested in the prior letter. The increase represents the additional legal fees incurred in the interim and for which you are responsible pursuant to M.G.L. c. 183A, §6(a)(ii). To be clear, I note that you will continue to be responsible for my client's legal fees in this matter until such time as your balance is paid in full. As a result of the time involved with the review of and response to your December 31st letter, your total balance is now $2,090.00.

The fact that you are responsible for the attorney's fees in this matter is a clear provision of the above-referenced statute. In addition, the same has been held, repeatedly, by Massachusetts Courts. Noteworthy cases include *Trustees of the Sandpiper Condominium Trust v. Snell*, 1994 WL 89440 (Mass.App.Div.), in which the unit owner was forced to pay legal fees incurred after Summary Judgment was granted in favor of the condominium because the condominium chose to pursue foreclosure of the unit at additional expense. *Maushop Village Condominium Trust #4 v. Bucci*, 1994 WL 110862 (Mass.App.Div.), is a case in which it was determined that the unit owner was responsible for legal fees incurred by the condominium even during the appeal of a case in which the condominium was displeased with the initial decision.

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -2-

Our legal fees are considered reasonable based on the hourly rate charged and the time and work involved in processing the matter. At the appropriate stage of litigation, if the same occurs, an Affidavit of Counsel will be provided to the Court detailing all legal fees and costs in this matter. Condominium collection cases are not performed on a "percentage of the debt" basis due, in part, to the fact that M.G.L. c. 183A provides complete protection for the condominium's debt for a limited time period. As a result, condominium associations must diligently pursue outstanding debt and litigation typically occurs prior to the time when a "percentage basis" fee would provide reasonable compensation to counsel.

As to the initial assessment of $1,250.00 at issue in this matter, an explanation has been provided to the extent possible at this time. As you are aware, the same represents your proportionate share of necessary landscaping repairs. You are free to review details regarding the same with your association and/or Sheryl Sarkis when your balance is paid and your file with this office is closed. In the meantime, as you are aware, Ms. Sarkis is the court-appointed receiver for your condominium. The Order of the Middlesex Superior Court establishing Ms. Sarkis' position specifically authorizes her to act with respect to the completion of the current landscape project. The Court has determined that the same is a "necessary repair". A copy of the Order is attached for your reference.

Notwithstanding the above, in the condominium context, even contested assessments must be paid. Pursuant to M.G.L. c. 183A, §6(a)(ii), all fees as well as costs, interest, late charges and attorney fees are treated, for purposes of collection, as common expense assessments. M.G.L. c. 183A, §7 prohibits withholding or setoff of assessments. In addition, the Massachusetts Supreme Judicial Court has held that:

> "A system that would tolerate a unit owner's refusal to pay an
> assessment because the unit owner asserts a grievance, **even a**
> **seemingly meritorious one**, would threaten the financial integrity
> of the entire condominium operation." (Emphasis supplied).
> _Trustees of Prince Condominium Trust v. Prosser_, 412 Mass. 723,
> 726, 592 N.E.2d 1301, 1302 (1992).

Like taxes, condominium assessments must be paid first and thereafter challenged in a separate action seeking reimbursement. Any question remaining subsequent to the above-referenced case was resolved by the Massachusetts Appeals Court two years later

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -3-

> "We suggest that aggrieved unit owners should timely pay--under
> protest--the common expense assessment. Thereafter, a judicial
> determination of the legality of the assessment, and suitable
> reimbursement, may be sought." *Blood v. Edgars, Inc.*, 36
> Mass.App.Ct. 402, 406, 632 N.E.2d 419, 421-422 (1994).

Thus it is now clear that even the legality of an assessment must be questioned only after
payment.

Although I understand your disagreement with my use of the term "your
account," I have explained the same to you and routinely use the same in the ordinary
course of conducting condominium collection cases. Massachusetts Courts are familiar
with this terminology.

I believe that you have mischaracterized my reference to "foreclosure" as a
"threat". Such was neither my intent nor present in the tone of the verbiage contained in
my letter. Rather, I informed you as to a statutory relief available to my client. Further, I
did not cite M.G.L. c. 183A for the same. The statutory provision to which I refer is
M.G.L. c. 254, §5A which reads, in pertinent part, as follows:

> "When the amount of a lien under section six of chapter 183A or
> under section 29 of chapter 183B has been established by a court,
> the court shall enter an order authorizing the sale of the real estate
> to satisfy such lien."

In accord with said statute, as I stated in my December 28th letter, should this matter
proceed to litigation and you be held to owe an outstanding balance to your
condominium, my client will be entitled to a Judgment including, as a portion of the
relief, the authority to sell the unit at foreclosure.

You are correct in your assertion that payment of your outstanding balance within
a fourteen-day period is not a statutory requirement. Our request that you pay your
outstanding balance within such time was issued to you as a courtesy to provide you with
an opportunity to resolve this situation prior to incurring substantial legal fees and costs.
The sixty-day notice to which you refer is a formal notice resulting in significant legal
fees. Absent receipt of full payment of your current balance of **$2,090.00** received in this
office **on or before January 10, 2005**, said notice will be issued to you.

I regret that the reference to "392-396" Boylston Commons appears to have
caused you inconvenience. Please note, however, that I did not characterize the same as a
"clerical" error as set forth in your recent letter.

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -4-

Rather, I advised you that said reference was a typographical error. Unfortunately, despite your allegation of "carelessness," typographical errors can occur despite the writer's best intentions.

I am concerned with respect to your complete mischaracterization of our instructions regarding the preparation of payment checks. Please take careful note of the fact that this office never instructed you to "make checks payable to Sheryl Sarkis instead of [the] condominium association" as alleged in your recent letter. Rather, our letter of December 15, 2004 instructed you to make checks payable to "Sheryl Sarkis, as receiver" of the condominium. Moreover, our letter of December 28, 2004 indicated that checks made payable to "392-394 Boylston Commons Condominium" or to "Sheryl Sarkis, as Receiver of the 392-294 Boylston Commons Condominium Trust" are "equally acceptable for purposes of remitting payment to your condominium association." There has been neither "ambiguity" nor "slippage" in this regard, despite your allegations.

With respect to an internal appeal, a careful reading of M.G.L. c. 183A, §6(a)(iii) reveals that the same is available with respect to assessment of "costs" associated with "energy conservation devises," "water," and "other utilities." Said provision has no application to this case.

Notwithstanding the above explanations and legal citations, the FDCPA warning is included on correspondence from this office as a matter of course in the ordinary conduct of our business. As payment of condominium assessments is not "consumer debt," the FDCPA is not applicable to this case.

In sum, based on the above, you have a legal obligation to remit payment of your outstanding balance. Absent receipt in this office of payment of $2,090.00 by January 10, 2005, collection action will proceed at further and considerable expense to your account.

In the event that you opt not to make payment in accord with this letter or have any questions relating hereto, I strongly recommend that you seek the advice of legal counsel.

Diane Scott-Jones
John E. Jones, Jr.
January 4, 2005
Page -5-

## NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debtor is required to be sent the following notice: (1) unless the consumer within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector
will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification of judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the
consumer with the name and address of the original creditor, if different from the current creditor   You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, P.C., is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

Respectfully,

Gary M. Daddario

cc:     Sheryl Sarkis, as Receiver of the 392-394 Boylsten Commons Condominium
        Attorney Charles A. Perkins, Jr.

CIVIL DOCKET# MICV2003-0516  F

RE    Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond et al v Bc
Jones, indiv and tr 392-394 Boylston Commons Condo Tr  et al

TO    Thomas O Moriarty, Esquire
      Marcus Errico Emmer & Brooks
      45 Braintree Hill Park
      Suite 107
      Braintree, MA 02184

## NOTICE OF DOCKET ENTRY

You are hereby notified that on 06/24/2004 the following entry was made on the abc
referenced docket:

ORDER APPOINTING RECEIVER: 1. That until further order of the Court, t
Parties, their agents, servants and all those acting in concert with them :
restrained from performing any duties as trustees of the 392-394 Boylston Commo
Condominium Trust, ("Condominium"); 2. That until further order of the Court, She
A. Sarkis of Meredith Management Corporation, One Bridge Street, Suite 30
Newton, MA 02458-1101 be and is hereby appointed Receiver of the estate, proper
monies, debts and effects of every kind and nature of or belonging to the 392-3
Boylston Commons Condominium Trust; and she is hereby authorized and direct
to take charge of and the porperty held in trust  the organization of Unit Owners
the Condominium pursuant to the Declaration of Trust in order to do the thin
necessary to operate, maintain, repair, replace, and alter the common areas of t
Condominium and otherwise administer and care for the common areas al
facilities of the Condominium, within the limitations set forth herein, as the Receiv
deems proper; and, within the limitations set forth herein, she is hereby authorize
and directed to effectuate all the powers and duties provided in and subject
MGLc. 156,s51 and MGLc. 155ss 52-53, Mass R Civ P 66, MGLc 183A, and Article
of the Declaration of Trust which incorporates the By-Laws of theCondominium. (
copy of the By-Laws at Article V of the Declarartion of Trust are appended to th
Order as Exhibit "1"); The Receiver shall promptly establish a budget for Th
Condominium operation for the remander of 2004, and ensure that sufficient funcir
is colleted from the Unit Owners to carry out the Receiver's duties as required by th
terms of the Condominium documents at GL c 183A. 3. That until further order of th
Court, the Receiver shall take all necessary and reasonable actions to assure th

Condominium's compliance with all city, state and federal law in connection with
and all city, state and federal enforcement orders regarding the common areas of
Condominium. Any and all costs associated with complying with same shall be
responsibilty of both the Plaintiff and the Defendants who shall pay one-half of
cost of correcting the problems in the common areas of the condominium which
not clevered by insurance; 4. That until further order of the Court, the Parties s
turn over to said Receiver, all the property, monies, debts and effects of every
and nature, belonging to the Condominium in the hands, possession or con
together with all books, deeds, documents, and papers re ating thereto. It is fur
ordered that the escrow agents for the Parties, identified in compliance with
Court's January 26, 2004 Order, shall turn over said Receiver all monies hel
escrow on behalf of the Parties. The Receiver shall, upon receipt of the esc
funds, open a checking account on behalf of the Condominium and deposit
escrow funds in said account for further condominium busi ness as authorized un
the constituent documents of the Condominium and as set forth herein. 5.
Receiver shall have no authority to assign financial liability for or otherw
prosecute, resolve or dismiss any action concerning the Parties existing disp
regarding whether any Trustee has breahed a fiduciary duty or whether any Trus
or Unit Owner committed wrongful actions in violation of the Condomini
Documents and General Laws Chapter 183A including, without limitation,
dispute regarding the rights, duties and financial obligations of the Parties a
result of the landscaping projects conducted in the common areas of
Condominium in 2003. Nothing in this Paragraph is intended to limit the Receive
ability to act with respect to the completion of the landscape project or compliar
with state claims or municipal orders with regard to the common areas of t
Condominium. This Paragraph is intended to allow the Parties to prosecute and
resolve any and all financial claims, which stem from actions taken by either Pa
prior to the date of this Order; 6. The Receiver shall not be authorized to effect a
improvements to the common areas and facilities of the Cndominium withc
compliance with MGL c 183A, s 18. The restoration of the backyard is presentl
necessary repair and not an improvement and, therefore, the restoration of t
existing elemtns does not require compliance with zmglc 183A, s18. 7. In the eve
both Unit Owners agree on a course of action the Receiver shall undertake su
action so long as it complies with MGL c 183A and the constituent documents of t
Condominium. The Parties shall have the right to jointly petition the Court
authorize the Receiver to take action which might not otherwise comply with MGl
183A or the constituent documents of the Condominium; 8. That any party, or sa
Receiver, may apply to the Court, from time to time, for such further directions
orders, as may be necessary ; and 9. Grant such other and further relief as this Cou
deems just and equitable. (Gants, J.) copies sent 7/21/04 certified to Receiver 7/21/0

Dated at Cambridge, Massachusetts this 21st day of July,
2004

County of Middlesex
The Superior Court

Edward J. Sul     n,
Clerk of the Co     is

BY  Phi' Ma     a
Assistan' C     k

Telephone: 617-494-4010 EXT 4281

VIA FACSIMILE, FIRST CLASS MAIL, AND CERTIFIED MAIL

392 Boylston St.
Newton, MA 02459

January 7, 2005

Gary M. Daddario
Perkins & Anctil, P.C.
Attorneys at Law
73 Princeton St., Suite 306
North Chelmsford, MA 01863-1558

Dear Attorney Daddario:

We received your January 4, 2005, letter demanding that we pay $2090 to Receiver Sheryl Sarkis of Meredith Management Corporation. We note that this amount is an increase over the $1802.50 you demanded we pay Receiver Sheryl Sarkis in your December 28, 2004, letter. You have now added $840 to the $1250 you claim we owe.

We again object to the initial $1250 fee. We also object to the attorney's fees, which are now 67% of the debt you claim we owe.

We have asked you in two previous letters to provide evidence of the debt you claim we owe. You have provided no such evidence. We can only surmise that you have no evidence of a legitimate debt. The June 24, 2004, order appointing receiver is not evidence of debt.

We continue to dispute strongly the charge of $1250. We again ask you to provide copies of all documents Receiver Sheryl Sarkis submitted to you related to this claim. We ask you to withdraw your inappropriate claims and threats.

Sincerely,

Diane Scott-Jones

John E. Jones, Jr.



PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1578
TELEPHONE (978) 251-5500 • (800) 642-4906
FAX (978) 251-5608
REAL ESTATE FAX (978) 251-3859
www.perkinslaw.pc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

OF COUNSEL

ROSEMARY A.    CLEA

January 11, 2005

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA 02459

## NOTICE OF DEFAULT AND INTENT TO COLLECT RENTS
## AND SIXTY (60) DAY NOTIFICATION PURSUANT TO M.G.L. c. 183A., §6(c)

| | |
|---|---|
| CONDOMINIUM ASSOCIATION: | 392-394 Boylston Commons Condominium |
| UNIT OWNER: | Diane Scott-Jones & John E. Jones, Jr. |
| UNIT NUMBER: | 392 |
| PREVIOUS BALANCE THROUGH 01/11/05: | $2,090.00* |

LEGAL FEES AND COSTS:

| | |
|---|---|
| Notice of Default | $ 475.00 |
| Title Exam Fee | $ 75.00 |
| Title Exam Review Fee | $ 25.00 |
| Constable Fee | $ 32.00 |
| Certified Mail Fee | $ 4.42 |

**TOTAL AMOUNT DUE:** $2,701.42

\*Plus common area charges which become due, interest, late charges, court costs and
reasonable attorney's fees until payment is received in full.

Dear Mr. & Mrs. Jones:

I represent the Board of Trustees of the 392-394 Boylston Commons Condominium. The Trustees have informed me that your account for payment of common area charges is more than sixty (60) days in arrears. Failure to promptly pay common area charges seriously impairs the ability of the Condominium Association to operate efficiently.

We are in receipt of your letter dated January 7, 2005. As stated in our previous correspondence, you have been provided with sufficient evidence of the outstanding assessmen

Mr. & Mrs. John E. Jones, Jr
January 11, 2005
Page -2-

to warrant your payment of the same. In any event, enclosed is another copy of the October 1
2004 letter issued to you with an attached invoice representing charges to your Association in
which the assessment will be applied.

Your legal obligation as a Unit Owner to pay common area charges and assessments is
required by the following documents.

1    Massachusetts General Laws, Chapter 183A
2    The Master Deed and By-Laws of the Condominium.
3    The Unit Deed(s) conveying the Unit(s) to you.
4    Your mortgage recorded with the Registry of Deeds.

The aforesaid Condominium Documents, and M.G.L. Chapter 183A, Section 6, as
amended, provide the Condominium Association with certain rights and powers to enforce
payment. Enforcement may be by judicial action to collect unpaid amounts or by enforcement
the lien created by Chapter 183A, Section 6, by foreclosure. In the event that the Condominium
Association exercises its right to enforce the lien by foreclosure, it is possible that your Unit(s)
could be sold as part of the foreclosure proceedings to pay the outstanding amounts.

The Condominium Association shall take all appropriate actions to enforce payments a
collections which may include, but not be limited to the following.

1    Attachment of rents paid by your tenant(s);

2    Acceleration of your annual assessment;

3    Notification to your mortgagee of the default and of the Association's intention t
commence judicial proceedings to enforce payment, as provided for in the Condominium
Documents;

4    Perfecting a lien by filing a Complaint with the Middlesex County Superior Cou
and recording an attested copy with the Middlesex County Registry of Deeds;

5    Foreclosing on said liens; and/or collecting from you said amounts as a personal
financial obligation to the Association; and

6    Levying additional late charges and interest until payment in full is received.

You have ten (10) days from your receipt of this Notice, for purposes of the attachment o
rents, to deliver to us a written response under the pains and penalties of perjury which response
must include: (1) as to the monthly common area fees, proof of payment (cancelled checks,

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -3-

receipts, etc.); (2) as to all other charges, a plain and simple statement setting forth the ground upon which you assert the amounts are not correctly calculated or not properly charged and wl amount you admit is due. Please note, if in your response to this Notice you knowingly misrepresent any material fact, you may be liable for treble damages in any action brought to recover the amounts due. Please further note that nothing contained in this Notice shall be construed as preventing the 392-394 Boylston Commons Condominium from pursuing any otl remedies available at law.

Alternatively, you must remit payment of the full balance by check payable to your condominium association and forwarded to this office within fourteen (14) days of the date of this letter. Absent full payment, or arrangements acceptable to your Board of Trustees, collect action will continue at further expense to your account.

### NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debt is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification or judgment will be mailed to the consumer by the debt collector, a id (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, PC, is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

### NOTICE PURSUANT TO M.G.L. C. 183A SECTION 6 (c)

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -4-

Please be advised that this correspondence shall institute notification that in addition to all items contained hereunder, that pursuant to Massachusetts General Law Chapter 183A, Section 6 (c) that you are at least sixty (60) days delinquent in the payment of the above amount to the Condominium Association.

If you have any questions regarding this letter you should seek the advice of counsel.

Respectfully,

Gary M. Daddario

GMD/lfd
enclosure

c    Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium

Boylston Commons Condominium
Sheryl A. Sarkis, As Receiver
P. O. Box 389
Revere, MA 02151
617-241-7779

October 12, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA 02459

Mr. Lu Qing/Ms. Yu Cheung
396 Boylston Street
Newton, MA 02459

Dear Unit Owners:

For the past few months we have been working to resolve the situation that currently exists in the rear yard of your property. We have met with City of Newton personnel, engineers and contractors In this regard, we had to hire an engineer to survey the property so that we could appropriately bid out the necessary specifications to contractors who could remove the fill, regrade and hydroseed the yard, in addition to aerating the area down below that was damaged as a result of the bobcat used in the original scope of the project. The cost of the engineer was $2,500 (copy of bill enclosed for your records).

At this time we find it necessary to assess the Association for the cost of the engineer since there are not adequate funds to cover this unanticipated expense in your operating account budget.

Each unit owner should submit a check payable to 392-394 Boylston Common Condominium Trust and mail to: P. O. Box 389, Revere, MA 02151 no later than November 15, 2004 in the amount of $1,250. If payment is not received by this date, your account will be forwarded to an attorney for collection action. All legal fees associated with this matter will be the responsibility of the unit owner Per order of the receivership and in accordance with your Master Deed/By-Laws, Section 5.1.2 etc. unit owners are obliged to pay all common area and special assessments levied.

On a similar note, we have sent out the bid package and are waiting for the price to perform the above-mentioned work. We anticipate that we will have obtained three bids by the end of this month. We will then notify you of your cost associated with the completion of this project. Assuming we receive the appropriate approval(s), as well as the cooperation of the unit owners, we hope to complete the project by the end of the year, weather permitting and the assumption that the funds necessary will be set aside in advance.

We thank you for your continued patience and look forward to a speedy resolution.

Sincerely,

Sheryl A. Sarkis,
As Receiver

CC: Alison Levins, Property Manager

THE DECELLE GROUP

400 WASHINGTON STREET
SUITE LL-9
BRAINTREE, MA 02184

1·781·794·6800 (o)    1·781·794·6801 (f)

| Date | voice # |
|------|---------|
| 8/30/2004 | 29 |

Bill To

Sherif Sarkis
P.O. Box 389
Revere, MA 02151

| Due Date | Account # | | Project | | |
|----------|-----------|--|---------|--|--|
| 8/30/2004 | | | 125 641 Newton | | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Prepare site plan of 556 Boylston Street showing design and current grades | 1 | 2,500.00 | 2,500.00 |
| Less applied retainer | 1 | 850.00 | 850.00 |
| Delivery | | 35.00 | 35.00 |

Please Call to Discuss

Approximately 90 DAYS

THANKS

Jim Burke

| Total | $1,00 |
|-------|-------|
| Payments/Credits | .00 |
| **Balance Due** | $1.00 |

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                  CIVIL ACTION NO. 03-5103

```
QUING LU and YU CHEUNG, Individually and    )
Derivatively on behalf of 392-394 BOYLSTON  )
COMMONS CONDOMINIUM TRUST,                   )
          Plaintiffs                         )
                                             )
v.                                           )
                                             )
DIANE SCOTT-JONES and JOHN JONES, JR.,       )
Individually and as Trustees of the 392-394  )
BOYLSTON COMMONS CONDOMINIUM                 )
TRUST                                        )
          Defendants                         )
                                             )
```

## ORDER

The above-captioned matter having come before the Court on February 3, 2005 and February 8, 2005 relative to the Court-Appointed Receiver's Motion for Injunction and Order of Payment, the Court has heard from all parties and examined documentation provided. After a full hearing on the merits and examination of relevant evidence, this Court Orders as follows:

1. Defendants Diane Scott-Jones and John Jones, Jr. shall refrain from any and all contact with Meredith Management Corporation and John Rosenthal, President thereof, relative to this matter as said parties have no involvement with the above-captioned case.

2. Documentation reviewed by the Court revealed that the Defendants had been provided with appropriate contact information for Sheryl Sarkis, the Court-Appointed Receiver, prior to their contacts with Meredith Management Corporation and John Rosenthal. Further, documentation reviewed by this Court revealed that the Defendants made comments to Mr. Rosenthal which appeared to be designed to undermine Ms. Sarkis' relationship and credibility with her employer. As such, the Motion for Injunction was made in response to the Defendants' misconduct.

3.   Pursuant to M.G.L. c. 183A, §6(a)(ii), "[i]f any expense is incurred by the
organization of unit owners as a result of the unit owner's...misconduct...the
organization of unit owners may assess that expense exclusively against the unit
owner and such assessment shall constitute a lien against that unit from the time
the assessment is due, and such assessment shall be enforceable as a common
expense assessment under this chapter." Accordingly, the Defendants are hereby
Ordered to remit payment of $1,645.75, representing the legal fees and costs
associated with the Motion for Injunction as per the Supplemental Affidavit of
Counsel, to the Plaintiff, 392-394 Boylston Commons Condominium, by means
of payment submitted to the Court-Appointed Receiver.

4.   The Defendants are further Ordered to remit payment of $1,250.00, representing
the first assessment levied by the Court-Appointed Receiver, to 392-394 Boylston
Commons Condominium by means of payment submitted to the Court-Appointed
Receiver.

5.   Pursuant to M.G.L. c. 183A, §6(a)(ii), "[t]he organization of unit owners may also
assess any fees, attorney's fees, charges, late charges, fines, costs of collection
and enforcement, court costs, and interest charged pursuant to this chapter against
the unit owner and such assessment shall constitute a lien against the unit from the
time the assessment is due and shall be enforceable as a common expense
assessment under this chapter." Accordingly, the Defendants are hereby Ordered
to remit payment of $2,227.67, representing the legal fees and costs associated
with the collection of the above-referenced assessment as per the Supplemental
Affidavit of Counsel, to the Plaintiff, 392-394 Boylston Commons Condominium,
by means of payment submitted to the Court-Appointed Receiver.

Bonnie H. MacLeod, J.

Date: February 15, 2005

MIDDLESEX, ss.   Commonwealth of Massachusetts

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this sixteenth day of February, 2005.

Deputy            Assistant Clerk



**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

Civil Docket **MICV2003-**   **03**

RE:   Lu, indiv & Derivatively on behalf 392-394 Boylston Commons Cond et al v    ott
    - Jones, indiv and tr 392-394 Boylston Commons Co

TO:   Douglas A Troyer, Esquire
     Marcus Errico Emmer & Brooks
     45 Braintree Hill Office Park
     Suite 107
     Braintree, MA 02184

## CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **07/28/2**    **5:**

*RE: Emergency motion for stay pending disposition of petition*    *?*
*the supreme judcial court for relief pursuant to G.L. c. 211,*
*Section 3.*

**is as follows:**

**MOTION (P#51) After an extensive hearing and review of the documents, this
motion is DENIED. (Leila R. Kern, Justice). Notices mailed July 28, 2005**

Dated at Cambridge, Massachusetts this 28th day of July,
2005.

                                   Edward J. Sulli    ),
                                     Clerk of the Cc    :s

                   BY:

                               Martha Fulham Brer    n
                                           Assistant C    k

Telephone: 617-494-4010 EXT 4281

Copies mailed 07/28/2005

PERKINS & ANCTIL, P.C.
ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANITA L. CSMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

February 7, 2005

HSBC Mortgage Corp.
2929 Walden Ave.
Depew, NY 14043

RE:  Sixty (60) Day Notice to Mortgagee of Intent to Institute Action to Enforce Lien
     pursuant to M.G.L. c. 183A, §6 (c)
     Unit Owner(s):   Diane Scott Jones & John E. Jones, Jr.
     Address:         392-394 Boyston St., Unit 392, Newton, MA
     Delinquency through 01/11/05:   $2,701.42

Dear First Mortgage Holder:

Please be advised that this office represents the 392-394 Boylston Commons Condominium Association regarding the above matter. It is our understanding that your organization holds a first mortgage on Unit #392 at said Condominium. A copy of the mortgage and unit deed are included. Please consider this formal notice to your organization that the above unit owner at the aforementioned Association is sixty (60) days delinquent in payments due pursuant to the attached Notice of Default and current ledger sheet.

Pursuant to M.G.L. c. 183A, §6(c), certain of these assessments, charges and costs can be a priority over your mortgage if the Association is required to enforce its Lien. Your assistance in securing the payment of the listed amount from your mortgagor is therefore requested. If you have any questions regarding this letter, you should seek the advice of counsel. Your cooperation would greatly appreciated.

Respectfully,

Gary M. Daddario

GMD/lfd
enclosures
c:   Trustees, 392-394 Boylston Commons Condominium
     Sheryl Sarkis as Receiver
     Diane Scott Jones & John E. Jones, Jr.

HSBC MORTGAGE CORPORATION
(USA)
2929 WALDEN AVE, DEPEW, NY
14043

Prepared By:

RIVAS, REYNALDO

—————————————— [Space Above This Line For Recording Data] ——————————————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 10, 2001, together with all Riders to this document.

(B) "Borrower" is JOHN B. JONES JR. AND DIANE SCOTT JONES

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is HSBC MORTGAGE CORPORATION (USA).

Lender is a DELAWARE CORPORATION
organized and existing under the laws of DELAWARE.

MA 3112                                                            0379429101

MASSACHUSETTS Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01

bIMAI\95bm

Page 1 of 15

RECORDED & RETURNED
TO ... FITCHBURG
DISTRICT

REGISTER

Lender's address is 2929 WALDEN AVENUE, DEPEW, NY 14043.

(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 10, 2003.
The Note states that Borrower owes Lender ONE HUNDRED SEVENTY FIVE THOUSAND AND NO/100
Dollars
(U.S. $ 175,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 01, 2033.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

MA 3312                                                                           0379424121

Initials _____                                                        Form 3021 1/01

the "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY                                             [Type of Recording Jurisdiction]
of MIDDLESEX                                          [Name of Recording Jurisdiction]
SEE SCHEDULE A ATTACHED HERETO

Parcel ID Number:                                    which currently has the address of
392 BOYLSTON STREET                                                              [Street]
NEWTOWN                           [City], Massachusetts 02459        [Zip Code]
( Property Address )

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MA 3112                                                              01754/9305

GMAT mgrs                                                     Form 3022 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

John E. Jones Jr.
By William Scott Jones /attorney in fact
JOHN E. JONES JR.                    -Borrower

Diane Scott Jones
DIANE SCOTT JONES                    -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                         -Borrower

_____                 _____

_____ (Seal)          _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                         -Borrower

MA 3112                                          0319425101

6/MA/2004                          Page 14 of 14          Form 3022  1/01

COMMONWEALTH OF MASSACHUSETTS

On this _10th_ day of _October, 2003_ before me personally appeared

_John E. Jones, Jr. and Diane Sean Jones_

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires    _5/24/06_

Notary Public   _MARMAL G. PARKER_

MA 3112

SMMEI (8/95)                    0375429101
                               Fax 3222 1.91

Exhibit A - Property Description

| | |
|---|---|
| Closing Date | 10/10/2003 |
| Borrower(s) | John E. Jones, Jr. and Diane Scott-Jones |
| Property Address | 392-396 Boylston Street, Unit 392, Newton, Massachusetts 02459 |

The "Unit" known as Unit 392 in a condominium known as 392-396 Boylston Commons Condominium, having a post office address at 392-396 Boylston Street, Unit 392, Newton, MA 02459 and established pursuant to Massachusetts General Laws, Chapter 183A as amended and by Master Deed dated August 31, 2000 and recorded with Middlesex South Registry of Deeds on September 1, 2000 in Book 31766, Page 500, as amended by Amendment recorded in Book 31905, Page 143, and as further amended. The Unit is laid out as shown on the unit plan recorded with the first unit deed of this Unit, to which is affixed the verified statement of a registered architect in the form required by Section 9 of M.G.L. c. 183A.

Together with an undivided percentage interest of 50% in the common areas and facilities of said Condominium and together with the rights, if any, to exclusive use of any of the common areas and facilities of said Condominium as more fully set forth in the aforesaid Master Deed and Unit Deed.

Said Unit is conveyed with the benefit of and subject to the easements, restrictions, conditions, rights and obligations set forth or referred to in said Master Deed, Unit Deed and provisions of 392-396 Boylston Commons Condominium Trust, its By-Laws, Rules and Regulations, as amended.

For Mortgagor's title, see deed recorded with Middlesex South Registry of Deeds in Book 31766, Page 548.

UNIT DEED

To Have and To Hold the above described premises...

The post office address of the unit is ... 192 196 Boylston
Street, Unit 192 Newton, Massachusetts

SHE PLAN IN RECORD BOOK _____ PAGE _____

Executed under seal this _3/_ day of _____ A.D. 2001

CAMBRIDGE REGIS
DEEDS REGIS
MIDDLE SOUTH



PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1658
TELEPHONE (978) 251-8500 • (800) 612-0096
FAX (978) 251-3508
REAL ESTATE FAX (978) 251-5633
www.perkinsanctil.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANDY L. CENDEJARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

January 11, 2005

Diane Scott-Jones
John E. ~~Jones, Jr~~
392 Boylston Street
Newton, MA  02459

NOTICE OF DEFAULT AND INTENT TO COLLECT RENTS
AND SIXTY (60) DAY NOTIFICATION PURSUANT TO M.G.L. c. 183A., §6(c)

| | |
|---|---|
| CONDOMINIUM ASSOCIATION: | 392-394 Boylston Commons Condominium |
| UNIT OWNER: | Diane Scott-Jones & John E. Jones, Jr. |
| UNIT NUMBER: | 392 |
| PREVIOUS BALANCE THROUGH 01/11/05: | $2,690.00* |

LEGAL FEES AND COSTS:

| | | |
|---|---|---|
| Notice of Default | $ | 475.00 |
| Title Exam Fee | $ | 75.00 |
| Title Exam Review Fee | $ | 25.00 |
| Constable Fee | $ | 32.00 |
| Certified Mail Fee | $ | 4.42 |

TOTAL AMOUNT DUE:                                        $2,701.42

*Plus common area charges which become due, interest, late charges, court costs and reasonable attorney's fees until payment is received in full.

Dear Mr. & Mrs. Jones:

I represent the Board of Trustees of the 392-394 Boylston Commons Condominium. The Trustees have informed me that your account for payment of common area charges is more than sixty (60) days in arrears. Failure to promptly pay common area charges seriously impairs the ability of the Condominium Association to operate efficiently.

We are in receipt of your letter dated January 7, 2005. As stated in our previous correspondence, you have been provided with sufficient evidence of the outstanding assessment

to warrant your payment of the same. In any event, enclosed is another copy of the October 12, 2004 letter issued to you with an attached invoice representing charges to your Association and which the assessment will be applied.

Your legal obligation as a Unit Owner to pay common area charges and assessments is required by the following documents:

1. Massachusetts General Laws, Chapter 183A
2. The Master Deed and By-Laws of the Condominium
3. The Unit Deed(s) conveying the Unit(s) to you
4. Your mortgage recorded with the Registry of Deeds

The aforesaid Condominium Documents, and M.G.L. Chapter 183A, Section 6, as amended, provide the Condominium Association with certain rights and powers to enforce payment. Enforcement may be by judicial action to collect unpaid amounts or by enforcement of the lien created by Chapter 183A, Section 6, by foreclosure. In the event that the Condominium Association exercises its right to enforce the lien by foreclosure, it is possible that your Unit(s) could be sold as part of the foreclosure proceedings to pay the outstanding amounts.

The Condominium Association shall take all appropriate actions to enforce payment and collections which may include, but not be limited to the following:

1. Attachment of rents paid by your tenant(s);

2. Acceleration of your annual assessment;

3. Notification to your mortgagee of the default and of the Association's intention to commence judicial proceedings to enforce payment, as provided for in the Condominium Documents;

4. Perfecting a lien by filing a Complaint with the Middlesex County Superior Court and recording an attested copy with the Middlesex County Registry of Deeds;

5. Foreclosing on said liens, and/or collecting from you said amounts as a personal financial obligation to the Association; and

6. Levying additional late charges and interest until payment in full is received.

You have ten (10) days from your receipt of this Notice, for purposes of the attachment of rents, to deliver to us a written response under the pains and penalties of perjury which response must include: (1) as to the monthly common area fees, proof of payment (cancelled checks

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page -3-

receipts, etc.), (2) as to all other charges, a plain and simple statement setting forth the ground upon which you assert the amounts are not correctly calculated or not properly charged and of amount you admit is due. Please note, if in your response to this Notice you knowingly misrepresent any material fact, you may be liable for treble damages in any action brought to recover the amounts due. Please further note that nothing contained in this Notice shall be construed as preventing the 392-394 Boylston Commons Condominium from pursuing any and remedies available at law

Alternatively, you must remit payment of the full balance by check payable to your condominium association and forwarded to this office within fourteen (14) days of the date of this letter. Absent full payment, or arrangements acceptable to your Board of Trustees, collect action will continue at further expense to your account.

### NOTICE OF IMPORTANT RIGHTS TO CONSUMERS

Pursuant to the Federal Debt Collection Practices Act ("FDCP ACT"), a consumer debt is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification or judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. You should be aware that the FDCP Act only applies to consumer debtors.

Perkins & Anctil, PC, is acting as a debt collector, pursuant to the FDCP Act. Any information obtained will be used for that purpose. The Federal Trade Commission has ruled that the FDCP Act does not preclude the institution of legal action prior to the expiration of the thirty-day period referenced in the statute.

### NOTICE PURSUANT TO M.G.L. C. 183A SECTION 6 (c)

Mr. & Mrs. John E. Jones, Jr.
January 11, 2005
Page 4


Please be advised that this correspondence shall institute notification that in addition to
all items contained hereunder, that pursuant to Massachusetts General Law Chapter 183A.
Section 6 (c) that you are at least sixty (60) days delinquent in the payment of the above amount
to the Condominium Association.

If you have any questions regarding this letter you should seek the advice of counsel.

Respectfully,

Gary M. Daddario

GMD/lfd
enclosure
c   Sheryl Sarkis, as Receiver of the 392-394 Boylston Commons Condominium

Boylston Commons Condominium
Sheryl A. Sarkis, As Receiver
P. O. Box 389
Revere, MA 02151
617/241-7779

October 12, 2004

Mr. and Mrs. John Jones, Jr.
392 Boylston Street
Newton, MA 02459

Mr. Lu Qing/Ms. Yu Cheung
396 Boylston Street
Newton, MA 02459

Dear Unit Owners:

For the past few months we have been working to resolve the situation that currently exists in the rear yard of your property. We have met with City of Newton personnel, engineers and contractors. In this regard, we had to hire an engineer to survey the property so that we could appropriately bid out the necessary specifications to contractors who could remove the fill, regrade and hydroseed the yard, in addition to aerating the area down below that was damaged as a result of the bobcat used in the original scope of the project. The cost of the engineer was $2,500 (copy of bill enclosed for your records).

At this time we find it necessary to assess the Association for the cost of the engineer since there are not adequate funds to cover this unanticipated expense in your operating account/budget.

Each unit owner should submit a check payable to 392-394 Boylston Common Condominium Trust and mail to: P. O. Box 389, Revere, MA 02151 no later than November 15, 2004 in the amount of $1,250. If payment is not received by this date, your account will be forwarded to an attorney for collection action. All legal fees associated with this matter will be the responsibility of the unit owner. Per order of the receivership and in accordance with your Master Deed/By-Laws, Section 5.1.2 etc., unit owners are obliged to pay all common area and special assessments levied.

On a similar note, we have sent out the bid package and are waiting for the price to perform the above mentioned work. We anticipate that we will have obtained three bids by the end of this month. We will then notify you of your cost associated with the completion of this project. Assuming we receive the appropriate approval(s), as well as the cooperation of the unit owners, we hope to complete the project by the end of the year, weather permitting and the assumption that the funds necessary will be set aside in advance.

We thank you for your continued patience and look forward to a speedy resolution.

Sincerely,

Sheryl A. Sarkis,
As Receiver

CC: Alison Levins, Property Manager

# THE DECELLE GROUP

400 WASHINGTON STREET
SUITE LL-9
BRAINTREE, MA 02184

1·781·794·6800 (o)    1·781·794·6801 (f)

| Date | Invoice # |
|------|-----------|
| 8/30/2004 | 29 |

**Bill To**

Sherri Sattin
P.O. Box 389
Revere, MA 02151

| Due Date | Account # |
|----------|-----------|
| 8/30/2004 | |

**Project**
428-043-Newton

| Description | Qty | Rate | Amt |
|-------------|-----|------|-----|
| Prepare site plan of 556 Boylston Street showing design and current grades | 1 | 2,300.00 | 5800.00 |
| Less applied retainer | 1 | -850.00 | 850.00 |
| Delivery | | 35.00 | 35.00 |

PLEXE Call to Discuss

Approximations 90 DAYS

THANKS

Jim Burke

| Total | 35.00 |
|-------|-------|
| Payments/Credits | 0.00 |
| **Balance Due** | $35.00 |



PERKINS & ANCTIL, P.C.

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1308
TELEPHONE (978) 251-8500 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3850
www.perkinslawpc.com

CHARLES N. PERKINS, JR.*

ROBERT W. ANCTIL*

GARY M. DADDARIO

ANITA L. CHMIELARSKI
DIRECTOR OF OPERATIONS

February 7, 2005

OF COU...

ROSEMARY A.    CERC*

*ALSO ADMITTED IN NH

HSBC Mortgage Corp.
2929 Walden Ave.
Depew, NY 14043

RE:    Thirty (30) Day Notice to Mortgagee of Intent to Institute Action to Enforce L
pursuant to M.G.L. c. 183A, §6 (c)
Unit Owner(s):    Diane Scott Jones & John E. Jones, Jr.
Address:    392-394 Boyston St., Unit 392, Newton, MA 02459
Delinquency through 01/11/05:    $2,701.42

Dear First Mortgage Holder:

Please be advised that this office represents the 392-394 Boylston Commons Condominium
Trust relative to the above matter. It is our understanding that your organization holds a first
mortgage on Unit #392 located at said Condominium. In accordance with M.G.L. c. 183A, §6(c),
notice is hereby given of the Condominium Association's intent to institute a collection and lien
enforcement action thirty (30) days from the date of this letter. You may avoid the Association's
institution of its collection and lien enforcement action by securing your mortgagor's payment of the
sums. Please note, that if institution of this action is necessary, the Association's Lien will have
priority over your mortgage to the extent of regular monthly fees due for up to six (6) months, plus
collection costs.

We therefore request your assistance in securing payment by your mortgagor. If you have a
questions regarding this letter, you should seek advice of counsel.

Respectfully,

Gary M. Daddario

GMD/lfd

c:    Trustees, 392-394 Boylston Commons Condominium
Sheryl Sarkis as Receiver
Diane Scott Jones & John E. Jones, Jr.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 03-5103

QUING LU and YU CHEUNG, Individually and )
Derivatively on behalf of 392-394 BOYLSTON )
COMMONS CONDOMINIUM TRUST, )
    Plaintiffs )
     )
     )
v. )
     )
DIANE SCOTT-JONES and JOHN JONES, JR., )
Individually and as Trustees of the 392-394 )
BOYLSTON COMMONS CONDOMINIUM )
TRUST )
    Defendants )
_____ )

## COURT-APPOINTED RECEIVER'S MOTION FOR A
## PERMANENT INJUNCTION AND ORDER REQUIRING PAYMENT

NOW COMES the Court-appointed receiver in this matter Sheryl Sarkis and, by

and through counsel, respectfully moves this Honorable Court for a Permanent Injunctio

preventing the Defendants' interference with the June 24, 2004 Order of this Honorable

Court and, specifically, from interference with Sheryl Sarkis' performance of her duties

as Receiver, contact with Sheryl Sarkis' employer and interference with Sheryl Sarkis'

employment. In addition, Ms. Sarkis seeks an Order requiring Defendants to pay their

outstanding assessment. In support hereof, Sheryl Sarkis offers the following:

1. The above-captioned Plaintiffs and Defendants represent all of the owners of the

    two-unit condominium known as 392-394 Boylston Commons Condominium

    Trust ("Boylston Commons").

2.  Disagreement between the Plaintiffs and Defendants regarding the proper management of Boylston Commons and the expenditure of its financial resources including, specifically, the proper handling of issues related to a 2003 landscaping project, resulted in this litigation

3.  In the context of this litigation, this Honorable Court, on June 24, 2004, granted Plaintiff's Motion for Appointment of Receiver.

4.  Pursuant to this Honorable Court's June 24th Order, Sheryl Sarkis was appointed as Receiver.

5.  Although identified with Meredith Management because she is gainfully employed with said organization, Ms. Sarkis' acceptance of the Receiver position in this matter was as an individual and Meredith Management has not and does not currently maintain any interest in this matter.

6.  Ms. Sarkis and not Meredith Management is the Receiver of Boylston Commons

7.  Defendants exhibited intent to avoid compliance with Ms. Sarkis' directions as Receiver by making a Motion to Remove and Replace Receiver on August 24 2004

8.  Defendant's Motion to Remove and Replace Receiver was denied by this Honorable Court.

9.  Defendants exhibited further intent to avoid compliance with Ms. Sarkis' directions as receiver by filing an Appeal of the denial of their Motion to Remove and Replace Receiver.

10. Defendants have defied the Receiver's assessment of $1,250 towards a portion of the expense associated with correcting landscaping issues at Boylston Commons.

11. This Honorable Court's June 24, 2004 Order specifically authorizes the Receiver to take action necessary to correct landscaping issues.

12. As a result of Defendants' failure to pay the assessment, the Receiver has engaged Perkins & Anctil, P.C. to institute collection action.

13. At present, Defendants have an outstanding balance of $2,701.42 for the landscaping assessment, including legal fees to which Boylston Commons is entitled pursuant to M.G.L. c. 183A, §6(a)(ii).

14. Defendants have resorted to harassment and interference with Ms. Sarkis' gainful employment in further attempts to interfere with this Court's June 24, 2004 Order and Ms. Sarkis' role as Receiver, as well as to thwart the efforts of this Honorable Court and the Court-appointed Receiver.

15. Defendants' harassment and interference with Ms. Sarkis' gainful employment has been accomplished by Defendants' repeated contacting of John Rosenthal, President/Owner of Meredith Management, Ms. Sarkis' employer.

16. Defendants' harassment and interference has continued despite Defendants being informed that Meredith Management has no role in this matter or Ms. Sarkis' Receivership.

17. Defendants' harassment and interference has continued despite Ms. Sarkis providing the proper points of contact for Defendants' concerns regarding this matter (e.g. Sheryl Sarkis, Receiver for 392-394 Boylston Commons Condominium, P.O. Box 95022, Newton, MA 02495, or by telephone at 617-241-7779).

18. Defendants' harassment and interference have and continue to divert John Rosenthal's time from the business of operating Meredith Management, strain the relation between Ms. Sarkis and Meredith Management and jeopardize Ms. Sarkis' gainful employment at Meredith Management.

19. Ms. Sarkis has expressed a desire to resign from this Receivership, if necessary, to avoid interference with her primary employment at Meredith Management.

20. Ms. Sarkis' resignation would hinder the progress of resolving the issues of Boylston Commons and would result in the loss of time and financial resources of the Plaintiffs, said Plaintiffs having invested in this Receivership, with the support of this Honorable Court, as a means of resolving outstanding issues and preparing Boylston Commons to properly conduct operations in the future.

21. Defendants have no basis for defying the outstanding assessment (including related legal fees) as their defiance contradicts this Honorable Court's June 24, 2004 Order, M.G.L. c. 183A, §6(a)(ii), M.G.L. c. 183A, §7 and well-settled Massachusetts case law (See *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass. 723, 726, 592 N.E.2d 1301, 1302, (1992) and *Blood v. Edgar's Inc.*, 36 Mass.App.Ct.402, 406, 632 N.E.2d 419, 421-422 (1994)

22. Defendants have no basis for harassment of John Rosenthal and interference with Ms. Sarkis' gainful employment as Meredith management has no involvement in this matter or Ms. Sarkis' Receivership and Defendants have been clearly informed of the same.

WHEREFORE, Sheryl Sarkis as Receiver hereby prays that this Honorable Court

A. Issue a Permanent Injunction prohibiting Defendants from contacting John

Rosenthal and Meredith Management regarding this matter;

B. Issue an Order requiring Defendants to pay their outstanding balance of

$2,701.42;

C. Order Defendant to pay for the legal fees and costs associated with this

Motion; and

D. Take any other action deemed in the best interest of justice

Respectfully submitted,
Sheryl Sarkis, Receiver
By her attorneys,

Date: January 26, 2005

Gary M. Daddario
BBO #639615
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978) 251-8509