UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                          CIVIL ACTION NO. 05-10350JLT

_____
                                    )
DIANE SCOTT-JONES and JOHN E. JONES, JR., )
Individually and as Trustees of the 392-394  )
BOYLSTON COMMONS CONDOMINIUM        )
TRUST,                              )
     Plaintiffs,                    )
                                    )
v.                                  )
                                    )
CHARLES A. PERKINS, JR., GARY M.    )
DADDARIO and PERKINS & ANCTIL, P.C., )
     Defendants.                   )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     NOW COME the above-captioned Defendants (collectively "Perkins & Anctil"), and respectfully submit to this Honorable Court, pursuant to Massachusetts Federal Rules of Civil Procedure Rule 56(b) and Local Rules for the District of Massachusetts Rule 56.1, this Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

## I.    LEGAL STANDARD

     Summary Judgment is a "device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." *Community National Bank v. Dawes*, 369 Mass. 550, 553, 340 N.E.2d 877, 879, 18 UCC Rep.Serv. 723 (1976) (*citing* 3 W.W. Barron & A. Holtzoff, Federal Practice & Procedure (Rules Edition) s 1231, at 96 (Wright rev.ed. 1958) and C.A. Wright & A.R. Miller, Federal Practice & Procedure s 2712, at 370 (1973)). "The motion for summary judgment is in order and 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ibid.* *(citing* Mass.R.Civ.P. Rule 56(c) [which sets forth the identical standard as that of Federal Rule 56 (c)]).

Although the moving party bears the initial burden of "showing that there is an absence of evidence to support the case of the nonmoving party," *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 714, 575 N.E.2d 734, 739 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)), this burden may be met through a demonstration that "the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Id.* at 716, 740. Thus, in order to succeed in obtaining a grant of Summary Judgment, a moving party need only show that the opposing party can not reasonably be expected to prove its case and, consequently, "need not submit affirmative evidence to negate one or more elements of the other party's claim." *Ibid.*

Once the moving party has met its burden, the burden shifts to the non-moving party who "may not simply rest on his pleadings or general denials; he must 'set forth specific facts' showing that there is a genuine, triable issue." *Community National Bank*, at 554, 879 (*quoting* Mass.R.Civ.P. Rule 56(e) [which sets forth the identical standard as that of Federal Rule 56(e)]).

## II.    **MATERIAL FACTS**

As a result of various disputes concerning the operation of the 392-394 Boylston Commons Condominium ("Boylston"), the Lus (as co-owners of Boylston Commons) retained Marcus, Errico, Emmer and Brooks, P.C. as legal counsel and filed suit

(Middlesex Superior Court Civil Action 03-5103) against the Jones (Plaintiffs in this action). Pursuant to a Motion filed on behalf of the Lus by their counsel, the Superior Court appointed Sheryl Sarkis as Receiver of Boylston. Copy of Order attached hereto as Exhibit "1A".

Perkins & Anctil were retained by the Court-Appointed Receiver, to collect a delinquent assessment from the Plaintiffs. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario filed herewith, each at ¶5. Perkins & Anctil are not and have never been counsel to Boylston or responsible for or associated with the operation of Boylston. *Id.* at ¶8-9.

As set forth in the Affidavit of the Court-Appointed Receiver, Sheryl Sarkis (filed herewith), Ms. Sarkis verified the debt sought to the Plaintiffs both verbally and with documentation. See Affidavit of Sheryl Sarkis at ¶ 6-9. In addition, Perkins & Anctil provided Plaintiffs with verification of the debt. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario, each at ¶ 7.

The letters written by Perkins & Anctil constitute their only actions (outside of Court) in the attempt to collect the assessment and, perhaps as important, their only contact with Plaintiffs, of any kind, during the relevant time period. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario at ¶6, respectively. Perkins & Anctil's initial collection letter to the Plaintiffs (See Exhibit "1") began a series of written correspondence between Perkins & Anctil and the Plaintiffs. Copies of the letters are attached, in chronological order, as Exhibits "2-7".

After Superior Court hearings on February 3rd and February 8, 2005, the Superior Court issued an Order requiring the Plaintiffs to remit payment of the assessment sought,

as well as all legal fees and costs.  Copy of the Order of Bonnie H. MacLeod, Justice, attached hereto as Exhibit "8".  The Plaintiffs' subsequent Motion to Stay the Order Pending Appeal was denied after "an extensive hearing and review of the documents."  Copy of the Order of Leila R. Kearn, Justice, attached hereto as Exhibit "9".

The Plaintiffs have filed this action against Perkins & Anctil alleging violations of the Fair Debt Collection Practices Act ("FDCPA").  As such, it is only the conduct of Perkins & Anctil in their attempt to collect the delinquent assessment that is relevant to this lawsuit.

## III.    ARGUMENT

### A.    THIS CASE IS RIPE FOR SUMMARY JUDGMENT

The Complaint attempts to establish that Perkins & Anctil violated the FDCPA.  Perkins & Anctil's only actions (outside of Court) in the attempt to collect the delinquent assessment, in fact its only communications and/or contact with Plaintiffs, consist of the issuance of the letters attached as Exhibits hereto.  Accordingly, whether or not violations of the FDCPA were committed is a determination that can be made upon review of the Exhibits.  To the extent that Plaintiffs take issue with the operation of their condominium, the condition or finances thereof, the management thereof, the appointment or performance of the Court-Appointed Receiver or the like, said issues are not properly raised against Perkins & Anctil.  These issues are properly litigated in the Superior Court action.  Perkins & Anctil were retained by the Court-Appointed Receiver for the limited purpose of collecting a delinquent condominium assessment and, as set forth above, took limited action to that end.

### B.    THE FDCPA

As set forth in §1692(e), the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged...." Thus, by its own terms, the FDCPA is neither designed to hinder legitimate debt collection nor to interfere with a debt collection (such as that at issue in this case) conducted in accord with applicable law by professional attorneys.

The purpose and provisions of the FDCPA, considered as a whole, represent a "shield" of procedural safeguards aimed at preventing confusion and/or abuse during the debt collection process.  Based on the Plaintiffs' allegations, it appears that Plaintiffs confuse the FDCPA as being a form of "sword" to be used in the battle regarding the substantive analysis of the propriety of the debt.  While the Plaintiff may claim to have reasons for not paying the debt (notwithstanding the Superior Court's Order to do so), the same does not render all attempts to collect the debt violative of the FDCPA.

That the Plaintiffs' interpretation is incorrect is evidenced by the Federal Trade Commission Staff Commentary ("[a]n attorney debt collector may take legal action within 30 days of sending the notice, regardless of whether the consumer disputes the debt") and the 7th Circuit decision cited in the context of the argument below.

### C.    THE ALLEGATIONS OF THE COMPLAINT DO NOT ESTABLISH AN FDCPA VIOLATION

#### 1.    "[T]he Defendants made false and misleading statements regarding the Plaintiffs' rights."

The "Count" section of the Complaint begins with Paragraph 5.  Here, the Plaintiffs allege that Perkins & Anctil made false and misleading statements because

although the initial collection letter contained an FDCPA notice, a subsequent letter indicated that the FDCPA is not applicable as condominium assessments are not consumer debts.

This allegation does not establish an FDCPA violation for several reasons. First, the initial letter informed Plaintiffs "If you have any questions regarding this correspondence, you should seek the advice of counsel." See Exhibit "1". In addition, the initial notice issued by Perkins & Anctil contained the language "You should be aware that the FDCPA Act only applies to <u>consumer</u> debtors." (Emphasis in original). See Exhibit "1". Perkins & Anctil explained to Plaintiffs (and said argument has been made with legal citation to this Honorable Court) that Perkins & Anctil formed the opinion that condominium debt was not consumer debt. There is law supporting this position (See Motion to Dismiss, Exhibits thereto, and Section E. herein). This question has not been decided by this Circuit. As such, Perkins & Anctil's position is factually accurate.

The above information aside, ultimately the analysis with respect to this allegation meets with a clear conclusion. In an Opinion Letter issued by Attorney Thomas E. Kane on behalf of the Federal Trade Commission (May 4, 1992), it is written that the FDCPA "does not prohibit those who are covered by the Act from simply denying that they are covered."

### 2. "After the Defendants' initial December 15, 2004, letter, they continued to send letters dated December 28, 2004, January 4, 2005, and January 11, 2005."

The above allegation appears as Paragraph 6 in the "Count" section of Plaintiffs' Complaint. As the Perkins & Anctil letters described were each issued to Plaintiffs in

response to letters sent by Plaintiffs, it appears quite clear that the same do not constitute

violations of the FDCPA simply by virtue of being issued.

> 3. **"The Defendants' initial December 15, 2004, letter claimed the
>    Plaintiffs' had 14 days from the date of the letter to pay whereas
>    15 U.S.C. section 1692g(a)(3) allows thirty days after receipt of the
>    letter for the consumer to dispute the validity of the debt."**

The above allegation constitutes the entirety of Paragraph 7 of the "Count"

section of Plaintiffs' Complaint. The same fails to establish an FDCPA violation as

Perkins & Anctil's request for payment within 14 days did not, by the terms of the letter

or in actuality, prevent Plaintiffs from asserting a dispute. Moreover, even if the

Plaintiffs had thirty days to set forth a dispute, the Federal Trade Commission has ruled

that the FDCPA does not preclude the institution of legal action prior to the expiration of

the thirty-day period. The Federal Trade Commission Staff Commentary on the FDCPA

notes that "[a]n attorney debt collector may take legal action within 30 days of sending

the notice, regardless of whether the consumer disputes the debt." This information was

supplied to Plaintiffs in the December 28, 2004 letter (See Exhibit "3") issued by Perkins

& Anctil.

> 4. **"The Defendants failed to provide verification of the debt...."**

This allegation is presented in Paragraph 8 of the "Count" section of the

Complaint. In sum, this allegation is patently false. For the reasons set forth below,

inclusion of this allegation in the Plaintiffs' pleadings and oral statements at the

September 6, 2005 Scheduling Conference amount to more than baseless allegations.

Rather, the same constitute fraudulent misrepresentations to the Court.

Plaintiffs were provided with explanation and verification of the debt, verbally

and through documentation, _prior_ to receiving correspondence from Perkins & Anctil.

See Affidavit of Sheryl Sarkis at ¶ 8-9. In Perkins & Anctil's first letter to Plaintiffs, the debt was properly verified by reference to the particular amount and the identity of the creditor. In their very first letter to Perkins & Anctil, dated December 28, 2004 (See Exhibit "2"), the Plaintiffs wrote that "[w]e now have a copy of the "Existing Condition Plan" from the Decelle Group". (Emphasis supplied). Thus the Plaintiffs, by their own admission, were in possession of the very work product which formed the basis of the assessment. Further, in that same letter (See Exhibit "2"), Plaintiffs complained "the "Existing Condition Plan" is dated August 21, 2004, but Receiver Sheryl Sarkis did not provide information about it until October 12, 2004." Thus demonstrating, again, that Plaintiffs had verification prior to Perkins & Anctil's involvement. As set forth in the Affidavit of Sheryl Sarkis and in her letter of October 12, 2004 (attached as Exhibit "B" to her Affidavit), all Boylston unit owners were provided with a copy of the Decelle Group invoice as an attachment to the October 12, 2004 letter. Therefore, by their own admission (See Exhibit "2") the Plaintiffs had, in fact, received a letter of explanation and, thus, the related and attached invoice for the services provided. The claims raised in this lawsuit concern the methods of attempting to collect this debt, not the Jones' opinion as to the propriety of the condominium's operations or the performance of the Court-Appointed Receiver.

To be clear, the Plaintiffs had, by October 12, 2004, every conceivable form of verification for the debt constituting the assessment that Perkins & Anctil sought to collect (verbal and written correspondence, invoice, and the work product evidencing the charges). Nevertheless, Plaintiffs included contrary allegations in their Complaint and made contrary oral statements at the September 6, 2005 Scheduling Conference.

In light of the above, Plaintiffs' allegations at Paragraphs 8-9 and, especially, Paragraph 10 of the Complaint constitute fraudulent misrepresentations. Likewise, Plaintiffs committed the same offense when, at the Scheduling Conference on September 6, 2005, they stated that they lacked verification of the debt as of that time and further stated that they "disagreed" when counsel for Perkins & Anctil indicated that verification had been provided.

In addition, notwithstanding all of the above, Perkins & Anctil explained to Plaintiffs in a January 4, 2005 letter (See Exhibit "5") that the assessment was related to the necessary landscaping repairs (the initial assessment sought by Perkins & Anctil was for the topography study done by the Decelle Group in preparation of the actual landscaping) and refers Plaintiffs to the Superior Court Order in which the Receiver is appointed and the landscaping project is defined as a necessary repair. Moreover, with the January 11, 2005 Notice of Default issued to Plaintiffs (See Exhibit "7"), Perkins & Anctil attached a copy of the October 12, 2004 letter issued by the Court-Appointed Receiver and to which was attached a copy of the invoice from the Decelle Group.

### 5. "The Defendants again refused to provide verification...."

This allegation appears as Paragraph 9 of the "Count" section of the Complaint. For the reasons set forth above, this allegation rings hollow and fails to establish an FDCPA violation.

### 6. "[T]he Defendants provided a copy of an invoice, dated August 30, 2004, which was not a copy of any invoice the Plaintiffs had ever received."

This allegation appears as Paragraph 10 of the "Count" section of the Complaint. Defendants' provision of an invoice is in no way a violation of the FDCPA. Moreover,

as set forth above, the allegation is patently false. As set forth above, from the first

correspondence they issued (See Exhibit "2"), Plaintiffs admitted to being in possession

of the work product for which they were assessed and referenced the Receiver's letter

regarding the explanation of the same. Said letter was issued with a copy of the invoice.

See Sarkis Affidavit at ¶9 and Exhibit "B" thereto.

> 7. **"The Defendants' letter dated January 11, 2005, stated that the Plaintiffs had 10 days to pay or object to the alleged debt."**

Appearing in Paragraph 11 of the "Count" section of the Complaint, this

statement is part of an allegation suggesting that Perkins & Anctil did not properly

acknowledge the Plaintiffs' dispute and request for verification. Perkins & Anctil's

response to these allegations, generally, is as set forth above. With respect to this

allegation, Perkins & Anctil notes that the statement quoted is a portion of a sentence

which actually reads:

> "You have ten (10) days from your receipt of this Notice, **for purposes of the attachment of rents**, to deliver to us a written response...." (Emphasis supplied). (See Exhibit "7").

As the Massachusetts Condominium Statute allows a condominium association to attach

the rent of a delinquent unit owner's tenant, Perkins & Anctil includes the above

statement in correspondence to delinquent unit owners to apprize them of their statutory

rights. As the Plaintiffs reside in and do not rent their unit, this statement is inapplicable

to their situation and, in any event, does not establish a violation of the FDCPA.

> 8. **"The Defendants violated 15 U.S.C. 1692e by falsely implying in their initial letter, dated December 15, 2004, that legal proceedings had already begun."**

The above appears in Paragraph 12 of the "Count" section of the Complaint.

Perkins & Anctil notes that their initial letter (See Exhibit "1") is a document which

speaks for itself.  Said letter does not state or imply that legal proceedings had begun.

That this letter was, in fact, an initial, introductory letter was made known to Plaintiffs

through the language used therein.  The letter begins "Please be advised this office

represents Sheryl Sarkis....".  See Exhibit "1".  Thus Plaintiffs were made aware that they

were receiving a first correspondence from Perkins & Anctil and the same was, therefore,

obviously not a continuation of an existing legal proceeding.

> ### 9.  "The Defendants' second letter, dated December 28, 2004, claimed that Sheryl A. Sarkis "will be statutorily entitled to the court's authorization of a foreclosure on your property."

This allegation appears in Paragraph 12 of the "Count" section of the Complaint.

The Plaintiffs are referencing Exhibit "3" attached hereto.  The relevant portion thereof

actually reads:

> "In any court judgment regarding your outstanding
> balance...Sheryl Sarkis as Receiver, will be statutorily entitled to
> the court's authorization of a foreclosure of your property."

M.G.L. c. 254, §5A reads:

> "When the amount of a lien under section six of chapter 183A [the
> Condominium Statute] or under section 29 of chapter 183B has
> been established by a court, the court **shall** enter an order
> authorizing the sale of the real estate to satisfy such lien."
> (Emphasis supplied).

Thus, the complained-of statement referenced in the allegation was simply a recitation of

the Receiver's clear statutory right under Massachusetts Law.  Perkins & Anctil clearly

explained the same to Plaintiffs in their letter of January 4, 2005.  See Exhibit "5".

Perkins & Anctil's simple recitation of the law as set forth in an applicable statute

does not establish a violation of the FDCPA.

**10. "The Defendants claimed in their letter, dated January 4, 2005, that "the legality of an assessment must be questioned only after payment."**

This allegation appears in Paragraph 13 of the "Count" section of the Complaint. In the referenced letter (See Exhibit "5"), Perkins & Anctil again provided a legal position based upon Massachusetts Law.  In particular, Perkins & Anctil actuality quoted the case of *Blood v. Edgars, Inc.*, 36 Mass.App.Ct. 402, 406, 632 N.E.2d 419, 421-422 (1994), in which the Massachusetts Appeals Court held:

> "We suggest that aggrieved unit owners should timely pay-under protest-the common expense assessment.  Thereafter, a judicial determination of the legality of the assessment, and suitable reimbursement, may be sought."

> "From the date of this opinion, a condominium unit owner may not challenge a common expense assessment by refusing to pay it." *Id.* at 410, 424.

The *Blood* case was decided two years after the case of *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass. 723, 726, 592 N.E.2d 1301, 1302 (1992), in which the Massachusetts Supreme Judicial Court held:

> "A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, **even a seemingly meritorious one**, would threaten the financial integrity of the entire condominium operation."  (Emphasis supplied).

Thus, once again, with respect to the complained-of statement, Perkins & Anctil were simply reciting Massachusetts Law.  Further, as explained above, pursuant to the opinion and commentary of the Federal Trade Commission and the precedent of the 7th Circuit, Perkins & Anctil were not prohibited from filing suit (or sending prerequisites thereto) by the Plaintiffs' alleged dispute.  As such, Plaintiffs' allegations in this regard do not establish a violation of the FDCPA.

It bears mention that in said letter (See Exhibit "5"), Attorney Daddario wrote:

> "In the event that you opt not to make payment in accord with this letter or have any questions relating thereto, I strongly recommend that you seek the advice of legal counsel."

**11. "The Defendants sent a notice to the Plaintiffs' mortgage company, attaching a lien to the Plaintiffs' mortgage, in violation of Rule 4.1, procedures for attachment of real estate."**

This allegation appears as Paragraph 14 of the "Count" section of the Complaint. The notices issued by Perkins & Anctil to the Plaintiffs' mortgage holder are attached hereto as Exhibits "10" and "11". Perkins & Anctil states that these letters are documents which speak for themselves. However, Perkins & Anctil also note that such notices are required by M.G.L. c. 183A, §6(c) and, therefore, the issuance of the same does not constitute a violation of the FDCPA. Further, the issuance of said notices did not "attach a lien" and, therefore, Rule 4.1 is not applicable. Plaintiffs' allegations in this regard fail to establish an FDCPA violation and, instead, demonstrate a disingenuous attempt to distort the actions of Perkins & Anctil to attempt to establish a claim against them.

**12. "The Defendants, on or around January 27, 2005, filed in Superior Court a motion to compel payment and to permanently enjoin the Plaintiffs from speaking with the head of the property management firm for which Sheryl A. Sarkis works."**

This allegation appears as Paragraph 15 of the "Count" section of the Complaint. Perkins & Anctil asserts that, on its face, this Paragraph fails to establish a violation of the FDCPA. The FDCPA certainly does not prohibit debt collectors from seeking redress from an appropriate Court. Moreover, the injunction sought involved some of the same parties, but did not constitute an attempt to collect the assessment. Rather, the same was necessitated by the Plaintiffs' own misconduct. See Affidavit of Sheryl Sarkis at ¶ 12-16.

The subject Motion is attached hereto as Exhibit "12". The subject Order of the Superior Court is attached hereto as Exhibit "8". Paragraphs 1 and 2 of Exhibit "8" clearly demonstrate that Perkins & Anctil sought the injunction as a result of Plaintiffs' misconduct.

To the extent that Perkins & Anctil's Motion contained an attempt to seek collection of the assessment, said attempt was clear and explicit. As set forth in Paragraphs 4 and 5 of Exhibit "8", the Superior Court issued an independent decision relative to the collection component of the Motion.

### 13. The "Claim For Relief"

The Plaintiffs' "Claim For Relief" section of the Complaint is a reiteration of the allegations discussed above. As such, the responses of Perkins & Anctil apply to Paragraphs 16-17 as set forth above.

### 14. The Claim Regarding Good Faith and Fair Dealing

To the extent that Plaintiffs attempt to assert a claim for breach of the covenant of good faith and fair dealing, Perkins & Anctil notes that the same is entirely misplaced. This claim applies to situations in which a contract has been breached under Massachusetts law. This case is based upon the FDCPA and has nothing to do with the covenant of good faith and fair dealing. Quite clearly, Perkins & Anctil have no contractual relationship with the Plaintiffs.

### D.   THE "AMENDED AND SUPPLEMENTED" COMPLAINT

The "Amended and Supplemental" Complaint purports to "repeat and reallege" the initial Complaint. In this respect, all information above applies. The "Amended and Supplemental" Complaint also includes additional allegations discussed, in turn, below.

### 1. "The Defendants wrote two separate letters dated February 7, 2005.... The letters contain false and misleading statements"

This allegation appears at Paragraph 4 of the Amended Complaint. Defendants state that the referenced letters are attached hereto as Exhibits "10" and "11" and are documents which speak for themselves and do not contain false or misleading statements. The letters were issued in accord with M.G.L. c. 183A, §6(c) and accurately described the circumstances, as explained above, in accord with Massachusetts condominium law. The letters do not constitute prohibited communications with third parties as the holder of the first mortgage maintains rights in the property at issue as evidenced by their mortgage lien. Further, the Notices were required, under Massachusetts law, as prerequisites to litigation and to perfect the lien for the delinquent assessments. The first mortgage holder represents a "party-in-interest" as, pursuant to M.G.L. c. 183A, §§6(a)(ii) and 6(c) and M.G.L. c. 254, §§5 and 5A, the first mortgage holders rights may be effected by the actions taken in collection of a condominium assessment (*e.g.* M.G.L. c. 254, §5A mandates authorization of foreclosure upon the Court's determination of the amount of the lien). The letters accurately described Defendants' intentions at the time. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario, each at ¶13. Moreover, Plaintiffs were notified by Defendants' January 11, 2005 letter (See Exhibit "7") that notice would be issued to their mortgagee.

### 2. "The two February 7, 2005 letters asked HSBC Mortgage Corp. to assist the Defendants in collecting the alleged debt."

This allegation appears at Paragraph 5 of the Amended Complaint. This allegation, on its face, fails to allege a violation of any FDCPA violation. To the extent that this allegation is meant to relate to the furnishing of a deceptive form, the same did

not occur. The February Notices simply made Plaintiffs aware that Defendants had requested assistance from the first mortgage holder. No intimation regarding the first mortgage holder's possible response is set forth and, as such, the Notices were not designed to create a belief (let alone a false one) regarding the first mortgage holder's involvement.

### 3. "The Defendants' February 7, 2005, letters to the HSBC Mortgage Corp. failed to communicate that the Plaintiffs disputed the alleged debt."

This allegation appears at Paragraph 6 of the Amended Complaint. As set forth above, Defendants issued these Notices in accord with Massachusetts law and the same were accurate with respect thereto. To the extent that these letters provided "credit information", it was accurate. Further, Plaintiffs' dispute of the condominium assessment is irrelevant with respect to the notification of a party-in-interest for purposes of perfecting a lien in preparation for litigation under M.G.L. c. 183A and 254. As set forth above, pursuant to the Federal Trade Commission's ruling, Plaintiffs' dispute did not prohibit Defendants from instituting legal action and the Defendants intended to do so. See Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario, each at ¶13. For these reasons, Defendants' February 7th letters were not deceptive or otherwise in violation of the FDCPA.

### 4. "The Defendants' two February 7, 2005, letters to HSBC Mortgage Corp. indicate that copies were sent...."

Appearing as Paragraph 7 of the Amended Complaint, this statement fails to allege any FDCPA violation. Rather, the same constitutes irrelevant statements of alleged fact regarding the relationships of various parties not involved in the present action.

5. **"Upon information and belief, the Defendants did not "institute action to enforce lien" within 30 days of their February 7, 2005, letter or at any time since that date."**

Appearing as Paragraph 8 of the Amended Complaint, this statement fails to allege any FDCPA violation. Rather, the same is evidence of the Plaintiffs' belief that the FDCPA is a "sword". Plaintiffs attempt to establish a violation based on actions the Defendants planned to take, but refrained from taking as a result of this lawsuit. To the extent that this allegation is meant to cast a shadow on Defendants' intentions as expressed in the February 7th letters, the same is clearly denounced in the Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario, each at ¶13. The Defendants assume that this allegation is made tongue-in-cheek, as it is clear from Plaintiffs' pleadings in this matter that the Defendants' filing of a Superior Court Complaint would have simply been used as the basis for additional allegations in the Amended Complaint of the present suit.

6. **"COUNT II" alleging violations of Section 807(2)(A) and 807(7) of the FDCPA.**

Appearing at Paragraphs 9-11 of the Amended Complaint, Count II attempts to allege violations of Sections 807(2)(A) and 807(7) of the FDCPA. Read carefully, the allegations of these paragraphs deal largely with conduct of persons other than the Defendants. To the extent that these allegations deal with matters other than Perkins & Anctil's debt collection efforts, they are not properly before this Honorable Court in the context of this Complaint. The Plaintiffs are not free to mount what is, essentially, an appeal of a Superior Court decision within the context of this lawsuit.

In addition, Defendants submit that the Motion referenced in these allegations is attached hereto as Exhibit "12" and is a document which speaks for itself. As set forth above, Defendants' actions in seeking redress of an appropriate court are not violations of

17

the FDCPA. To the extent that Plaintiffs allege that Defendants offered misleading written or oral statements to the Superior Court, the same is adamantly denied and, in Defendants' view, most likely the result of Plaintiffs' misunderstanding or the "out-of-context" manner in which Plaintiffs' habitually view Defendants' actions.

With respect, specifically, to Section 807(2)(A), Defendants' state that the character, amount or legal status of the debt (to the extent referenced at all) was set forth to the Superior Court in terms consistent with applicable Massachusetts law (as set forth in greater detail above).

With respect, specifically, to Section 807(7), Defendants assert that no false representation or implication relative to the Plaintiffs' behavior was presented to the Superior Court. As evidenced by the Superior Court Order, attached hereto as Exhibit "8", Defendants' representations regarding the Plaintiffs' behavior and conduct were determined by the Superior Court to have been sufficiently demonstrated and, therefore, not false. Further, all representations made relative to the Plaintiffs' behavior were put before the Superior Court in an effort to avoid damage to the Court-Appointed Receiver's primary employment and her relationship with her employer (which was not involved in any manner with the Superior Court proceedings) and not to disgrace the Plaintiffs. As a result of the referenced Motion and the hearings thereon (two days' worth at which the Plaintiffs were present, allowed to speak and allowed to question the Court-Appointed Receiver), a Permanent Injunction issued. As opposed to disgracing the Plaintiffs, the Permanent Injunction merely prohibited them from contacting a business entity and the president thereof, each of which were not involved with the Plaintiffs or their condominium association. Having had the opportunity to litigate the Motion (including

18

the ability to have raised any FDCPA issues), the Plaintiffs should be estopped from attempting to re-litigate and/or appeal this matter in the context of this lawsuit.

Paragraphs 9-11 represent another attempt by the Plaintiffs to use the FDCPA as a "sword". Ironically, here, Plaintiffs' allegations involve Superior Court proceedings which were focused on their own misconduct.

### E.     THE FDCPA DOES NOT APPLY TO CONDOMINIUM DEBT

The Defendants' Motion to Dismiss was denied by this Honorable Court based upon the conclusion that condominium debt is consumer debt. A 7th Circuit decision was cited in support. It appears that the issue is, as yet, unresolved in the First Circuit. Defendants seek further consideration of this issue. Other Federal Courts have determined that condominium debts are not consumer debts: *Nance v. Petty, Livingston, Dawson & Devening*, 881 F.Supp. 223 (W.D. Va. 1994) (fees due homeowner's association used on common road and therefore not primarily for personal, family or household purchases) *citing Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir. 1994) (holding child support payments were not debts under FDCPA); *Azar v. Hayter*, 874 F.Supp. 1314 (N.D.Fla. 1995) (holding condominium assessments for common area maintenance lack the *pro tanto* exchange required for debt under FDCPA) *citing Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) (holding that relationship between taxing authority and taxpayer does not have sufficient *pro tanto* exchange qualities to warrant application of FDCPA).

Perkins & Anctil notes that the above decisions and reasoning are in line with both the Massachusetts Condominium Statute and the Massachusetts Supreme Judicial Court and Appeals Court decisions thereunder (as cited on Page 12 above). Further,

Defendants state that the assessment presented in this case (for a land topography study in preparation for remedial landscaping to correct issues of common areas exterior to the Plaintiffs' unit) is in the nature of, and most closely analogous to, that presented in the *Nance* case. As such, Perkins & Anctil reiterates this argument.

Defendants' Motion to Dismiss also included arguments relative to the procedural flaws of Plaintiffs' claim and standing, as well as the retaliatory, frivolous and bad faith nature of the Complaint. Perkins & Anctil reiterates herein each of those arguments and, again, reserves all rights with respect to future legal actions against Plaintiffs.

## IV.    **CONCLUSION**

For the reasons set forth above, this Honorable Court is in the position to analyze and decide this case upon the documents submitted. In addition, for the reasons explained, Defendants are entitled to Summary Judgment in their favor and pray that this Honorable Court:

A.    Grant Defendants Summary Judgment on each Count of the Plaintiffs' Complaint; and

B.    Take any other action deemed to be in the best interest of justice.

Respectfully submitted,
Defendants

Charles A. Perkins, Jr. (BBO #394430)
charlie@perkinslawpc.com

Gary M. Daddario (BBO #639615)
gary@perkinslawpc.com
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978) 251-8509

Dated: January 24, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                        CIVIL ACTION NO. 05-10350JLT

|  |  |
|---|---|
| DIANE SCOTT-JONES and JOHN E. JONES, JR., Individually and as Trustees of the 392-394 BOYLSTON COMMONS CONDOMINIUM TRUST,<br>          Plaintiffs,<br><br>v.<br><br>CHARLES A. PERKINS, JR., GARY M. DADDARIO and PERKINS & ANCTIL, P.C.,<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

        I hereby certify that this document, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on January 27, 2006.

Respectfully submitted,
Defendants

_____
Charles A. Perkins, Jr. (BBO #394430)
charlie@perkinslawpc.com

_____
Gary M. Daddario (BBO #639615)
gary@perkinslawpc.com
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978) 251-8509