UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10350JLT

_____
                                                                    )
DIANE SCOTT-JONES and JOHN E. JONES, JR.,        )
INDIVIDUALLY AND AS TRUSTEES OF THE 392-394   )
BOYLSTON COMMONS CONDOMINIUM TRUST,          )
        **Plaintiffs**                                               )
                                                                )
**v.**                                                                )
                                                                    )
CHARLES A. PERKINS, JR., GARY M. DADDARIO, and )
PERKINS & ANCTIL, PC                                       )
        **Defendants**                                             )
_____)


### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW COME** the Plaintiffs in the above-captioned matter and hereby

respectfully submit Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

Plaintiffs set out their memorandum of reasons and supporting authorities in this

document, as required in Local Rule 7.1(b)(2). Plaintiffs are simultaneously filing a

Motion for Partial Summary Judgment on the issue of liability, with trial requested for

assessment of damages and costs. This Opposition also serves as Memorandum of Law

in Support of Plaintiffs' Motion for Partial Summary Judgment.

### I. PROCEDURAL HISTORY

On February 18, 2005, Plaintiffs filed this Complaint alleging that Defendants'

debt collection actions related to Plaintiffs' owning and living in one unit of a two-unit

condominium violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 et seq. The Complaint also alleged breach of good faith and fair dealing.

Defendants filed their Motion to Dismiss on March 16, 2005, claiming, *inter alia*, that this Court lacks subject matter jurisdiction because condominium debt is not "debt" under the FDCPA. Plaintiffs filed their Opposition on March 30, 2005. Defendants' filed their Motion for Leave of Court to File Additional Papers on April 6, 2005, and Plaintiffs filed their Opposition on April 21, 2005. On May 16, 2005, the Court denied Defendants' Motion, stating:

Because condominium assessments qualify as "debts" under the Fair Debt Collection Practices Act (FDCPA), this court has subject matter jurisdiction to adjudicate Plaintiffs' claims. *Newman v. Boehm, Pearlstein & Bright, Ltd*., 119 F. 3d 477 (7th Cir. 1997)

On May 20, 2005, Defendants filed their Answer, still claiming the Court lacks subject matter jurisdiction. A Scheduling Conference was held September 6, 2005. The Court ordered that Discovery be completed by November 30, 2005, but Discovery has not occurred.

On September 6, 2005, Plaintiffs filed their Motion to Amend their Complaint and Motion for Judgment on the Pleadings. On September 14, 2005, Defendants filed their Opposition to Plaintiffs' Motions and filed a Motion for Summary Judgment but failed to serve these documents on Plaintiffs. On October 11, 2005, Plaintiffs filed a Motion to Dismiss (read as Strike) Defendants' documents. On October 25, 2005, the Court granted Plaintiffs' Motion to Dismiss (Strike), denied Plaintiffs' Motion for Judgment on the Pleadings, and granted Plaintiffs' Motion to Amend their Complaint.

On November 21, 2005, Defendants filed their Answer to the Amended Complaint, again claiming lack of subject matter jurisdiction. On December 15, 2005,

Plaintiffs filed a Motion to Strike Defendants' Answer because it was filed thirteen days late; on January 4, 2006, the Court denied Plaintiffs' Motion. A Settlement Conference was held on January 4, 2006, but settlement was not reached. Defendants filed a second Motion for Summary Judgment on January 26, 2006. Plaintiffs now file this Opposition and Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment.

## II. STATEMENT OF FACTS

Pursuant to Federal Rule 10(c), Plaintiffs hereby adopt by reference Plaintiffs' Statement of Material Facts of Record. Briefly, Defendants mailed letters to Plaintiffs, their mortgage-holder, and the owners of the second unit in the two-unit condominium, alleging that Plaintiffs owed debt. Defendants joined the Preliminary Injunction in Aid of Arbitration filed in Middlesex Superior Court by owners of the second unit, by filing a Motion that combined demand for payment of alleged debt and attorneys' fees with the claim that Plaintiffs harassed others. Plaintiffs have appealed the Preliminary Injunction in Aid of Arbitration to the MA Supreme Judicial Court on issues separate from Defendants' FDCPA violations. Defendants created invoices (Exhibit 1) for $7,798.25 for their debt collection fees, with $7,183.25 of that amount allegedly unpaid. Defendants participated in the transfer of condominium records to Peter Zimmerman, who mailed a letter to Plaintiffs and Plaintiffs' mortgage-holder, demanding payment for alleged debt. Plaintiffs filed an FDCPA complaint (06-10602-JLT) against Mr. Zimmerman.

### III. STATEMENT OF QUESTIONS PRESENTED

A. Did Defendants Include the FDCPA Notice but Contradict It by Denying that Condominium Debt is Covered, in Violation of 15 USC 1692e?

B. Did Defendants Contradict the 30-Day Validation Notice by Demanding Payment in Less Than 30 Days, Failing to Provide Verification of the Alleged Debt, and Continuing Debt Collection, in Violation of 15 USC 1692g(b)?

C. Did Defendants' Initial Letter to Plaintiffs Falsely Imply that Legal Proceedings Had Already Begun, in Violation of 15 USC 1692e?

D. Did Defendants' Letter to Plaintiffs and to HSBC Mortgage Corp. with the Caption "NOTICE OF DEFAULT AND INTENT TO COLLECT RENTS" and the Demand that Plaintiffs Prove, within 10 Days, Payment of "Monthly Common Area Fees" Misrepresent the Character, Amount, or Legal Status of Alleged Debt, in Violation of 15 USC 1692e(2)(A) and Harass, Oppress, or Abuse Plaintiffs in Violation of 15 USC 1692d?

E. Did Defendants' Letters to Plaintiffs and to HSBC Mortgage Corp. Threaten Foreclosure, "Collection and Lien Enforcement Action", or Other Action that Could Not Legally Be Taken and Was Not Intended to Be Taken, in Violation of 15 USC 1692e(4) and (5) and15 USC 1692f(6)(A) and (B)?

F. Did Defendants' Letters to HSBC Mortgage Corp., with Copies to Owners of the Second Unit in the Two-Unit Condominium, Constitute Improper Contact with Third Parties, in Violation of 15 USC 1692c(b)?

G. Did Defendants' Letters to HSBC Mortgage Corp. Fail to Communicate that Plaintiffs Disputed the Debt, in Violation of 15 USC 1692e(8)?

H. Did Defendants Design Letters to Create the Belief that HSBC Mortgage Corp. Would Participate in Debt Collection, in Violation of 15 USC 1692j?

I. Did Defendants' Combine their Demand for Payment with a Claim of Harassment in Middlesex Superior Court, in Violation of 15 USC 1692e(7)?

J. Did Defendants Falsely Represent their Services Rendered or Compensation for Debt Collection, in Violation of 15 USC 1692e(2)(B)?

K. Did Defendants' Actions Constitute a Breach of Good Faith and Fair Dealing?

## IV. ARGUMENT

### A. The Standard for Summary Judgment Favors Plaintiffs.

Rule 56(c) of the Federal Rules of Civil Procedure requires that the moving party

"…show that there is not a genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  The standard is high:

"The Court considers the entire record, but must disregard all evidence favorable to the moving party that the jury is not required to believe…A Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Spectrum Trucking v. Acordia Northwest*, 2006 U.S. Lexis 18923.

Further, the FDCPA is a strict liability statute; proof of one violation is sufficient for summary judgment for Plaintiffs. *Cacace v. Lucas*, 775 F. Supp. 502. 505 (D. Conn. 1990). Plaintiffs have evidence of multiple violations, as set forth below. Thus, a grant of partial summary judgment for Plaintiffs is appropriate.

**B. The "Least Sophisticated Consumer" Standard is Used to Analyze Defendants' Communications and Conduct for Violations of the FDCPA.**

Whether communication or conduct violates the FDCPA is to be determined from the perspective of the least sophisticated consumer. *United States v. National Financial Services, Inc.,* 98 F.3d 131 135-36 (4th Cir. 1996). The FDCPA broadly prohibits communication and conduct that would require consumers to retain attorneys in order to understand the actions of debt collectors. Defendants' advising Plaintiffs to seek an attorney in four letters mailed between December 15, 2004, and January 11, 2005 (Defendants' Exhibit 1, 3, 5, 7) is not a sufficient defense to violations of the FDCPA.

**C. Defendants Included the FDCPA Notice but Overshadowed and Contradicted It by Denying that Condominium Debt is Covered, in Violation of 15 USC 1692e.**

The FDCPA, 15 USC 1692e, states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Defendants included a notice of the FDCPA with a heading "<u>NOTICE OF IMPORTANT RIGHTS TO CONSUMERS</u>" but the text of the letters contradicted the FDCPA. The FDCPA notice, to be effective, must not be contradicted by other messages. *United States v. National Financial Services*, *Inc.,* 98 F3d 131 (4th Cir. 1996).

In their January 4, 2005, letter to Plaintiffs (Defendants' Exhibit 5, p. 4) and in their Motion to Dismiss, Answer, and Motion for Summary Judgment, Defendants claim that condominium debt is not covered by the FDCPA. The Court disagreed and denied

Defendants' Motion to Dismiss, citing *Newman v. Boehm, Pearlstein, & Bright Ltd*., 119

F. 3d 477 (7th Cir. 1997).  The prevailing view is that condominium fees are "debt",

which the FDCPA, 15 U.S.C. 1692a(5), defines as:

…any obligation or alleged obligation of a consumer to pay money arising out of a
transaction in which the money, property, insurance or services which are the subject of
the transaction are primarily for personal, family, or household purposes…

Since *Newman,* many cases have found that condominium debt is covered under

the FDCPA.  *Thies v. Law Offices of William A. Wyman,* 969 F. Supp. 604 (S.D. Cal.

1997); *Ladick v.Van Gemert,* 146 F. 3d 1205 (10th Cir. 1998)**;** *Taylor v. Mount Oak*

*Manor Homeowners Association, Inc.*, 11 F. Supp, 2nd 753 (D. Md. 1998).  The relevant

transaction is the initial purchase of the condominium; *Newman* states, "there can be little

doubt that the subject of those transactions had a personal, family, or household purpose."

Further, *Newman* found that assessments themselves have a "personal, family, or

household purpose".  Defendants are leaders in the Community Associations Institute, a

trade organization that filed an amicus curiae brief in *Newman,* unsuccessfully arguing

that condominium fees are not "debt".

The two cases Defendants cite to support their view are cited in subsequent cases,

e.g., *Thies v. Law Offices of William A. Wyman,* 969 F. Supp. 604 (S.D. Cal. 1997), as

examples of flawed reasoning.  Defendants cite *Nance v. Petty, Livingston, Dawson &*

*Devening*, 881 F. Supp. 223, 225 (W.D. Va. 1994), which found that a housing

subdivision's assessment for maintenance of a private road was not debt under the

FDCPA because the road was not primarily for personal, family, or household purposes.

Defendants also cite *Azar v. Hayter*, 874 F. Supp. 1314, 1318 (N.D. Fla.), aff'd,

66 F.3d 342 (11th Cir. 1995), in which condominium fees were compared to the per

capita tax in *Staub v. Harris*, 626 F.2d 275, 278 (3rd Cir. 1980), where taxes were construed primarily to "finance governmental functions" and taxes were not construed to be debt under the FDCPA. The tax analogy has little current credibility, given Public Law No. 108-357, enacted in 2004, which allows the Internal Revenue Service to use debt collection agencies to collect tax debts. The 2004 law explicitly states that the FDCPA "…shall apply to any qualified tax collection contract."

In their Motion to Dismiss, Defendants cited only one authority, a Massachussetts case, *Franco v. Marcus,* Hampden County Superior Court, 1995, in support of their claim that condominium debt is not "debt" under the FDCPA. <u>*Franco v. Marcus*</u> held that the fees were not primarily for personal, family or household purposes but were used to maintain the extensive lakes, beaches, ski slope, common buildings, and landscaped areas. Defendants asserted that "the present case involves identical circumstances" to *Franco v. Marcus* but there is little similarity to a two-unit condominium. The Defendant in *Franco v. Marcus* was Stephen M. Marcus, of Marcus, Errico, Emmer, & Brooks, the firm that represents the owners of the second unit in the two-unit condominium where Plaintiffs live and that assisted in writing the Community Associations Institute's unsuccessful amicus curiae brief in *Newman*.

Defendants also claim (Memorandum, p. 6) that a May 4, 1992, "Opinion Letter issued by Attorney Thomas E. Kane on behalf of the Federal Trade Commission" (FTC) states that the FDCPA does not prohibit those covered by the FDCPA from denying they are covered. First, informal staff letters are distinct from FTC Advisory Opinion; such letters are not binding on the FTC or the Court and do not provide a defense. Second, Plaintiffs contacted Mr. Kane who stated that denial of coverage violates the FDCPA at

7

15 USC 1692e and that, although the staff no longer issues informal written

interpretations of the FDCPA except in unusual circumstances (see notice posted on FTC

website), the Court can contact him to confirm his current opinion:

Attorney Thomas E. Kane, Coordinator of FDCPA Enforcement Program
Division of Financial Practices, Federal Trade Commission
600 Pennsylvania Avenue NW, Washington, DC  20580
202 326-2304

Defendants' correspondence that included the FDCPA notice in a prominent

position and that also denied the applicability of the FDCPA to condominium debt was

deceptive and misleading.  Thus, Defendants have violated the FDCPA at 15 USC 1692e.

**D. Defendants Violated the Validation Requirements of 15 USC 1692g by (1) Demanding Payment in Less than 30 Days; (2) Refusing to Provide Verification of the Alleged Debt; and (3) Continuing Collection without Providing Verification.**

The FDCPA, at 15 USC 1692g(b) states:

 (b) If the consumer notifies the debt collector in writing within the thirty-day period
described in subsection (a) that the debt, or any portion thereof, is disputed, or that the
consumer requests the name and address of the original creditor, the debt collector shall
cease collection of the debt, or any disputed portion thereof, until the debt collector
obtains verification of the debt or any copy of a judgment, or the name and address of the
original creditor, and a copy of such verification or judgment, or name and address of the
original creditor, is mailed to the consumer by the debt collector.

**1. Defendants demanded payment in less than 30 days.**

Courts have consistently decided that debt collectors cannot contradict the 30-day

validation period by demands for payment.  *Avila v. Rubin*, 84 F.3d 222 (7th Cir.1996);

*Russell v. Equifax, A.R.S.* 74 F.3d 30 (2d Cir. 1996); *United States v. National Financial*

*Services, Inc.,* 98 F.3d 131 135-36 (4th Cir. 1996).  Defendants' 30-day validation notice

in their initial December 15, 2004, letter (Defendants' Exhibit 1) was contradicted by the

demand for payment within 14 days.  On December 28, 2004, Defendants demanded

payment by January 3, 2005 (Defendants' Exhibit 3).  On January 4, 2005, Defendants

demanded payment by January 10, 2005 (Defendants' Exhibit 5).  On January 11, 2005,

Defendants demanded payment within 14 days (Defendants' Exhibit 7).

Defendants issued 4 contradictory letters with 3 different payment deadlines

falling within 30 days of the first letter. Thus, Defendants have violated the FDCPA at 15

USC 1692g(a) and also 1692e(10).

**2. Defendants refused to provide verification of the alleged debt.**

Defendants' brief December 15, 2004, letter (Defendants' Exhibit 1) simply stated

a "balance due on your account" of $1,250 and legal fees of $390.  In their December 28,

2004, letter (Defendants' Exhibit 3, p. 2) Defendants refused to provide verification:

Finally, please be advised that this collection proceeding is not the appropriate forum in
which to conduct inquiry regarding the work underlying the recent assessment.
M.G.L.c.183A and cases decided thereunder by both the Masschusetts Appeals Court and
the Supreme Judicial Court dictate that a unit owner first make payment of assessments
and thereafter, if applicable, challenge the same.
Until such time as your full outstanding balance has been paid, all correspondence
regarding this matter must be directed to this office.  Thereafter, appropriate information
relative to the work being performed at the condominium may be sought from Ms. Sarkis.

Defendants' January 4, 2005, letter (Exhibit 5, p. 2) again refused verification:

As to the initial assessment of $1,250 at issue in this matter, an explanation has been
provided to the extent possible at this time.  As you are aware, the same represents your
proportionate share of necessary landscaping repairs.  You are free to review details
regarding the same with your association and/or Sheryl Sarkis when your balance is paid
and your file with this office is closed.

Defendants fourth letter, dated January 11, 2005, (Defendants' Exhibit 7, p. 3)

falsely implied that Plaintiffs had not requested verification; that letter included an

invoice and correspondence from Defendants' client and asked Plaintiffs to submit "…a

plain and simple statement setting forth the grounds upon which you assert the amounts

are not correctly calculated or not properly charged and what amount you admit is due…"

Plaintiffs had already requested verification in three previous letters.

The Defendants' January 27, 2005, Motion to Superior Court (Defendants' Exhibit 12) demanding payment included only a vague description of the alleged debt in paragraph 10, claiming that Plaintiffs "defied" the assessment of $1,250 and, in paragraph 21, claiming that Plaintiffs had "…no basis for defying the outstanding assessment (including related legal fees)" because "defiance" contradicts MA case law *Prince v. Prosser* and *Blood v. Edgars*.

Defendant Daddario, in a July 22, 2005, Superior Court hearing, argued against Plaintiffs' requests for information about their client's assessments and, reciting *Prince v. Prosser* and *Blood v. Edgars*, asserted their client's right to demand payments without demonstrating the legitimacy of the demand (see Exhibit 2). Defendants again claimed that, under MA law, Plaintiffs have no right to question demands for payments, even a demand known to be unlawful, but must pay before asking questions and seek recovery later through a separate legal action. Defendants presented to this Court the outcome of the July 22, 2005, hearing (Defendant's Exhibit 9) but failed to inform this Court that their client had improperly doubled the $160 monthly fee to $320 and had demanded over $25,000, allegedly for fees to Waverly Landscaping (a member of the Community Associations Institute, Defendants' trade organization), with a $10/day penalty for each day the fee remained unpaid (see Exhibit 3).

Defendants have taken the position that condominium unit owners who request the information the FDCPA requires are "defiant." Defendants' view, that MA law requires Plaintiffs to pay all condominium fees before asking for explanations and then seek relief through a separate legal proceeding, is in direct contradiction to the validation requirement of the FDCPA and the general expectation of fair debt collection practices.

The FDCPA preempts inconsistent state law that would provide consumers less protection *Gonzalez v. Codilis & Assocs., P.C.*, 2004 WL719264 (N.D. Ill. Mar. 31, 2004). The FDCPA is intended to "…promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. section 1692 (a), (e). Defendants had a responsibility to ascertain the legitimacy of alleged debt. Debt collection attorneys should make independent professional judgments about collectibility and liability. *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002).

Although Defendants' obligations to abide by the FDCPA cannot be diminished by MA law, the Defendants' interpretation of MA law is flawed, as set forth in Plaintiffs' Memorandum in Support of their Opposition to Defendant's Motion to Dismiss, which Plaintiffs hereby adopt by reference. Briefly, Defendants cite two cases involving condominium unit owners' refusal to pay monthly fees: *Trustees of Prince Condominium Trust v. Prosser*, 412 Mass., 592 N.E.2nd (1992), in which a unit owner withheld monthly fees because his parking space became unusable; and *Blood v. Edgars, Inc.*, 36 Mass.App.Ct., 632 N.E.2nd (1994), in which the only commercial owner refused to pay any monthly condominium fees over a two-year period because part of the fee (for services to owners who rented residential units) was unjustified.

These cases are not relevant because Plaintiffs paid their $160 monthly fees, despite Defendants' client's refusal to provide the routine maintenance for which the fees were intended and refusal to provide access to condominium records. Defendants were collecting a disputed "special assessment." Further, these cases were decided at a time of concern about absentee owners who failed to pay monthly fees and caused harm to the paying unit owners in the condominium. The principle that can be abstracted from these

cases is that condominium unit owners deserve protection, not that debt collectors deserve unlimited power over condominium unit owners. Without the protection of the FDCPA, condominium unit owners can be forced to pay charges known to be fraudulent and to endure expensive, time-consuming legal battles to recover money that was never legitimately owed.

Instead of relying on *Prince v. Prosser* and *Blood v. Edgars* as validation for any and all alleged condominium debt, Defendants, as debt collection attorneys, should have made a considered, professional, legal judgment that there was legitimate debt to pursue and that Plaintiffs were delinquent. Defendants refused Plaintiffs' repeated requests for verification and denied their obligation to provide it. Thus, Defendants violated the FDCPA at 15 USC 1692g.

**(3) Defendants continued debt collection without providing verification.**

Plaintiffs replied to Defendants' initial December 15, 2004, letter by requesting on December 22, 2004 (Defendants' Exhibit 2) verification of the alleged debt. Defendants' December 28, 2004, reply (Defendants' Exhibit 3) stated: "First and foremost, please note that your letter shall not impact the collection process or the timing thereof." The FDCPA states that collection must cease if verification is requested in the 30-day period. Collection actions can continue during the 30-day validation period only if no request for verification is made. *Smith v. Computer Credit, Inc.*, 167 F3d 1052, 1055 (6th Cir.1999). The Federal Trade Commission (FTC) has affirmed this view in their only formal advisory opinion (i.e., Commission members voted), Mezines, FTC Advisory Opinion (Mar 31 2000), available at the FTC website. Further, the Advisory Opinion stated that even in the absence of a dispute, the collection activity may not "overshadow"

or be "…inconsistent with the disclosure of the consumer's right to dispute the debt…"

Defendants present an egregious misrepresentation of the FTC Advisory Opinion on p. 5

of their Memorandum, without providing a citation.

Defendants mailed four collection letters to the Plaintiffs during the 30-day period

and did not cease for verification in response to Plaintiffs' December 22, 2004, letter.

Thus, Defendants violated the FDCPA at 15 USC 1692g(b).

**E. Defendants' Initial Letter to Plaintiffs Falsely Implied that Legal Proceedings Had Begun, in Violation of 15 USC 1692e.**

Defendants' initial December 15, 2004, letter (Defendants' Exhibit 1) demanded

payment for "balance due" of $1,250 and $390 for legal fees to "resolve this matter

without the need of any further legal proceedings and expense."  The word "further" in

this context implied that some legal proceeding had begun.  Thus, Defendants violated

the FDCPA at 15 USC 1692g(b).

**F. Defendants' Letters to Plaintiffs and to HSBC Mortgage Corp. (1) Misrepresented the Alleged Debt, in Violation of 15 USC 1692e(2)(A) and (2) Served to Harass, Oppress, and Abuse Plaintiffs, in Violation of 15 USC 1692d.**

**(1) Defendants' January 11, 2005, Letter Misrepresented the Alleged Debt.**

The FDCPA at 15 USC 1692e(2)(A) prohibits the false representation of  the

character, amount, or legal status of any debt.  The January 11, 2005, letter falsely

implied that Plaintiffs had not paid their monthly ($160) condominium fees over an

unspecified period of time (Defendants' Exhibit 7, bottom of p. 2):

You have ten (10) days from your receipt of this Notice, for purposes of the attachment
of rents, to deliver to us a written response under the pains and penalties of perjury which
response must include:  (1) as to the monthly common area fees, proof of payment
(cancelled checks, receipts, etc.)…

Plaintiffs had paid the $160 monthly fee, despite Defendants' client's refusing to provide maintenance the monthly fee was intended to cover and forcing Plaintiffs to live in deplorable conditions that might reasonably be expected to provoke nonpayment of the monthly fees.  Defendants' client refused to provide copies of records, despite a Superior Court Order requiring her to provide them.  Plaintiffs had cancelled checks but without access to condominium records, Plaintiffs did not know whether Defendants' client had created records falsely indicating the monthly fees were unpaid and had improperly disposed of the Plaintiffs' payments.

The significance of Defendants' false suggestion that Plaintiffs had not paid their monthly condominium fees is that up to six months' delinquent fees can be recovered through the "super lien" provision of MGL 183A(6).  Defendants began their debt collection actions six months after their client began her appointment as receiver for the two-unit condominium.  Defendants' January 11, 2005, letter suggested that Defendants intended to initiate foreclosure proceedings that are permissible only if condominium monthly fees are not paid (Defendants' Exhibit 7, middle of p. 2):

The aforesaid Condominium Documents, and M.G.L. Chapter 183A, Section 6, as amended, provide the Condominium Association with certain rights and powers to enforce payment.  Enforcement may be by judicial action to collect unpaid amounts or by enforcement of the lien created by Chapter 183A, Section 6, by foreclosure.  In the event that the Condominium Association exercises its right to enforce the lien by foreclosure, it is possible that your Unit(s) could be sold as part of the foreclosure proceedings to pay the outstanding amounts.

Defendants mailed two letters, dated February 7, 2005, to HSBC Mortgage Corp., Plaintiffs' mortgage-holder.  One letter (Defendants' Exhibit 10) carried the caption "Sixty (60) Day Notice to Mortgagee of Intent to Institute Action to Enforce Lien pursuant to M.G.L.c.183A, s.6(c)" and included copies of the January 11, 2005, letter to

Plaintiffs, Plaintiffs' mortgage, and Plaintiffs' unit deed.  This February 7, 2005, letter claimed that Plaintiffs were 60 days delinquent in payments and falsely claimed that "…certain of these assessments…can be a priority over your mortgage…"   Defendants failed to note that the "priority amount" in M.G.L.c.183As.6(c) does "not include any amounts attributable to special assessments, late charges, fines, penalties, and interest assessed by the organization of unit owners."

The second letter dated February 7, 2005 (Defendants' Exhibit 11) carried the caption "Thirty (30) Day Notice to Mortgagee of Intent to Institute Action to Enforce Lien pursuant to M.G.L.c.183A, s.6(c)" and stated the "…intent to institute a collection and lien enforcement action thirty (30) days from the date of this letter."  Although Plaintiffs had paid all monthly fees, the letter stated that up to 6 months' fees, plus all collection costs, would have priority over the mortgage held by HSBC Mortgage Corp.

Defendants' correspondence to Plaintiffs and to HSBC Mortgage Corp. grossly misrepresented the character, amount, and legal status of the alleged debt.  Thus, Defendants violated the FDCPA at 15 USC 1692e(2)(A).

**(2) Defendants' Actions Served to Harass, Oppress, and Abuse Plaintiffs.**

The FDCPA at 15 USC 1692d states:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

The terms harass, oppress, and abuse are interpreted broadly, in their ordinary meanings, in addition to the specific conduct prohibited in 15 USC 1692d.  In *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir. 1985), the standard for analysis of claims under 15 USC 1692d was the "susceptible consumer" who may be relatively more

susceptible to harassment, oppression, or abuse because of reasons such as limited access to the legal system or being at the mercy of a power relationship.

Defendants' false representation of the alleged debt and threats of foreclosure carried grave consequences for Plaintiffs, who were not represented by counsel and had already been billed over $50,000 by ineffective counsel. Further, Defendants' client was a receiver in control of the two-unit condominium where Plaintiffs live. Plaintiffs hereby adopt by reference Plaintiffs' Opposition to Defendants' Motion to Dismiss, which explains on, p. 6-7, Plaintiffs' inability to obtain legal representation and, on p. 2-6, the events leading to the appointment of Defendants' client as receiver of the two-unit condominium because of an unjust denial of arbitration; see also Plaintiffs' Affidavits, paragraphs 6-9.

Defendants' January 11, 2005, letter was the fourth letter within one month that made false and contradictory claims the natural consequence of which was to harass, oppress, and abuse Plaintiffs. Because of Plaintiffs' fear of Defendants' threats of foreclosure, Plaintiffs altered their lives dramatically. Plaintiff Scott-Jones requested an emergency leave of absence from her employer (see Scott-Jones' Affidavit, paragraphs 12-14) and Plaintiff Jones took as much work time as possible for attention to this case and for extra travel from his office in Washington, DC, to Newton, MA (see Jones Affidavit, paragraphs 12-14). Because of Defendants' debt collection actions, Plaintiffs became unable to maintain their usual work, travel, and personal schedules and Plaintiffs live in fear in deplorable conditions at the two-unit condominium.

Defendants took actions the natural consequence of which was to harass, oppress, and abuse Plaintiffs. Thus, Defendants have violated the FDCPA at 15 USC 1692d.

**G. Defendants' Letters to Plaintiffs and Plaintiffs' Mortgage-Holder Threatened Action (Foreclosure, "Collection and Lien Enforcement Action") that Could Not Legally Be Taken and Was Not Intended to Be Taken, in Violation of 15 USC 1692e(4) and (5) and15 USC 1692f(6)(A) and (B).**

The FDCPA prohibits false representations including, at 15 USC 1692e(4), (5):

4) The representation or implication that nonpayment of any debt will result in…the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

The FDCPA prohibits unfair and unconscionable practices including, at 15 USC

1692f(6)(A), (B):

 (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if --
(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
(B) there is no present intention to take possession of the property.

Defendants threatened foreclosure and "collection and lien enforcement action" in

letters to Plaintiffs and to Plaintiffs' mortgage-holder.  One of Defendants' February 7,

2005, letters to Plaintiffs' mortgage-holder (Defendants' Exhibit 11) stated the "…intent

to institute a collection and lien enforcement action thirty (30) days from the date of this

letter."  The action threatened was possible only if Plaintiffs had failed to pay the $160

monthly condominium fee.  Further, Defendants did not institute the threatened action

within 30 days of February 7, 2005.   Defendants threatened action that could not legally

be taken and was not taken.  Thus, Defendants violated the FDCPA at 15 USC 1692e(4)

and (5) and  1692f(6)(A) and (B)

**H. Defendants' Letters to Plaintiffs' Mortgage-Holder, with a Copy to the Owners of the Second Unit in the Two-Unit Condominium,  Constitutes Contact with Third Parties that is Prohibited by 15 USC 1692c(b).**

The FDCPA at 15 USC 1692c(b) states:

17

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Defendants mailed two letters, both dated February 7, 2005 (Defendants' Exhibit 10, 11), to Plaintiffs' mortgage-holder, with a copy to the owners of the second unit in the two-unit condominium where Plaintiffs live.  Neither the Plaintiffs nor any court had given Defendants consent or permission to contact Plaintiffs' mortgage-holder or the owners of the second unit (Plaintiffs' Affidavits, paragraphs 17-18).  Thus, Defendants violated the FDCPA at 15 USC 1692c(b).

**I. Defendants' Letters to HSBC Mortgage Corp. Failed to Communicate that Plaintiffs Disputed the Debt, in Violation of 15 USC 1692e(8).**

The FDCPA at 15 USC 1692e(8) prohibits the debt collector from:

Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

Defendants' two February 7, 2005, letters (Defendants' Exhibit 10, 11) mailed to Plaintiffs' mortgage-holder failed to state that Plaintiffs disputed the alleged debt of $1,250.  Thus, Defendants violated the FDCPA at 15 USC 1692e(8).

**J. Defendants' Letter to Plaintiffs' Mortgage-Holder Was Designed to Create the False Belief that the Mortgage-Holder was Participating in the Collection of the Alleged Debt, in Violation of 15 USC 1692j(a).**

15 USC 1692j(a) states:

It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

Defendants' two letters, both dated February 7, 2005, to Plaintiffs' mortgage-holder included the statements "Your assistance in securing the payment of the listed amount from your mortgagor is therefore requested" (Defendants' Exhibit 10) and "You may avoid the Association's institution of its collection and lien enforcement action by securing your mortgagor's payment of these sums" (Defendants' Exhibit 11).  Plaintiffs made repeated efforts to contact their mortgage-holder, HSBC Mortgage Corp., beginning with telephone calls and on February 15, 2005, a letter (Exhibit 4).

After repeated telephone conversations (see Plaintiffs' Affidavits, paragraphs 15-16), Plaintiffs received HSBC's April 18, 2005, letter (Exhibit 5) stating "It was determined that the outstanding bill for your property is your responsibility to pay…"  The letter further instructed Plaintiffs to "contact Perkins & Anctil directly."  Plaintiffs telephoned HSBC for an explanation and on May 2, 2005, HSBC acknowledged that the Defendants had no legitimate reason to contact HSBC regarding the alleged debt and that the HSBC employee who wrote the April 18, 2005, letter did so "on her own."

Defendants' letter to HSBC Mortgage Corp. created the false belief in Plaintiffs that HSBC would join Defendants' demand for payment.  Thus, Defendants violated the FDCPA at 15 USC 1692j(a).

**K. Defendants Combined their Demand for Payment with a Claim of Harassment in Middlesex Superior Court, in Violation of 15 USC 1692e(7).**

15 USC 1692e(7) prohibits: "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."  Although Defendants have claimed only their letters are relevant to the instant action, the FDCPA covers litigation activities.  *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489, 131

L.Ed. 2d 395 (1995).  Therefore, Defendants' debt collection actions in Middlesex Superior Court are subject to review for FDCPA violations.

Defendants joined their demand for payment of disputed debt and collection fees with a false claim brought forward as a January 27, 2005 motion (Defendants' Exhibit 12) in the prolonged Preliminary Injunction in Aid of Arbitration in Middlesex Superior Court.  Defendants claimed that Plaintiffs harassed John Rosenthal, their client's employer, and that Plaintiffs' harassment caused their client to consider resigning as receiver for the two-unit condominium.  Defendants' client's Affidavit contains a vague and false account of the alleged harassment.  In fact, Defendants' client had resigned on January 24, 2005 (Exhibit 6), after Plaintiffs asked about the condominium's snow plow arrangements during a blizzard.  Ms. Sarkis refused all routine maintenance, including snow plowing.  Plaintiffs had contacted Mr. Rosenthal in an attempt to get the maintenance that Defendants' client refused to provide.  Plaintiffs were unaware that Defendants' client had failed to tell Mr. Rosenthal that she was acting as a receiver, that the Court Order included his company's name, and that she was using his company's resources.  Plaintiffs' only interactions with Mr. Rosenthal were brief and cordial (See Plaintiffs' Affidavit, paragraph 19).  Defendants' client's difficulties with her employer arose because she had deceived him.

Mr. Rosenthal was not present at the February 3, 2005, motion hearing and no affidavit from him was submitted.  Defendants moved the Superior Court for, and were granted, a permanent injunction preventing the Plaintiffs from speaking with Mr. Rosenthal; therefore, Plaintiffs were unable to ask Mr. Rosenthal to verify that Plaintiffs had not harassed him.   At a motion hearing on February 8, 2005, Defendants' client

added the claim that Plaintiffs harassed and caused the resignation of Alison Levins, a person Defendants' client allegedly hired to assist with management of the two-unit condominium where Plaintiffs live. Alison Levins did not appear and the Defendants did not submit an affidavit from Alison Levins.

Defendants' claims of harassment diverted attention from the unsubstantiated claim of a debt owed and reduced the hearing to an ad hominem attack on the Plaintiffs. The Motion the Defendants submitted (Defendants' Exhibit 12) is almost entirely the allegation that Plaintiffs harassed the Defendants' client's employer. Only paragraph 10 of the 22-paragraph Motion includes any information about the alleged debt and that information is vague.

Defendants' false claim that Plaintiffs' harassed parties who were not present and had not submitted affidavits was used to disgrace Plaintiffs and was combined with Defendants' motion to the Superior Court for an order of payment of a disputed debt without any evidence and without the arbitration required for dispute resolution at the two-unit condominium. Thus, Defendants violated the FDCPA at 15 USC 1692e(7).

**L. Defendants Falsely Represented their Services Rendered and Compensation for Debt Collection, in Violation of 15 USC 1692e(2)(B)**

The FDCPA at 15 USC 1692e(2)(B) prohibits the false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt".

Defendants' short, initial December 15, 2004, letter (Defendants' Exhibit 1), which appeared to be a form letter, demanded $390 for legal fees, which seems unreasonable. A recent decision suggested it was unreasonable for a law firm to charge $150 to prepare and mail a form letter. *Piper v. Portnoff Law Assocs*., 262 F. Supp. 2d

520 (E.D. Pa. 2003).  Defendants' January 11, 2005, letter (Defendants' Exhibit 7) was

their fourth letter mailed to Plaintiffs in 30 days.  With each letter, Defendants added fees

and, in the short span of one month, Defendants' fees of $1,451.42 were greater than the

alleged debt ($1,250).  The compensation to Defendants for the confusing, contradictory

letters seems too great.

        After building their fees to an amount ($1,451.42) greater than the alleged debt

($1,250), Defendants filed a Motion in Superior Court, demanding that Plaintiffs pay the

alleged debt and fees and accusing Plaintiffs of harassment.  Defendants filed a

Supplemental Affidavit of Counsel in Superior Court, asking for payment of $3,873.42 in

fees from Plaintiffs.  (Exhibit 3 of Plaintiffs' Opposition to Defendants' Motion for Leave

to File Additional Papers.)

        On April 18, 2006, Plaintiffs were provided a copy of Defendants' invoices

(Exhibit 1), along with bank statements and other records that Defendants and their client

had withheld from Plaintiffs.  The dates for the work listed in Defendants' invoices began

on December 14, 2004, and the last entry was February 15, 2006.   The total for these

invoices is $7,798.25, with $7,183.25 of that amount allegedly unpaid.  Defendants' total

for this set of invoices is more than twice the yearly budget of $160 per unit per month at

the two-unit condominium.

        The total amount Defendants expect may be $13,123.09; Plaintiffs are not sure

whether charges stated in the letters, in the Superior Court Supplemental Affidavit of

Counsel, and in the Invoices include any duplications.  The Defendants claim their client

retained them "…for the limited purpose of collecting a delinquent condominium

assessment…" and that they "…took limited action to that end."  The amounts

Defendants have charged seem to be extraordinary compensation for their debt collection actions against the Plaintiffs.  Further, the largest amount, the total of the invoices, was revealed to the Plaintiffs less than one month ago, despite Plaintiffs' repeated requests for clarification of Defendants' role (e.g., Exhibit 7; Exhibit 8, #7).  These fees are so high that a condominium homeowner might be frightened into paying unjust debt in order to avoid the exorbitant debt collection fees.

The Defendants' extensive invoices came as a surprise to Plaintiffs, given the statements of Defendant Perkins and Daddario, in each of their Affidavits at paragraph 12, suggesting they do not expect any additional compensation from Plaintiffs.  Upon closer reading, however, these statements are ambiguous, with Perkins stating "With the exception of my normal legal fees…" and Daddario stating "With the exception of my usual salary as an employee of Perkins & Anctil…"

Further, a review of Defendants' Supplemental Affidavit submitted to Middlesex Superior Court and of the Invoices Plaintiffs received on April 18, 2006, indicates that Defendants maintained a relationship with Attorney Douglas Troyer, of Marcus, Errico, Emmer, & Brooks, the firm representing the owners of the second unit in the two-unit condominium where Plaintiffs live, that extends beyond their self-described "…limited purpose of collecting a delinquent assessment…"  (See Plaintiffs' Opposition to Defendants' Motion for Leave to File Additional Papers, p. 2-4, for a description of Defendants' relationship to Douglas Troyer and the owners of the second unit in the two-unit condominium.)  Defendants' invoices (Exhibit 1) indicate the Defendants consulted with Douglas Troyer on twenty-one occasions during their year-long involvement for the "limited purpose of collecting a delinquent condominium assessment."

Plaintiffs asked Defendants' client for clarification of Defendants' role (Exhibit 7, 8) but received no reply.  Further, because of his extended involvement in the Middlesex Superior Court, Defendant Daddario is listed as an attorney of record in the MA Appeals Court and MA Supreme Judicial Court; Plaintiffs have been required to submit their appeals documents to Defendant Daddario and on January 18, 2006, Plaintiffs wrote Defendant Gary Daddario to ask him to clarify his involvement.  Defendant Daddario's January 23, 2006, reply is attached as Exhibit 9.

Defendants have misrepresented their services and compensation.  Thus, Defendants violated the FDCPA at 15 USC 1692e(2)(B).

**M. Defendants Breached Implied Covenant of Good Faith and Fair Dealing**

Defendants assert that this part of Plaintiffs' Complaint is misplaced because this claim applies only to breached contracts under MA law.  Defendants further assert they have no contractual relationship with the Plaintiffs.  Plaintiffs take issue with Defendants' position for two major reasons.

First, Defendants do have obligations to Plaintiffs for their debt collection activities.  Defendants claim they were retained by their client for the purpose of debt collection.  Plaintiffs are 50% owners of the two-unit condominium, however, and all contractual relationships the Defendants' client created as receiver for the two-unit condominium must carry equal obligations to the Plaintiffs and to the owners of the second unit.   The Defendants' client has resigned as receiver of the two-unit condominium and the Defendants have over $7,000 in invoices they claim are unpaid. To whom are the Defendants responsible for the performance and work products they claim warrant payment of over $7,000?  The only fair answer is that the Defendants have

obligations to the Plaintiffs and to the owners of the second unit.  Similarly, any business entity with whom the Defendants' client entered into a relationship on behalf of the two-unit condominium has obligations for their performance and work products equally to the Plaintiffs and the owners of the second unit.  Without obligations to condominium unit owners in proportion to their share of ownership, business entities can enter into contracts for fraudulent purposes with persons whose role at the condominium is transient and Plaintiffs or other unit-owners can be forced to pay blindly for fraudulent contracts that are ostensibly for the benefit of the unit-owners.

Second, pursuant to 28 USC 1367, a Court has supplemental jurisdiction, i.e., jurisdiction to hear and determine a claim that arises from the same transaction or occurrence that is properly before the Court, even when the Court would not otherwise have jurisdiction.   Because this Court has jurisdiction over the FDCPA claims, the Court also has jurisdiction over a related claim of breach of good faith and fair dealing.

The Defendants have committed egregious breaches of the implied covenant of good faith and fair dealing.  Defendants have acted in bad faith, have failed to cooperate with Plaintiffs, and have failed to perform debt collection work with due care.  Defendants have violated the principle of fair dealing especially with regard to disclosure.  All parties affected by Defendants' debt collection work should have been made aware of material facts.  Defendants failed to disclose to Plaintiffs their extensive contact with attorneys for owners of second unit and their prior relationship with Marcus, Errico, Emmer, & Brooks; refused to allow Plaintiffs' the access to condominium records that was allowed owners of the second unit; failed to disclose that their client had paid most of the condominium fees to herself; failed to disclose that owners of the second unit

had not paid fees that were demanded of the Plaintiffs; and failed to disclose that they

were holding unpaid invoices over $7,000.   Defendants have caused Plaintiffs to be

vulnerable to the loss of their savings to unjust condominium assessments and to the loss

of their home through foreclosure if Plaintiffs question the unjust charges.

At the January 4, 2006, Settlement Conference, this Court ordered Defendants to

turn over the condominium records (Transcript, p. 16, lines 7-8).   Defendants claimed

they did not have the records.  Defendants' own invoices (Exhibit 1, last p.) show that

Defendant Daddario subsequently participated in a meeting in which the condominium

records were handed over to a new set of attorneys, on Feb 15, 2006.  The new attorneys

wrote an improper debt collection letter to Plaintiffs and their mortgage company

demanding over $33,000 in alleged delinquent fees, and raised the monthly fee from

$160 to $1,840.  Despite the exorbitant monthly fee, no maintenance of the condominium

grounds and exterior has begun.

**N. Defendants Have Not Shown Lack of Intent or Bona Fide Error**

The FDCPA, section 813(c) lists two acceptable defenses to violations:

 A debt collector may not be held liable in any action brought under this title if the debt
collector shows by a preponderance of evidence that the violation was not intentional and
resulted from a bona fide error notwithstanding the maintenance of procedures
reasonably adapted to avoid any such error.

The Defendants state in their Affidavits, paragraph 4, that if the Court finds a

violation of the FDCPA, the violation "…was both unintentional and the result of an

inadvertent error."  The Defendants, in their Motion to Dismiss and their Answer, did not

claim lack of intent and bona fide error and Defendants cannot establish lack of intent or

bona fide error by merely asserting these defenses in their Motion for Summary

Judgment. The Defendants have not established that the preponderance of evidence supports lack of intent and careful procedures to prevent errors.

Further, Plaintiffs are not required to establish Defendants' intent. Because the FDCPA is strict liability statute, persons seeking relief need not show intentional conduct on the part of debt collectors. *Russell v. Equifax A.R.S., 74* F.3d 30 (2d Cir. 1996).

**O. Defendants' Documents Are Presented In Bad Faith and For Delay**

Defendants' Motion for Summary Judgment and supporting documents are presented in bad faith and for the purpose of delay, which is prohibited and subject to sanctions including monetary damages for Plaintiffs' costs and a judgment of contempt, according to Federal Rules of Civil Procedure Rule 56(g). Defendants have repeated the arguments presented in their previous documents and have made false and misleading statements in the documents they have submitted.

## V. CONCLUSION

Defendants have not established a sufficient legal or factual basis for their Motion for Summary Judgment. The Defendants' multiple violations of the FDCPA are clear and egregious. Defendants violated the FDCPA by using false, misleading, and deceptive means to attempt to collect an alleged debt; contradicting the validation notice; engaging in conduct that harassed, oppressed, and abused Plaintiffs; threatening to take action that could not legally be taken and was not intended to be taken; and engaging in improper communication with third parties. Defendants' actions also constituted a breach of good faith and fair dealing. Partial summary judgment on the question of liability should be awarded in favor of the Plaintiffs on these violations. Plaintiffs request that damages and costs be determined at a trial before jury.

**WHEREFORE,** the Plaintiffs respectfully request that this Honorable Court:

A.  Deny Defendants' Motion for Summary Judgment in its entirety;

B.  Allow Plaintiffs' their reasonable expenses incurred in response to  Defendants' Motion as provided in Federal Rule 56(g);

C.  Consider whether Defendants should be adjudged guilty of contempt as provided in Federal Rule 56(g);

D.  Grant Plaintiffs' Motion for Partial Summary Judgment on the question of liability for all counts of their Complaint and allow Plaintiffs to proceed with discovery and trial for assessment of damages and costs of bringing this action;

E.  In the alternative, allow Plaintiffs to proceed with discovery and trial for any counts of the Complaint not resolved in Plaintiffs' favor;

F.  Appoint a competent attorney as class counsel to identify and represent the class of persons who are or have been the targets of Defendants' violations of the Fair Debt Collection Practices Act; and

G.  Take any and all other actions judged to be in the interest of justice.

Respectfully submitted,

*/s/ Diane Scott-Jones*
Diane Scott-Jones, Pro Se
scottjon@bc.edu
392 Boylston Street, Newton, MA 02459
617-558-3522

*/s/ John E. Jones, Jr.*
John E. Jones, Jr., Pro Se
johnejonesjr@comcast.net

May 8, 2006