COMMONWEALTH OF MASSACHUSETTS    **Exhibit 2**

MIDDLESEX, SS                    SUPERIOR COURT
                                 CIVIL DOCKET MICV2003-05103

```
QING LU AND YU CHEUNG, INDIVIDUALLY    )
AND DERIVATIVELY on behalf of 392-394  )
BOYLSTON COMMONS CONDOMINIUM TRUST,    )
             Plaintiffs                )
                                       )
       v.                              )
                                       )
DIANE SCOTT-JONES AND JOHN E. JONES, JR.,)
INDIVIDUALLY AND AS TRUSTEES OF 392-394 )
BOYLSTON COMMONS CONDOMINIUM TRUST,    )
             Defendants                )
                                       )
```

BEFORE: Kern, J.
Friday, July 22, 2005
Cambridge, Massachusetts

**HEARING ON EMERGENCY MOTION**

ERIKA GOLDBERG, CVR-CM
OFFICIAL COURT REPORTER

25

away, moved the location of the retaining wall that was to be built in the back but which shifted over to our side. That's a minor thing. It seems to us, and we've asked again and again but to no avail, that this could be resolved so that we could move on and live like normal people with our yard and our house in a better condition.

    THE COURT: All right. I am going to interrupt you now. It's been thirty-five minutes, and I wish to give the other side an opportunity at this time.

    MS. SCOTT-JONES: Okay, thank you very much, Your Honor.

    THE COURT: Counsel.

    MR. DADDARIO: Thank you, Your Honor.

    We would like to be respond to some of what's been said and then we have only brief comments to make with respect to the motion at hand.

    We just heard, Your Honor, various allegations against city employees, developers, a receiver, landscapers, survey engineering companies, and so on. And the reality is that none of these persons or entities are on trial today. That's not the basis of the motion at hand, particularly with respect to the receiver. There has been on more than one occasion motions before the Court filed by the Joneses to remove the receiver, and in each instance the Court has reviewed the matter and

26

1  determined that the receiver did not need to be removed and that
2  the receiver was doing the best she could under the
3  circumstances. The receiver is trying to care for the
4  condominium, assessments that are being levied are not being
5  paid. That is her largest problem: The Association has no money
6  to speak of.
7      When we talk about landscaping and gutter cleaning
8  and other issues, I'm informed by the receiver those things
9  simply cannot be done because the money does not exist to pay
10 anybody to do those things.
11     The receiver's bills are not getting paid. The legal
12 bills for the Association are not being paid. She has to work
13 within some very tight constraints.
14     As far as documentation, it's been provided, it's been
15 reviewed. Additional documentation can be viewed as the
16 condominium statute says at an office where the records for the
17 condominium are kept, which in this case would be the receiver's
18 office.
19     The receiver, in February of this year, was on the
20 stand. Judge MacLeod at that time was on the bench, and again
21 the receiver's performance and the status of everything the
22 receiver was working on was an issue and was reviewed. And at
23 that time, Judge MacLeod issued an order. And so, with respect
24 to details of the receiver's performance on various issues, and the

27

1  allegations of various parties, I don't think there's going to be
2  any real resolution today or any time soon. I don't think the
3  parties are going to agree. But the truth of the matter is that they
4  don't have to. And at this point, I will present to you my
5  response to the motion that is before the Court. The motion is an
6  emergency motion to stay various orders of the Court. Of
7  particular concern with respect to my representation of the
8  receiver is the Court's February 15th order which required the
9  defendant to remit payments of assessments that had been levied.
10             To the extent that the Joneses are looking for a stay
11 of that order, I believe that they need to provide grounds
12 sufficient to warrant a stay. And to be perfectly honest, I don't
13 think that there are any grounds whatsoever. I don't think there
14 can be. Before the February 15th order was issued, Judge
15 MacLeod sat through two days of hearing. The Joneses were
16 present at both. They spoke at both. The receiver presented and
17 took the stand at those hearings and the judge issued an order
18 that's very much in line with well established Massachusetts law.
19             As far as there being any chance of that order being
20 overturned on appeal, I don't see that. The order was quite
21 simple: It said that assessments that had been levied to these
22 condominium unit owners must be paid. That's well settled.
23 The condominium statute provides for it. Section 7 says there
24 can be no offset or withholding. Section 682 requires

28

condominium owners to make payment both of assessments levied and any costs, attorney's fees, court costs, collection costs, or otherwise that an association might incur should they have to chase a condominium unit owner to secure payment. So there's really an automatic lien that occurs pursuant to the statute at the time the assessment becomes due.

To the extent that there has been disagreements, or conflict about the interpretation of the statute, the courts have been consistent in their holdings in Massachusetts about how this is to be interpreted. The Massachusetts Supreme Judicial Court in the case of Prince versus Prassa and -- actually, we can quote this directly, said in their decision that, "A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation." And, essentially, they found that condominium assessments should be treated by condominium unit owners like taxes, meaning that they should be paid regardless of your grievance, and regardless of whether or not your grievance appears to be a legitimate one. And then you can thereafter seek reimbursement if you can demonstrate an entitlement to the same.

And the specifics of that legal principle two years later were looked at by the Massachusetts Appeals Court, and the

29

1  Appeals Court basically made the same decision, and a little bit
2  more specifically addressed a further issue which is, what about
3  if you were going to question the legality of the assessment. And
4  in the case of Blood versus Edgars, the Appeals Court, two years
5  after the decision I just read from, the Supreme Judicial Court
6  found that a unit owner may not oppose an assessment by
7  refusing to pay it. Again, the Appeals Court's advice was to pay
8  an assessment. And the Appeals Court said, thereafter, a judicial
9  determination regarding the legality of the assessment, and
10 suitable reimbursement, may be sought, meaning again to clarify
11 that it's clear, as in the case of taxes, if you're a condominium
12 unit owner, and you get assessed by the condominium, you pay
13 the assessment. And if you've got a grievance associated with
14 that, or you believe that you paid an assessment that you didn't
15 have to pay, you're entitled after you've remitted payment as a
16 separate matter to seek reimbursement if you can demonstrate
17 that you're entitled to it.
18       And so I think again to reiterate there aren't really
19 grounds for this motion. I don't see an Appeals Court
20 overturning Judge MacLeod's very specific order after two days
21 of hearing for these condominium unit owners to simply pay
22 assessments that have been levied. And to the extent that there
23 are legitimate issues that need to be resolve with respect to those
24 assessments, the Joneses have rights. And they can pursue those

30

1  rights according to Massachusetts law thereafter.
2    And I would just note finally, Your Honor, as an
3  aside, that this emergency motion to stay an order that was issued
4  on February 15th was filed on April 29th. So I don't know that I
5  would consider it timely. But, again, that's sort of a side issue.
6  But at this point I don't believe that Judge MacLeod's order
7  should be stayed, and I believe it's only going to be through the
8  payment of condominium assessments that any of the issues at
9  this condominium are going to be able to be addressed.
10   Thank you, Your Honor.
11   THE COURT: Okay. Thank you, counsel.
12   MR. TROYER: Good morning, Your Honor.
13   I actually agree with everything that Mr. Daddario
14 just indicated to the Court. If I could, I would represent it the
15 same way, but I don't need to.
16   In addition, I represent the plaintiffs, the other trustee
17 unit owners. This is the third attempt, in essence maybe even the
18 fourth attempt, to have this receiver who was, in our opinion,
19 rightfully appointed removed. It has been denied on many
20 occasions. Judge Gants denied it in December. Judge MacLeod
21 re-heard it in February and denied it then as well after two days
22 of testimony.
23   The complaints against the receiver are kind of ironic
24 to us, given the fact that the receiver has, since the day that she's

Exhibit 3

**392-394 BOYLSTON COMMONS**
P. O. BOX 95022
NEWTON, MA 02495
617/241-7779

March 24, 2005

Dear Unit Owners:

In preparation for upcoming expenditures, please note the following:

- Effective May 1, 2005 the monthly condominium fee will increase to $320/month. The basis for the increase relates to increased operating expenses relative to the supervision and implementation of moving forward with the clean-up of the rear yard. Please see attached revised budget.
- Each unit is being assessed $25,137.50 to cover the cost associated with the clean-up of the rear year. The assessment is due and payable on or before May 1, 2005. Please see attached executed proposal. Upon receipt of funds, the contractor will place this project on their schedule. Please remit payment in full to 392-394 Boylston Commons and mail to the above address.

Failure to remit the assessment will necessitate a $10/day fine after May 1, 2005 to the unit owner for each day there is a balance.

In addition to managing routine association matters, below is a status report for the month of March regarding matters pertaining to the Association:

- Four telephone conversations with Attorney Daddario regarding pending legal matters associated with collection action, motions filed in court
- Two telephone conversations with Mayor Cohen regarding the status of the clean-up of the rear yard
- Three telephone conversations with City of Newton verifying Receivership and correct address to send all future correspondence, as well as update on status of clean-up
- Deposit monthly condo fees
- Pay invoices
- Reconcile bank statement
- Discussion with contractor regarding clean-up of rear yard
- Execution of contract associated with clean-up of rear yard

If you have any questions regarding the above, please contact me.

Sincerely,

Sheryl Sarkis, Receiver

**CERTIFIED MAIL**

392 Boylston Street<br>
Newton, MA 02459<br>
617 558-3522

**Exhibit 4**

February 15, 2005
VIA FACSIMILE 732 352-7536

Tax Department
HSBC Mortgage Corp.
2929 Walden Ave.
Depew, NY 14043

Dear Tax Department:

We write to inquire about a lien notice you may have received regarding our mortgage (loan number 3742910).

Please send us a copy, via fax to 617 552-6137 and via mail to the above address, of any documents you have received. In addition, please let us know what procedures you follow upon receipt of a lien notice, the time line for any procedures, and the name and contact information for the person responsible for your handling of these procedures.

We are concerned about the possibility of an unjustified action against us and we would appreciate a prompt response. Thank you in advance for your assistance.

Sincerely,

_[signature]_                                                  _[signature]_
Diane Scott-Jones, Pro Se                          John E. Jones, Jr., Pro Se



**Exhibit 5**

April 18, 2005

John E Jones
Diane Scott Jones
392 Boylston Street
Newtown MA 02459

Dear John E Jones and Diane Scott Jones

Subject: Mortgage Account Number 374291-0

Enclosed, please find a copy of the paperwork that was sent to HSBC by the law office of Perkins & Anctil, P.C. When this paperwork was received by HSBC, a workorder was generated to look into this lien notice further. It was determined that the outstanding bill for your property is your responsibility to pay therefor no further action was taken after our initial research. If you have any questions in regards to the enclosed paperwork, please contact Perkins & Anctil directly.

If you have any questions, please call us at (800)338-4626(toll free) or (716)651-5000. Our automated line is available 24 hours a day, 7 days a week. Our Customer Service Representatives are available Monday through Friday, 7:00 a.m.-11:00 p.m. and Saturday, 7:00 a.m.-6:00 p.m. Eastern time.

Your mortgage information is also available online at us.hsbc.com. Please visit our website; select Personal Internet Banking and either Sign-Up or Log-In.

Sincerely,

Andrea Failla
Mortgage Servicing
Tax Escrow Department

HSBC Mortgage Corporation (USA)
2929 Walden Avenue, Depew, NY 14043



# Exhibit 6

Subject: RE: Your arrangements for Blizzard Conditions
From: "Sheryl Sarkis" <SSarkis@meredithmanagement.com>
Date: Mon, 24 Jan 2005 10:06:21 -0500
To: <johnejonesjr@comcast.net>
CC: "Diane Scott-Jones" <scottjon@bc.edu>, "Qing Lu" <qinglu@comcast.net>, "Doug Troyer" <dtroyer@meeb.com>

Please be advised that I am resigning as Receiver effective today. Please start shoveling yourself out.
Sheryl Sarkis

-----Original Message-----
From: johnejonesjr@comcast.net [mailto:johnejonesjr@comcast.net]
Sent: Sunday, January 23, 2005 7:01 AM
To: Sheryl Sarkis
Cc: Diane Scott-Jones; Qing Lu; John Jones; Doug Troyer
Subject: Your arrangements for Blizzard Conditions

392 Boylston St.
Newton, MA 02459

January 23, 2005

Sheryl A. Sarkis of Meredith Management Corporation
One Bridge St.
Suite 300
Newton, MA 02458-1101

Dear Ms. Sarkis:

We are writing to you in your capacity as Receiver for 392-394 Boylston Commons Condominium. As you know, we represent ourselves in the matter Qing Lu and Yu Cheung v. Diane Scott-Jones and John E. Jones, Jr.

We are inquiring about your arrangements for snow removal today. As you know we have experienced an extraordinary amount of snow overnight. Our health, safety, and livelihood depend on your arrangements for thorough and timely snow removal today.

Please contact us as soon as possible. Feel free to call us at home at 617-558-3522.

Sincerely,

Diane Scott-Jones and John E. Jones, Jr.


cc:
John E. Rosenthal
Qing. Lu
Douglass Troyer

**Subject:** FW: RE: SECOND REQUEST: Your arrangements for Blizzard Conditions
**From:** johnejonesjr@comcast.net
**Date:** Tue, 25 Jan 2005 01:31:47 +0000
**To:** scottjon@bc.edu (Diane Scott-Jones)

---------- Forwarded Message: ----------
**From:** "Sheryl Sarkis" <SSarkis@meredithmanagement.com>
**To:** <johnejonesjr@comcast.net>
**Subject:** RE: SECOND REQUEST: Your arrangements for Blizzard Conditions
**Date:** Mon, 24 Jan 2005 15:25:48 +0000

Please start shoveling. I have officially resigned as of today.
Sheryl Sarkis

-----Original Message-----
**From:** johnejonesjr@comcast.net [mailto:johnejonesjr@comcast.net]
**Sent:** Monday, January 24, 2005 5:36 AM
**To:** Sheryl Sarkis
**Cc:** John Jones; Diane Scott-Jones; Qing Lu; Doug Troyer
**Subject:** SECOND REQUEST: Your arrangements for Blizzard Conditions

392 Boylston St.
Newton, MA 02459

January 24, 2005

Sheryl A. Sarkis of Meredith Management Corporation
One Bridge St.
Suite 300
Newton, MA 02458-1101

Dear Ms. Sarkis:

We are writing to you in your capacity as Receiver for 392-394 Boylston Commons Condominium. As you know, we represent ourselves in the matter Qing Lu and Yu Cheung v. Diane Scott-Jones and John E. Jones, Jr.

Yesterday we sent you the letter below via electronic mail. We also called you early yesterday morning. We called both telephone numbers you instructed us to use. You did not reply to the letter or the telephone calls and no one came to remove the snow in front of our unit.

It does appear, however, that at some point someone dug a path from Qing Lu's unit to the street. Please provide us with the proper information so we will know when the snow removal contractor you have hired will come to the Condominium to dig out the driveway. Our health, safety, and livelihood depend on your arrangements for thorough and timely snow removal today.

Please contact us as soon as possible. Feel free to call us at home at 617-558-3522.

**Exhibit 7**

VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL
392 Boylston St.
Newton, MA 02459

December 13, 2004

Sheryl Sarkis, Receiver
392-394 Boylston Commons Condominium
c/o Meredith Management
One Bridge St., Suite 300
Newton, MA 02458

Dear Ms. Sarkis:

We received your December 13, 2004, electronic mail correspondence. We are disappointed that, after your repeated refusal to meet with the two unit-owners since your June 24, 2004, appointment, you will not accommodate our request for a meeting date that fits our schedules. In your December 2, 2004, email to us you stated that "both parties must be present" at the meeting. In your December 13, 2004, email, however, you assert that the meeting will occur "regardless of who is present." Because we are a two-unit condominium, your refusal to schedule the meeting when we can attend has the same outcome as your scheduling a meeting with only Qing Lu, the owner of the second unit. We again ask you to hold the meeting on a date we can attend.

We have asked several important questions that you have not answered. We are enclosing a copy of our December 12, 2004, letter and we ask you to reply to all items.

Regarding your statement that you have initiated a collection action against us, please provide us the name and contact information for the "outside counsel" and the "attorney for collection". You claim to have forwarded our "account" to these attorneys but we have no document from you that could be construed to be a statement of our account. You have refused to send any documentation that shows clearly what services the condominium received for the $2,500 charge you asked us to pay. Given your refusal to provide clear, detailed information in a professional manner, any collection action is grossly unfair. We respectfully ask you to halt the collection action and to provide more information about your past actions and your plans for our condominium.

We have acted in good faith since your June 24, 2004, appointment and we ask you to perform your duties as receiver in a professional and respectful manner.

Sincerely,

Diane Scott-Jones          John E. Jones, Jr.

cc: John Laymon

**Exhibit 8**

392 Boylston St.
Newton, MA 02459
617-558-3522

February 19, 2005

Sheryl A. Sarkis
Receiver, 392-394 Boylston Commons Condominium
P. O. Box 95022
Newton, MA 02495

Dear Ms. Sarkis:

We received your February 18, 2005, email, and anticipate receiving the documents by February 25.

As you recall, on December 23, 2004, Judge Ralph Gants Ordered you to "provide both parties with copies of any correspondence received from any party or sent by her to any party." We have yet to receive any information from you as a result of this Order. Please send a copy of your records as soon as possible.

We do not need copies of printed electronic mail messages from us to you or from you to us. We do, however, need a copy of all other correspondence and documents, including printed electronic mail messages from you to others and to you from others.

To assist you, we are providing the following listing. We request copies of all correspondence and documents, including but not limited to the following:

1. The plan The Decelle Group prepared for "submission to the conservation commission and building department," as stated in the August 1, 2004, proposal you signed.

2. All bank statements as you promised in your February 18, 2005, email.

3. The 2003 and 2004 tax documents you have filed.

4. All correspondence with Commerce Insurance and with Alan Wilde.

5. Letter of appointment and letter of resignation for Property Manager Alison Levins. Also, any reports Alison Levins completed or began for you or others related to our condominium.

6. All correspondence with Vincenzo Bonaccorsi, including his proposal to remove solid waste.

7. All correspondence with, Charles Perkins, Gary Daddario, and the law firm Perkins & Anctil, including letters retaining this law firm and letters reporting us for debt collection.

8. All correspondence with City of Newton employees and officials.

9. All correspondence with Attorney Douglas Troyer.

In addition, please let us know what you plan to do to communicate regularly with both unit owners and to provide copies of documents related to our condominium on an ongoing basis. We look forward to hearing from you within the next few days.

Sincerely,

*Diane Scott-Jones*  
Diane Scott-Jones, Pro Se

*John E. Jones, Jr.*  
John E. Jones, Jr., Pro Se

cc:
Douglas Troyer

**Exhibit 9**

**PERKINS & ANCTIL, P.C.**
ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

GARY M. DADDARIO

SCOTT C. OWENS

January 23, 2006

Diane Scott-Jones
John E. Jones, Jr.
392 Boylston Street
Newton, MA 02459

Re: SJ-2005-162
    Middlesex Superior Court 03-5103

Dear Diane Scott-Jones and John E. Jones, Jr.:

I am in receipt of your letter dated January 18, 2006 and I am writing to respond. I thank you for the opportunity to review and clarify with respect to the issues of your letter.

First and foremost, I apologize for any confusion you feel as a result of what you believe to be contradictory statements about my role in these affairs. It has never been my intention to confuse or otherwise harm you. We have been introduced under unpleasant circumstances and have remained embroiled in the same. Although you have likely formed a contrary opinion, the truth is that I am a reasonable person. Although bound to perform my job, I strive to do so in accord with applicable law and, given the opportunity, I avoid or resolve conflict.

My role in the Superior Court proceedings has always been merely representation of the Court-Appointed Receiver. Prior to being retained by the Receiver to collect the $1,250.00 assessment for the Decelle Group topographic survey plan, neither I nor this firm had any knowledge of 392-394 Boylston Commons or the affairs thereof. That having been said, I am called upon, almost exclusively, to represent condominium associations. As a result, by force of habit, I refer to my clients by their association name or by the term "the association". In this unique instance, I represented the Court-Appointed Receiver appointed to act on behalf of the association. Although the terminology can be tedious and/or confusing, I never intended to convey confusion. If any statement I have made, written or verbal, may be interpreted as otherwise, I can only apologize for an inadvertent lack of complete clarity.

Diane Scott-Jones
John E. Jones, Jr.
January 23, 2006
Page -2-

      As to my knowledge of the operations, finances and records of 392-394 Boylston Commons, I also wish to be clear. As counsel to the Court-Appointed Receiver, I received copies of documentation verifying the source of the $1,250.00 assessment (e.g. copy of a letter issued by the Receiver to the unit owners, Decelle Group invoice) and copies of other documents that the Receiver issued to the unit owners (e.g. monthly status reports, Receiver-prepared budget). I neither requested nor received any other "records of the association". Rather, any other information I have received regarding the association or the records or finances thereof has been received, verbally, from the Court-Appointed Receiver. I do not possess the association's records at present and I have not in the past. I have never desired to become involved in the operations of 392-394 Boylston Commons and I have never done so.

      Please note that I have not filed an appearance in the Appeals Court or the Supreme Judicial Court. My theory as to how my name appears therein is that the information existing in the Superior Court was used to initiate the contact list for the appellate files. As you know, Sheryl Sarkis has been withdrawn as the Court-Appointed Receiver. As a result, my involvement with the Superior Court proceedings or appellate proceedings resulting therefrom has also come to an end. You need not provide me with copies of documents relative to these matters.

      I hope that I have now clarified any previous confusion. I wish to convey that you may contact me should you need clarification relative to any other aspect of my involvement. In such an instance, to the extent I am able, I will provide an explanation.

Respectfully,

Gary M. Daddario

c:   Eric Wetzel, Supreme Judicial Court
     Attorney Charles A. Perkins, Jr.