UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10350JLT

_____
                                                   )
DIANE SCOTT-JONES and JOHN E. JONES, JR.,          )
INDIVIDUALLY AND AS TRUSTEES OF THE 392-394        )
BOYLSTON COMMONS CONDOMINIUM TRUST,                )
    Plaintiffs                                        )
v.                                                 )
                                                   )
CHARLES A. PERKINS, JR., GARY M. DADDARIO, and     )
PERKINS & ANCTIL, PC                               )
    Defendants                                        )
_____)

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS OF RECORD IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**NOW COME** the Plaintiffs in the above-captioned matter and hereby respectfully submit, pursuant to Local Rule 56.1, this Statement of Material Facts of Record in opposition to the Defendants' Motion for Summary Judgment and in support of Plaintiffs' Motion for Partial Summary Judgment.

The Defendants' Statement of Material Facts of Record contains false, incomplete, and misleading statements regarding their debt collection actions and actions of their client Sheryl Sarkis, who was appointed receiver for the two-unit condominium where the Plaintiffs own and live in one unit. The Plaintiffs address each of the numbered paragraphs in Defendants' Statement of Material Facts, and state that the following is an accurate account of material facts:

1. Defendants state they were retained by Sheryl Sarkis "to collect a delinquent assessment from the Plaintiffs." Defendants refer to Exhibit 1A as evidence of the purpose of their hire but Exhibit 1A is the Middlesex Superior Court Order appointing the Defendants' client Sheryl Sarkis receiver for the two-unit condominium and has no bearing on whether Sheryl Sarkis hired the Defendants to collect a delinquent assessment from the Plaintiffs. Ms. Sarkis refused to provide Plaintiffs with a copy of the agreement to retain the Defendants, despite Plaintiffs' requests (Exhibits 7 and 8).

Defendants filed a motion for Ms. Sarkis' withdrawal as receiver and, at a December 15, 2005, Superior Court hearing, argued successfully against Plaintiffs' right to see Ms.

1

Sarkis' records and against Ms. Sarkis' providing the detailed reports to the Court required of receivers. On February 15, 2006, according to Defendants' invoices (last p., Exhibit 1 to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment) Defendant Daddario and Ms. Sarkis transferred the records to a new receiver, Peter Zimmerman. Plaintiffs have now been allowed to look at Ms. Sarkis' records and there is no document retaining the Defendants for any purpose or any record of telephone or electronic mail communication about the Defendants' hire. See Plaintiff Scott-Jones' Affidavit, paragraph 20.

Defendants state that their client Sheryl Sarkis was appointed receiver pursuant to a Superior Court action filed by Marcus, Errico, Emmer, & Brooks for owners of the second unit in the two-unit condominium. Defendants failed to state that the action was filed as a Preliminary Injunction in Aid of Arbitration, not as an action to appoint a receiver. Plaintiffs have appealed the Superior Court orders to the MA Supreme Judicial Court. After the Preliminary Injunction was granted, owners of the second unit refused to begin arbitration and moved the Superior Court for the appointment of the Defendants' client Sheryl Sarkis as receiver to control the two-unit condominium. See Plaintiffs' Affidavits, paragraphs 6-9.

2. Defendants state they "have never been counsel" to the two-unit condominium but in other documents, Defendants have claimed they are counsel for the two-unit condominium. For example, in Defendants' Exhibit 7 is the statement "I represent the Board of Trustees of the 392-392 Boylston Commons Condominium" and in Defendants' Exhibits 10 and 11 is the statement "…this office represents the 392-394 Boylston Commons Condominium Association…"

3. Defendants state they have never been responsible for or associated with the "operation" of the two-unit condominium. Defendant Daddario, however, has spoken about the operation of condominium in Superior Court on February 3, February 8, July 22, and December 15, 2005 (transcripts available). Defendants' client Sheryl Sarkis attended the hearings only when the Court required her presence, on February 8 and December 15, 2005. At the other two hearings, Defendant Daddario spoke for the receiver. Even when Ms. Sarkis was present, Defendant Daddario spoke as if he had first-hand knowledge of the operation of the two-unit condominium.

4. Defendants state their only debt collection action was "…drafting of the letters…" in their Exhibits. In paragraph 11, Defendants contradict this statement by stating the letters "…constitute their only actions (outside of Court)…" Defendants' Court actions began on January 26, 2005, when Defendants filed the "Court-Appointed Receiver's Motion for a Permanent Injunction and Order Requiring Payment" (Defendants' Exhibit 12) The Defendants falsely accused the Plaintiffs of harassment of John Rosenthal, the president of the property management firm where Defendants' client, Sheryl Sarkis, worked. See Defendants' Affidavits, paragraph 19.

5. Defendants refer to a vague, undocumented statement in their client Sheryl Sarkis' Affidavit, paragraph 8, to support Defendants' false statement that the alleged debt was

explained to the Plaintiffs.  Plaintiffs' Exhibits 7 and 8 are examples of letters Plaintiffs wrote to Ms. Sarkis asking for information Ms. Sarkis refused to provide.  As noted in Plaintiffs' December 13, 2004, letter to Ms. Sarkis (Plaintiffs' Exhibit 7), Ms. Sarkis met only with the owners of the second unit and refused to meet with Plaintiffs during her entire 18 months tenure as receiver.

6. Defendants and their client have repeatedly made vague, false statements about the environmental problems at the two-unit condominium resulting from the owners of the second unit causing a massive deposit of illegal solid waste on the common area, in an effort to build up a steep slope on the west side yard near their unit.  See Defendants' Affidavits, paragraph 6.  This deposit of illegal solid waste was accomplished in the Plaintiffs absence, without their permission, and should have been addressed in arbitration as required in the condominium declaration of trust. Plaintiffs have attempted to address the refusal of arbitration in the MA Appeals Court and Supreme Judicial Court.  There is no requirement for a topographic land survey in the orders for the removal of the illegal solid waste.

7. Defendants refer to Exhibit B of their client Sheryl Sarkis' Affidavit, which includes Ms. Sarkis' October 12, 2004, letter.  That letter makes no reference to a topographic land survey, which can be done only by a licensed land surveyor.  The letter refers repeatedly to an "engineer."  The letter makes no reference to the illegal solid waste and no reference to the orders for its removal.

8. This statement repeats statement  #5.

9. The Defendants, as debt collectors, never provided verification of the debt to Plaintiffs. Their client never provided adequate explanation for the debt. After the Defendants and their client transferred the records to a new receiver, the Plaintiffs were allowed to review the records that allegedly were transferred.  On April 7, 2006, Plaintiff Scott-Jones spent three hours reviewing the records allegedly transferred.  There is no topographic land survey in these records. See Plaintiff Scott-Jones' Affidavit, paragraph 20. There are three copies of the same invoice from "The DeCelle Group, dated 8/30/04, each with different handwritten notes, but the actual survey itself was not in the records.

10. This statement repeats part of # 1.  Again, Plaintiffs have never seen any statement related to the reason for retaining the Defendants.  Neither the Defendants nor their client Sheryl Sarkis will produce the document they signed when Sheryl Sarkis retained them. The records Plaintiff Scott-Jones was allowed to see on April 7, 2006, did not include the document the Defendants signed.

11. This statement is inconsistent with #4, which states the Defendants' letters were their only attempt to collect the alleged debt.  Here, Defendants' acknowledge that their actions in Court were part of their debt collection attempts.

12. Defendants failed to state the Order to pay was issued following their accusation of harassment against Plantiffs (see Defendants' Exhibit 12).  The Motion Defendants

submitted to compel payment includes only one paragraph, #10, regarding the alleged debt and does not include any reference to a topographic land survey.  The remainder of the Motion presents the allegation of harassment against the Plaintiffs.

Defendants also failed to state that Defendant Daddario submitted the Order to Superior Court, without service on the Defendants, and the Court adopted Defendant Daddario's Order without change.  See Defendant Dadario's letter to the Superior Court Clerk, Exhibit 3 of Plaintiffs' Opposition to Defendants' Motion for Leave to File Additional Papers.  Defendant Daddario states:

Pursuant to Judge MacLeod's request for the same, I am providing a proposed Order for her review and signature.  Of course, I will edit and resubmit the Order if Judge MacLeod determines that changes are necessary.

13. Defendants fail to note that the reason Plaintiffs filed the Motion to stay and requested the hearing was that their client, Sheryl Sarkis, had advanced a second "special assessment" requiring Plaintiffs to pay $25,000 for a questionable, unsigned landscaping estimate allegedly from Waverly Landscaping, a company that is a member of Defendants' trade organization, the Community Associations Institute.  Ms. Sarkis also doubled the $160 monthly condominium fee to $320 but still refused all routine maintenance.  See Plaintiffs' Exhibit 3 for Ms. Sarkis' letter.

Defendants' client, in her Affidavit, paragraph 18 and 19, states that Plaintiffs have failed to pay "additional assessments" and to pay the increase in the monthly fee but she excluded the specific amounts.  The Defendants' client also states that the Defendants were not retained to collect these fees.  Plaintiffs cannot find any record that documents the purpose for which Defendants were retained.  Further, Defendants' own invoices (Plaintiffs' Exhibit 1) show extensive work through February 15, 2006.  Finally, Defendant Daddario appeared in Middlesex Superior Court on December 15, 2005, alleging Plaintiffs' failure to pay the "additional assessment" and the increased monthly fee and stating clearly that he was retained to collect them (Transcript available, p. 19, line 21 – p. 20, line 9):

"…engineering works needs to be performed.  Some of it was.  An assessment was levied to cover that expense. It wasn't paid.  Contractors were sought for the removal of the fill.  Proposals were received. One was selected. The cost was divided.  The assessment was made. It wasn't paid.  Ms. Sarkis made a budget for the condominium, realized that the monthly fees, the regular monthly fees, were too low.  She levied an assessment to increase the regular monthly fees. Since the time the increase was made, the increase has never been paid.  She retained us to collect, because in Massachusetts the law is quite clear about the payment of condominium assessments, she retained us to collect those monies from the Joneses."

After the Defendants and their client transferred the condominium records to a new receiver, Plaintiffs were permitted to see the bank statements.  There is no deposit of $25,000 from the owner of the second unit. (See Plaintiffs' Affidavit, Paragraph 20.)

4

Defendant Daddario alleged the Plaintiffs had not paid the "assessment" ($25,000) but failed to note that the owners of the second unit had not paid.

14. Plaintiffs agree that the Complaint alleges violation of the FDCPA. Defendants incorrectly state the FDCPA is the "sole issue" of the complaint. The Complaint also alleges breach of good faith and fair dealing.

Defendants' statement that the "issues surrounding the Superior Court litigation and Plaintiffs' grievance with various other parties thereto are not relevant" is a conclusion and is not a statement of material fact. Defendants became involved in the Middlesex Superior Court case in an attempt to collect alleged debt. The MA Appeals Court and Supreme Judicial Court have recognized Defendant Daddario as having a role in Plaintiffs' appeals. See Plaintiffs' Exhibit 9, for Defendant Daddario's letter to Plaintiffs, with a copy to the MA Supreme Judicial Court, in which Defendant Daddario states "…I apologize for any confusion you feel as a result of what you believe to be contradictory statements about my role in these affairs…"

Respectfully submitted,

| | |
|---|---|
| */s/ Diane Scott-Jones* | */s/ John E. Jones, Jr.* |
| Diane Scott-Jones, Pro Se | John E. Jones, Jr., Pro Se |
| scottjon@bc.edu | johnejonesjr@comcast.net |
| 392 Boylston Street, Newton, MA 02459 | |
| 617-558-3522 | |

May 8, 2006

5