UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                    CIVIL ACTION NO. 05-10350JLT

|  |  |
|---|---|
| DIANE SCOTT-JONES and JOHN E. JONES, JR., Individually and as Trustees of the 392-394 BOYLSTON COMMONS CONDOMINIUM TRUST, Plaintiffs, v. CHARLES A. PERKINS, JR., GARY M. DADDARIO and PERKINS & ANCTIL, P.C., Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

DEFENDANTS' RESPONSE TO
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND
DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME the Defendants and hereby respectfully submit to this Honorable Court this Response to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment. As Plaintiffs combined their Opposition to Defendants' Motion for Summary Judgment with their own Motion for Partial Summary Judgment, Defendants now submit, for this Honorable Court's convenience, this combination Response and Opposition. Again, for the convenience of this Honorable Court, this document tracks the Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (hereinafter "Plaintiffs' recent filing").

I.    PROCEDURAL HISTORY

Defendants note that their argument regarding inapplicability of the FDCPA due

to condominium assessments not qualifying as consumer debt has been reiterated

throughout the pleadings for purpose of, if necessary, preservation of said argument on

appeal. As the issue has not been decided by this Circuit, Defendants are not at fault for

making this argument.

Defendants note that issue concerning the filing and service of their original Motion for Summary Judgment involved Defendants' former legal counsel, now terminated.

## II.    STATEMENT OF FACTS

Defendants hereby adopt and incorporate their original Statement of Material Facts of Record and, to the extent necessary, their Response to Plaintiffs' Statement of Material facts of Record submitted herewith.

Defendants note that their invoices, provided to Plaintiffs and submitted by Plaintiffs as Exhibit "1" in support of Plaintiffs' Motion for Partial Summary Judgment, are for all services provided to the Receiver including pursuit of a Permanent Injunction against Plaintiffs and attendance at a transition meeting at which the former Receiver, Sheryl Sarkis, provided the condominium's records and funds to the new Receiver, Peter Zimmerman.

Defendants take issue with Plaintiffs' characterization that Defendants "participated in the transfer of condominium records to Peter Zimmerman, who mailed a letter to Plaintiffs and Plaintiffs' mortgage holder, demanding payment for alleged debt." Despite Plaintiffs' long-standing and firm belief that Defendants have been in possession of the condominium's records, the same is not the case. A careful reading of Plaintiffs' own Exhibit "1" (final page) reveals that Defendants' invoice states that "Ms. Sarkis turned over all records". Further, the Second Affidavits of both Gary M. Daddario and Receiver Sheryl Sarkis and the Affidavit of Receiver Peter Zimmerman, all submitted herewith, reveal that Defendant Daddario did not possess or return the condominium's records but that, as Defendant Daddario has repeatedly stated, Receiver Sheryl Sarkis did

2

so. Moreover, the transcript submitted by Plaintiffs as Exhibit "2" in support of

Plaintiffs' Motion for Partial Summary Judgment reveals Attorney Daddario making the

following statement (See Transcript Page 26 beginning at Line 15):

> "Additional documentation can be viewed as the condominium
> statute says at an office where the records for the condominium are
> kept, which in this case would be the receiver's office."

Whatever the relationship and issues between Plaintiffs and the Receiver, it is clear that

Defendants were not the record keepers for the condominium and were not seeking to

deny Plaintiffs access to records. The Defendants' knowledge, to the extent they had

any, of the condominium's records and operations came from information provided by

the Receiver. In fact, despite Plaintiffs' allegation that "[e]ven when Ms. Sarkis was

present, Defendant Daddario spoke as if he had first-hand knowledge of the operation of

the two-unit condominium" (See Paragraph 3 of Plaintiffs' Statement of Material Facts of

Record), by way of example, the transcript submitted by Plaintiffs (Exhibit "2" to

Plaintiffs' recent filing, beginning at Page 26 Line 7 thereof) reveals Defendant Daddario

making the statement:

> "[w]hen we talk about landscaping and gutter cleaning and other
> issues, I'm informed by the receiver those things simply cannot be
> done because the money does not exist to pay anybody to do those
> things" (Emphasis supplied).

To the extent that Plaintiffs may be alleging that Receiver Peter Zimmerman took

action at the direction or request of Defendant Daddario, the same is completely denied.

As set forth in the Second Affidavit of Gary M. Daddario and the Affidavit of Receiver

Peter Zimmerman, both submitted herewith, Mr. Zimmerman's actions were not directed

or requested by Defendant Daddario. Perhaps more importantly, as set forth in the

Affidavits, Defendant Daddario neither represented Receiver Peter Zimmerman nor had any authority to direct his actions.

Plaintiffs reference another FDCPA litigation (06-10602-JLT) that they have filed against Receiver Peter Zimmerman. Defendants submit that to the extent Mr. Zimmerman took collection action against Plaintiffs, the same weighs in favor of Defendants' analysis that Plaintiffs owe a legitimate debt and are subject to collection. In addition, the same weighs in favor of the conclusion that Plaintiffs are more interested in litigation than resolving their issues with their condominium.

III.    STATEMENT OF QUESTIONS PRESENTED

Defendants submit that the only issues for determination by this Honorable Court are whether or not Plaintiffs have satisfied the burden of proof necessary to establish the claims set forth in the Amended Complaint and whether or not the Defendants' Summary Judgment filings sufficiently establish the lack of any viable claims against them. Defendants further submit that since both parties have filed for Summary Judgment (at least with respect to liability) that this Honorable Court is in a position to make a summary judgment determination regarding the same.

IV.    ARGUMENT

A.    The Standard for Summary Judgment

Defendants submit that the standard is as set forth in the applicable law.

B.    The "Least Sophisticated Consumer" Standard

Defendants rely on their Summary Judgment filings and, to the extent necessary, this Response/Opposition and the documents filed herewith to allow this Honorable Court to make the necessary determinations with respect to this case.

4

C.      FDCPA Notice and Denial of FDCPA Coverage

The FDCPA Notice was included on Defendants' correspondence as a matter of course as the Defendants engage in debt collection work. However, that the Notice had limited application was clearly set forth therein where Defendants stated that "You should be aware that the FDCPA Act only applies to <u>consumer</u> debtors." (Emphasis in original). See Exhibit "1" of Defendants' original Memorandum.

Defendants have continued to argue that condominium debt is not consumer debt for purposes of preserving the argument, if necessary, for appeal. Further, because the issue has not been decided by this Circuit, Defendants are not at fault for asserting this position.

Defendants' reference to the case of *Franco v. Marcus* is valid. While the condominium at issue in that case differs greatly in size from that presented here and while recreational facilities are more lavish than the yard at issue at Plaintiffs' condominium, the principle holds. Condominium assessments are collected to maintain common areas of condominiums and thus not tied to the "household" of a particular unit owner.

That Plaintiffs allege that Attorney Thomas E. Kane, Coordinator of FDCPA Enforcement Program Division of Financial Practices, has reversed the opinion he wrote in the letter cited by Defendants does not establish that the Defendants violated the FDCPA.

D.      Validation Requirements of 15 U.S.C. 1692(g)

1.      Demand for Payment

As set forth in Defendants' original Memorandum (See Page 7 thereof), an attorney debt collector may take legal action within the 30-day period regardless of an assertion of dispute. Thus, since Defendants intended to continue collection, it was not improper to request payment in less than thirty days. Further, that Defendants issued multiple letters within the 30-day period does not establish a violation of the FDCPA. Defendants were, in fact, responding to letters issued by Plaintiffs.

2.    Provision of Verification

Defendants submit that their letters to Plaintiffs are documents which speak for themselves. Defendants opine that by identifying the debt and the source thereof, including the creditor, they satisfied the verification requirement in their December 15, 2004 letter. See Defendants' original Memorandum Exhibit "3". In any event, in Plaintiffs' first letter to Defendants (See Defendants' original Memorandum Exhibit "2") Plaintiffs acknowledge having previously received the verifying documentation from the Receiver. Moreover, the referenced October 12, 2004 letter from the Receiver and the accompanying documentation were provided to Plaintiffs, again, by Defendants as attachments to Defendants' letter of January 11, 2005 (See Defendants' original Memorandum at Exhibit "7"). Thus, rather than a continuing refusal to verify the debt, Defendants and the Receiver had repeatedly verified the debt.

Plaintiffs allege that Defendants "failed to inform this Court that their client had improperly doubled the $160 monthly fee" and "demanded over $25,000". Plaintiffs have not established that these actions, by the Receiver, were improper. Further, even if they had, the same constitute grievances with the Receiver, not with the Defendants. Although the Defendants successfully opposed Plaintiffs' Motion to Stay the Superior

Court's Order regarding payment, that Order (See Defendants' original Memorandum Exhibit "8") did not require the Plaintiffs to make payment of the $320.00 per month fee or of the $25,000.00 second special assessment and thus the same are not properly at issue when considering Defendants' debt collection efforts.

Defendants take issue with Plaintiffs' description of the Community Associations Institute as "Defendants' trade organization". Defendants neither own, govern nor operate the Community Associations Institute. Plaintiffs make this characterization in conjunction with the allegation that Waverly Landscaping is a member thereof and the mention of the fact that the Receiver selected Waverly Landscaping for yard repairs at the condominium. To the extent that an accusation is being made, Defendants submit that they have no affiliation whatsoever with Waverly Landscaping and no knowledge of the trade organization memberships that Waverly landscaping may maintain.

Defendants' position with respect to Massachusetts condominium law is as set forth in Defendants' original Memorandum (See Pages 12-13 thereof). Also, note that there is no legal distinction within M.G.L. c. 183A (the Massachusetts "Condominium Statute") between "routine" and "special" assessments (with the exception, not relevant here, that "special" assessments do not have priority over first mortgages). Rather, all assessments made for purposes of common area maintenance (such as that for repair of the yard at issue in this case) stand on equal ground for purposes of collection efforts. Further, M.G.L. c. 183A, §6(a)(ii) also includes "any fees, attorney's fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest" as items which are to be "enforceable as common expense assessments under this chapter." These aspects of the applicable statute support Defendants' position with respect to the

7

applicability of the Massachusetts condominium collection cases cited in the Defendants'
original Memorandum.

        3.     Continued Debt Collection

As set forth above, attorney debt collectors may institute action within the 30-day
period. Further, as set forth above, Defendants provided verification of the debt to
Plaintiffs and the Plaintiffs acknowledged the same in their first letter to Defendants.
That Defendants issued multiple letters within the 30-day period was a result of the
Defendants responding to letters sent by Plaintiffs. In the context of the issue of
verification, Plaintiffs simply confuse the FDCPA's verification requirement (essentially
identification of the debt and the creditor) with their desire that debt collectors be
required to obtain the debtor's assent to payment of the debt.

        E.     Implication that Legal Proceedings Had Already Begun

As set forth in Defendants' original Memorandum (See Page 11 thereof),
Defendants letter of December 15, 2004 (Exhibit "1" to Defendants' original
Memorandum) is a document which speaks for itself. The letter contains an introduction,
clearly indicating that it is a first and not a continuing communication. The letter makes
no reference or implication regarding "litigation", "legal complaint", "court", "court
proceedings", "legal process" or the like. In sum, the letter contains no violation of 15
U.S.C. 1692(e).

        F.     Defendants' Letters to HSBC Mortgage Corp.

        1.     15 U.S.C. 1692(e)(2)(A)

As set forth in Defendants' original Memorandum (See Page 15 thereof) the
Defendants' referenced letters are documents which speak for themselves. Since the

Massachusetts Condominium Statute creates no legal distinction between "routine" monthly assessments and "special" assessments for purposes of collection efforts, Plaintiffs' allegation that Defendants' made false representations regarding the character of the debt do not establish an FDCPA violation.  Further, Defendants' letter to HSBC Mortgage Corp. (Exhibit "10" to the Defendants' original Memorandum) did not state that the delinquent payments were "routine" assessments.  In fact, the Defendants' complained-of statement that "certain of these assessments, charges and costs can be a priority over your mortgage" is a limiting statement in that it applies to <u>certain</u> of the assessments, <u>charges</u> and <u>costs</u>.  Defendants did not misrepresent the character of the debt because even if the "special" assessment amounts did not have priority over the first mortgage, pursuant to M.G.L. c. 183A, §6(a)(ii), the attorney's fees and collection costs assessed to Plaintiffs were entitled to such priority.

With respect to Defendants' second letter to HSBC Mortgage Corp. (Exhibit "11" of the Defendants' original Memorandum), the complained-of statement regarding the intent to institute an action was accurate as of the time it was written.  As set forth in the Affidavits of Charles A. Perkins, Jr. and Gary M. Daddario (previously filed with the Defendants' original Memorandum), Defendants intended to file suit against Plaintiffs until such time as the Plaintiffs filed this suit against the Defendants.  As set forth in the Affidavits, thereafter, additional action was halted for concern that any action would exacerbate the situation.  The second complained-of statement, regarding the association's priority lien, was a recitation of the Condominium Statute with respect to said lien.  Defendants did not state that six months of "routine" assessments were delinquent.  Defendants simply stated, as set forth in the statute, that in the event of

foreclosure the association has a priority lien with respect to such amounts, as well as

attorney's fees and costs of collection. As set forth above, the latter portion of the

priority lien (regarding collection expenses) would have applied. Moreover, in the event

that Plaintiffs failed to remit payment of any "routine" assessment prior to any

foreclosure, the former portion of the priority lien would have applied as well. The

Defendants did not state that the same would happen or was expected to happen. Rather,

Defendants simply put HSBC Mortgage Corp. on notice with respect to the applicable

law.

        2.      15 U.S.C. 1692(d)

In this section of their recent filing, Plaintiffs describe, at length, many varying

issues. Almost none of the information provided here pertains to actions of the

Defendants. The Defendants issued the referenced letters and, again, state that these are

documents which speak for themselves. As set forth in the Defendants' original

Memorandum (See Pages 11-13 and 15 thereof) and herein, Defendants' letters were

issued in compliance with applicable law. At no time did the Defendants take action to

harass, oppress or abuse the Plaintiffs.

        G.      Defendants' "Threatened" and "Intended" Actions and Legal Options

As set forth above, in the Defendants' original Memorandum (See Pages 16-17

thereof) and in the above-referenced Affidavits of Charles A. Perkins, Jr. and Gary M.

Daddario, the Defendants intended to file suit against Plaintiffs at the time their collection

letters were issued. Moreover, because the Massachusetts Condominium Statute contains

no applicable distinction between types of assessments (and, in fact, at M.G.L. c. 183A,

§6(a)(ii) provides that attorney's fees and collection costs are enforceable as common

10

expense assessments) the filing of a suit was a legal option available for collection of the debt. That "special" assessments do not take priority over first mortgages does not dispense with a condominium's right to seek collection thereof. Finally, the legal option of foreclosure was present as a result of M.G.L. c. 254, §5A. Said statutory provision states that "[w]hen the amount of a lien under section six of chapter 183A...has been established by a court, the court shall enter an order authorizing the sale of the real estate to satisfy such lien." (Emphasis supplied). This statutory provision makes no distinction between "routine" and "special" assessments or, for that matter, of any of the types of assessments that could constitute the condominium's lien. Thus, Defendants' letters referenced legal remedies that were both intended and available. As such, Defendants did not violate the FDCPA.

     H.     Contact with Third Parties

     As set forth in Defendants' original Memorandum (See Pages 13 and 15 thereof) , Defendants did not have contact with third parties in violation of the FDCPA. In response to the specifics of this section of the Plaintiffs' recent filing, Defendants issued only the statutorily required notices to HSBC Mortgage Corp. necessary to perfect the condominium's lien in accord with M.G.L. c. 183A. In addition, Defendants did not provide copies of communications to the owners of the second unit at Plaintiffs' condominium. As indicated on the letters (See Exhibits "10" and "11" of Defendants' original Memorandum) a copy was designated to the "Trustees" of the condominium. However, because the Court-Appointed receiver stood in place of the Trustees at that time, the only copies issued by Defendants were provided only to the Receiver.

11

I.    Communication Regarding Disputed Debt

As set forth in the Defendants' original Memorandum (See Page 16), Defendants did not violate the FDCPA in this regard.  Defendants add that the referenced letters (Exhibits "10" and "11" of the Defendants' original Memorandum) were not issued to provide "credit information" per se.  Rather, the letters were issued to place the mortgage holder on notice with respect to the condominium's lien under M.G.L. c. 183A. Defendants submit that the letters did so, accurately, and that the same were not violations of the FDCPA.

J.    Letter Regarding Mortgage Holder Participation

As set forth in Defendants' original Memorandum (See Pages 15-16 thereof) the referenced letters requested the mortgage holder's assistance.  They did not imply any belief (let alone a false one) regarding what the mortgage holder's response might be. Accordingly, the Defendants did not violate the FDCPA in this regard.  Moreover, a careful reading of the allegations set forth in this section of the Plaintiffs' recent filing reveals that the actions resulting in the Plaintiffs' grievance, in this respect, were those of the mortgage holder, not the Defendants.

K.    Claim of Harassment

As set forth in Defendants' original Memorandum (See Pages 18-19 thereof) Defendants sought a Permanent Injunction in order to protect the Receiver from difficulties with her primary employment occurring as a result of Plaintiffs' communications with the Receiver's employer (who had no involvement with Plaintiffs' condominium).  Thus the action was not taken to disgrace the Plaintiffs and was not a violation of the FDCPA.  Further, the allegations were those of the Receiver, and were

12

merely presented to the Superior Court by the Defendants. In any event, the Superior

Court determined (after two days' of hearing at which the Plaintiffs' both spoke and

questioned the Receiver) that sufficient grounds existed to warrant the issuance of the

Permanent Injunction and the same was issued (See Exhibit "8" of Defendants' original

Memorandum). Thus, Plaintiffs can not now allege that the Defendants utilized false

representations. Accordingly, the Defendants have not violated the FDCPA in this

regard.

      L.      Representation of Services and Compensation

      This portion of Plaintiffs' recent filing presents allegations not contained in the

Complaint or Amended Complaint. To that extent, this portion of Plaintiffs' recent filing

is not properly the basis of this Honorable Court's determination of this matter.

Notwithstanding the same, purely in the interest of this Honorable Court's edification and

context, the Defendants address specific points below.

      Defendants submit that Plaintiffs' opinion that Defendants' legal fees are too high

does not establish an FDCPA violation.

      Defendants again take issue with Plaintiffs' allegations that Defendants withheld

records. Defendants were never the record keepers for the condominium or in possession

of the condominium's records. This issue has been addressed above.

      Defendants submit that their Affidavits do not state that "they do not expect any

additional compensation from Plaintiffs" as the Plaintiffs allege in their recent filing (See

Page 23). Rather, the Affidavits state that Defendants do not "expect and will receive no

further compensation of any kind relative to my dealings with the above-captioned

Plaintiffs, Boylston or the Receiver, Sheryl Sarkis" (See original Affidavits of Charles A.

Perkins, Jr. and Gary M. Daddario, previously submitted, at Paragraph 12). The distinction is that Defendants have never expected or sought compensation from the Plaintiffs. The Defendants were retained by the Receiver and it is the Receiver that would provide Defendants with compensation. The fact that the Receiver would compensate legal counsel with condominium funds does not alter the relationship between the Defendants and the receiver or the Defendants and the Plaintiffs. Further, Paragraph 12 of the referenced Affidavits was included for the sole purpose of addressing the Plaintiffs' implied, but overarching, conspiracy theory involving Plaintiffs' implied suggestions that Defendants were motivated to act by financial rewards other than the payment on their legal billing invoices. Thus, the Defendants would not have offered the referenced paragraphs in their Affidavits if not for concern over Plaintiffs' previously implied accusations. That Plaintiffs in their recent filing seek to make an issue of the referenced paragraphs is a sad consequence of the vicious and never-ending cycle of accusations that the Defendants suffer at the hands of the Plaintiffs.

Defendants further submit that Attorney Douglas Troyer was legal counsel to the remaining unit owners and the only other attorney involved in these affairs during the time period in question. Further, his clients, as unit owners, were also subject to the Receiver's authority. As such, consultations with Attorney Troyer regarding the status of the matter and/or correspondence issued by the Plaintiffs (sometimes to both Attorney Troyer and Defendants) was entirely appropriate. In fact, other than the allegations to be derived from Plaintiffs' vague but overarching conspiracy theory, there is no fault attributable to Defendants for consulting with Attorney Troyer and, in particular, no FDCPA violation resulting therefrom.

14

Defendant Daddario's letter, submitted by Plaintiffs as their Exhibit "9" to their recent filing, is a document which speaks for itself. Combined with Exhibit "1" hereto (Defendant Daddario's March 17, 2006 letters to the Superior and Supreme Judicial Courts), these letters clearly reveal the limitations of the Defendants' involvement.

Finally, being in possession of the Defendants' actual invoices relative to services performed for the Receiver (submitted by Plaintiffs as Exhibit "1" to their recent filing), Plaintiffs' asserted confusion regarding Defendants' services and compensation appears disingenuous. The services Defendants performed are as set forth in the invoices. The compensation to which Defendants are entitled is set forth in the invoices. Further, it is clear that with the exception of $615.00, Defendants have been not been paid at all for their services to the Receiver. Moreover, since Defendants are unwilling at this time to engage in any additional litigation involving the Plaintiffs and their condominium, Defendants currently opine that there is no reasonable likelihood that they will receive the compensation due them as set forth in their invoices.

M.    Implied Covenant of Good Faith and Fair Dealing

This issue is addressed by Defendants in their original Memorandum (See Page 14 thereof). Defendants add that Plaintiffs' logic is flawed. For purposes of a claim in the nature of breach of covenants of good faith and fair dealing, Defendants can not be said to have contractual obligations to both the Receiver (collecting a debt) and the Plaintiffs (unit owners against whom collection was sought). It is axiomatic that an attorney can only represent one side of a dispute. Trustees normally "act" for condominiums. In the present case, the Court-Appointed Receiver was placed in said position.

15

Again, in this section of their recent filing, Plaintiffs attempt to establish that Defendants withheld condominium records from them. Again, the same is adamantly denied. As set forth above, Defendants' referenced invoice (submitted by Plaintiffs as Exhibit "1" to their recent filing) states that "Ms. Sarkis turned over all records". Further, the Second Affidavit of Receiver Sheryl Sarkis and the Affidavit of Receiver Peter Zimmerman, submitted herewith, reveal that Defendant Daddario did not possess or return the condominium's records but that, as Defendant Daddario has repeatedly stated, Receiver Sheryl Sarkis did so. Moreover, the transcript submitted by Plaintiffs as Exhibit "2" in support of Plaintiffs' Motion for Partial Summary Judgment reveals Attorney Daddario making the following statement (See Transcript Page 26 beginning at Line 15):

> "Additional documentation can be viewed as the condominium statute says at an office where the records for the condominium are kept, which in this case would be the receiver's office."

Whatever the relationship and issues between Plaintiffs and the Receiver, it is clear that Defendants were not the record keepers for the condominium and were not seeking to deny Plaintiffs access to records. The Defendants' knowledge, to the extent they had any, of the condominium's records and operations came from information provided by the Receiver. In fact, despite Plaintiffs' allegation that "[e]ven when Ms. Sarkis was present, Defendant Daddario spoke as if he had first-hand knowledge of the operation of the two-unit condominium", by way of example, the transcript submitted by Plaintiffs (Exhibit "2" to Plaintiffs' recent filing, beginning at Page 26 Line 7 thereof) reveals Defendant Daddario making the statement:

> "[w]hen we talk about landscaping and gutter cleaning and other issues, I'm informed by the receiver those things simply cannot be done because the money does not exist to pay anybody to do those things" (Emphasis supplied).

In addition, as set forth in the Affidavit of Receiver Peter Zimmerman, submitted herewith, his actions were not directed or requested by Defendant Daddario. Perhaps more importantly, as set forth in the Affidavit, Defendant Daddario neither represented Receiver Peter Zimmerman nor had any authority to direct his actions.

N.    Lack of Intent or Bona Fide Error

Defendants opine that this Honorable Court is in a position to make all necessary determinations, including the availability and applicability of defenses, regarding liability in this case based upon the written filings previously submitted and those submitted herewith.

O.    Bad Faith and Delay

Plaintiffs' allegations in this portion of their recent filing are not contained in the Complaint or Amended Complaint. To that extent, this portion of Plaintiffs' recent filing is not properly the basis of this Honorable Court's determination of this matter. Notwithstanding the same, Defendants submit that these allegations are preposterous. Summary Judgment, by definition, is a means of "shortcutting" a case through the avoidance of trial. Defendants' Summary Judgment filings have been submitted for the purpose of decreasing, not increasing, the amount of time necessary for this matter to reach conclusion.

As stated above, arguments have been repeated for the purpose of preservation for appeal. There is no indication that the same have "cost" this Honorable Court, or either of the parties, any delay.

Further, as set forth above, careful readings of both Defendants' and Plaintiffs' Exhibits, as well as applicable Massachusetts law, reveals that Plaintiffs, not Defendants, are in the habit of mischaracterizing and of distorting context.

V.   CONCLUSION

In large part, Plaintiffs' allegations address the actions of others and not of the Defendants.  Plaintiffs attempt to use this Honorable Court to address a wide variety of grievances which relate, in actuality, to the operation of their condominium.  This is an area in which the Defendants of this case are not and have never been involved.  Utilizing the FDCPA, the Plaintiffs attempt to use this Honorable Court as an alternative to the State Court system where they are repeatedly dissatisfied.  However, this is neither the purpose of this Honorable Court nor of the FDCPA.  Plaintiffs' issues are properly addressed through the appeals of the decisions of the Superior Court, not by linking (through conspiracy theory) all of their grievances to the Defendants and filing a misguided claim of a different order against them.

To the extent that Plaintiffs do make allegations that truly bear on FDCPA issues and rest against the Defendants named herein, the Defendants submit that careful analysis of the Exhibits reveals that they have not violated the FDCPA.  In fact, careful review of the documents submitted by both Plaintiffs and Defendants in this matter reveals that Plaintiffs have expended significant effort to distort the plain meaning of Defendants' statements in order to provide interpretations upon which FDCPA violations could be alleged.  Defendants have not engaged in the malevolent types of conduct that the FDCPA seeks to prohibit.  Rather, as with this Honorable Court, Plaintiffs attempt to

misuse the statute to address concerns, grievances and issues that belong in the Superior

Court and involve other parties.

Since both parties have submitted that no trial is necessary as to liability, this

Honorable Court is in a position to make the determinations necessary to resolve this

matter on Summary Judgment.

WHEREFORE Defendants respectfully pray that this Honorable Court:

A.    Award Defendants Summary Judgment in their favor with respect to each
      of the Counts against them or, in the alternative;

B.    If the Court finds that Defendants are not entitled to Summary Judgment
      on any Count against them, award Summary Judgment in favor of
      Plaintiffs with respect to such Count;

C.    If finding in favor of Plaintiffs on any Count, award damages in accord
      with the statute such that this matter may be fully and finally resolved
      (with the exception of appeal); and

D.    Take any other action deemed to be in the best interest of justice and
      judicial economy.

Respectfully submitted,
Defendants


Charles A. Perkins, Jr. (BBO #394430)
Gary M. Daddario (BBO #639615)
Perkins & Anctil, P.C.
73 Princeton Street, Suite 306
North Chelmsford, MA 01863
(978) 251-8509

Date: May 31, 2006

**EXHIBIT**

**"1"**

_____

**PERKINS & ANCTIL, P.C.**

ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

**FILE COPY**

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

GARY M. DADDARIO
_____
SCOTT C. OWENS

March 17, 2006

Middlesex Superior Court
Attn: Martha Fulham Brennan, Assistant Clerk
40 Thorndike Street
Cambridge, MA 02141

     **Re:   MICV2003-05103**

Dear Martha Fulham Brennan:

     Relative to the above-referenced case, you may recall that this office represented the original Court-Appointed Receiver. Our client's Motion to Withdraw was allowed, and we do not represent the newly-appointed Receiver.

     As such, kindly remove us from the contact/mailing list for this case. Thank you for your time and cooperation.

     Please feel free to contact us with any questions or concerns.

     Respectfully,

     Gary M. Daddario

c:    Diane Scott-Jones
     John E. Jones, Jr.
     Douglas A. Troyer

**EXHIBIT**

**"1"**

FILE COPY

# PERKINS & ANCTIL, P.C.

## ATTORNEYS AT LAW

73 PRINCETON STREET, SUITE 306
NORTH CHELMSFORD, MASSACHUSETTS 01863-1558
TELEPHONE (978) 251-8509 • (800) 642-4906
FAX (978) 251-3608
REAL ESTATE FAX (978) 251-3859
www.perkinslawpc.com

CHARLES A. PERKINS, JR.*

ROBERT W. ANCTIL*

ANITA L. CHMILARSKI
DIRECTOR OF OPERATIONS

*ALSO ADMITTED IN NH

GARY M. DADDARIO

SCOTT C. OWENS

March 17, 2006

Massachusetts Supreme Judicial Court
Attn: Maura S. Doyle, Clerk
One Pemberton Square
Boston, MA 02108

Re:    SJ-2005-0162

Dear Ms. Doyle:

Relative to the above-referenced case, please note that the proceedings in the Superior Court involved the appointment of a Receiver to a condominium. This office represented the Court-Appointed Receiver. However, we are not involved with the appellate matters and have filed no Notice of Appearance with respect to the same. In addition, the Receiver that we represented has been withdrawn from the matter and we do not represent the newly-appointed Receiver.

As such, kindly remove us from the contact/mailing list for this case. Thank you for your time and cooperation.

Please feel free to contact us with any questions or concerns.

Respectfully,

Gary M. Daddario

c:    Diane Scott-Jones
      John E. Jones, Jr.
      Douglas A. Troyer

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION                    CIVIL ACTION NO. 05-10350JLT

|  |  |
|---|---|
| DIANE SCOTT-JONES and JOHN E. JONES, JR.,<br>Individually and as Trustees of the 392-394<br>BOYLSTON COMMONS CONDOMINIUM<br>TRUST,<br>        Plaintiffs,<br><br>v.<br><br>CHARLES A. PERKINS, JR., GARY M.<br>DADDARIO and PERKINS & ANCTIL, P.C.,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

        I hereby certify that this document, Defendants' Response to Plaintiffs'
Opposition to Defendants' Motion for Summary Judgment and Defendants' Opposition
to Plaintiffs' Motion for Partial Summary Judgment, filed through the ECF system will
be sent electronically to the registered participants as identified on the Notice of
Electronic Filing and paper copies will be sent to those indicated as non registered
participants on May 31, 2006.

                            Respectfully submitted,
                            Defendants

                            _____
                            Charles A. Perkins, Jr. (BBO #394430)
                            charlie@perkinslawpc.com
                            Perkins & Anctil, P.C.
                            73 Princeton Street, Suite 306
                            North Chelmsford, MA 01863
                            (978) 251-8509